# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| LIBERTY MEDIA HOLDINGS, LLC, ) | Case No.: 2:12-cv-01057-GMN-RJJ |
| Plaintiff, ) | **ORDER** |
| vs. ) | |
| FF MAGNAT LIMITED, *d/b/a Oron.com*; ) MAXIM BOCHENKO, *a/k/a Roman Romanov*; ) and JOHN DOES 1-500, ) | |
| Defendants. ) | |

## INTRODUCTION

Before the Court is Plaintiff Liberty Media Holdings, LLC's (hereinafter "Plaintiff") Motion to Enforce Settlement (ECF No. 33). Defendant FF Magnat Limited (hereinafter "Defendant") filed a Response (ECF No. 44), and Plaintiff filed a Reply (ECF No. 66).

Also before the Court is Plaintiff's Motion to Seal Motions #33 and #34 (ECF No. 32). Defendant filed an Opposition (ECF No. 39), and Plaintiff filed a Reply (ECF No. 41).

## FACTS AND BACKGROUND

The instant case involves a dispute over Defendants' alleged copyright infringement of Plaintiff's works. This Court previously granted Plaintiff's motion for a temporary restraining order against Defendant. (TRO Order, ECF No.11.)[1] Thereafter, on July 1, 2012, attorneys for Plaintiff and Defendant signed a letter memorializing settlement terms in regards to this case and a similar case between these two parties in Hong Kong (hereinafter "Settlement Letter"). (Settlement Letter, Ex. A attached to Mtn to Enforce Settlement, ECF No. 33-1.) The pertinent parts of the settlement letter are as follows:

---

[1] The TRO was later amended. (Amended TRO, ECF No. 13.)

Page 1 of 8

     1.     Oron pays Liberty Media $550,000.

. . .

     8.     Once payment is received by both parties, both proceedings in NV and HK will be dismissed with prejudice, and in the event that Oron breaks any part of the deal, the claims may be reinstated via arbitration after a 30 day "notice and cure" period.

. . .

     12.     Liberty agree to announce publically that after a careful review of the facts they believe Oron is protected by the DMCA safe harbor and that a review of the actual files shows that there never was any child porn on Oron's site.

. . .

     14.     Liberty will immediately, once the terms of the agreement are agreed to issue a letter asking that the HK bank accounts be unfrozen allowing the payment to the Randazza Trust and then to Leaseweb as well as send a letter to Leaseweb asking them to allow Oron ten (10) days to pay as the settlement of the matter is imminent.

     15.     All parties mutually release

. . .

     19.     If you agree to these terms for your client please sign on the line below and return.

(*See id.*)

On July 2, 2012, Plaintiff sent a letter to Bob Rietjens, Senior Legal Counsel at LeaseWeb, disclosing that the parties were near a settlement and requested that LeaseWeb not terminate the account for www.oron.com due to nonpayment. (Letter to LeaseWeb, Ex. B attached to Mtn to Enforce Settlement, ECF No. 33-2.) On July 3, 2012, the parties filed a Joint Stipulation to Extend Hearing Date and Submission Deadlines so that the parties could "facilitate attempts to narrow the issues in this matter or to come to a mutually beneficial resolution to the dispute." (Stipulation, ECF No. 28.) On July 3, 2012, S.T. Poon & Wong, Defendant FF Magnat Limited's counsel in the Hong Kong matter, delivered a letter to Plaintiff's Hong Kong counsel that states "[w]e are instructed that our client had reached an amicable settlement." (HK Letter, Ex. C attached to Mtn to Enforce Settlement, ECF No. 33-3.)

A dispute arose after the Settlement Letter was signed and after Plaintiff sent the letter to LeaseWeb. E-mails sent between Stevan Lieberman, counsel for Defendant, and Marc Randazza, counsel for Plaintiff, on July 3, 2012, indicate that the parties disputed who was/would

be bound by the terms of the Settlement Letter. (*See* Lieberman Decl. ¶¶6-9, ECF No.44-1; E-mails, Exs. B-E attached to Response, ECF Nos. 44-3-44-6.) Defendant believed that all defendants, including Mr. Bochenko, would be included in the terms; Plaintiff apparently did not. (*See id.*) On July 3, 2012, Marc Randazza sent an e-mail to his paralegal, on which Stevan Lieberman was copied. In this e-mail Randazza instructs his paralegal that they "need to put the brakes on this. While I am not certain, it appears that settlement is not going to happen…we may get back on track, but it seems that right now, the settlement we brokered is going off the rails." (Email re: Consent Summons, Ex. 1 attached to Reply, ECF No. 66-1.)

However, Plaintiff eventually conceded to Defendant's interpretation of the Settlement Letter and agreed that the settlement would also apply to Mr. Bochenko. (*See* Text Messages, Ex. B attached to Reply to Mtn to Seal, ECF No. 41-2; Randazza Decl. ¶¶ 2-7, ECF No. 66-3.) After discussing the issue with Defendant's local counsel, Mr. David Kahn, Plaintiff's counsel agreed to Defense Counsel's interpretation and said he would back down from his interpretation that the settlement was only with Defendant. (*See id.*)

## DISCUSSION

### A. Legal Standard

"It is well settled that a district court has the equitable power to enforce summarily an agreement to settle a case pending before it. However, the district court may enforce only *complete* settlement agreements." *Callie v. Near*, 829 F.2d 888, 890 (9th Cir. 1987) (citations omitted). "Whether the parties *intended* only to be bound upon the execution of a written, signed agreement is a factual issue." *Id*. at 890-91. "In addition to the intent of the parties to bind themselves, the formation of a settlement contract requires agreement on its *material terms*." *Id*. at 891. "Because a settlement agreement is a contract, its construction and enforcement are governed by principles of contract law." *May v. Anderson*, 119 P.3d 1254, 1257 (Nev. 2005) (footnote omitted).

Under Nevada law, "[b]asic contract principles require, for an enforceable contract, an offer and acceptance, meeting of the minds, and consideration." *Id*. (footnote omitted). "A valid contract cannot exist when material terms are lacking or are insufficiently certain and definite." *Id*. (footnote omitted). "A contract can be formed, however, when the parties have agreed to the material terms, even though the contract's exact language is not finalized until later." *Id*. (footnote omitted). Ordinarily, "[w]here a complete contract was made orally, the fact that it was expected that a written contract would afterwards be signed, embodying the terms of the oral contract, does not prevent the oral contract from taking effect." *Micheletti v. Fugitt*, 134 P.2d 99, 104 (Nev. 1943).

"In the case of a settlement agreement, a court cannot compel compliance when material terms remain uncertain." *May v. Anderson*, 119 P.3d at 1257 (footnote omitted). "The court must be able to ascertain what is required of the respective parties." *Id*. (footnote omitted). "[T]he question of whether a contract exists is one of fact." *Id*.

"[T]he evidence that the parties intended to be presently bound must be convincing and subject to no other reasonable interpretation." *Tropicana Hotel Corporation v. Speer*, 692 P.2d 499, 502 (Nev. 1985) (examining manifestations of the parties' intent regarding the finality of an oral contract); *see also Mack v. Estate of Mack*, 206 P.3d 98, 108 (Nev. 2009) (concluding that "substantial evidence exists that shows a meeting of the minds between the parties" "based on [opposing party]'s clear assent to the terms of the settlement agreement at the hearings held by [the judge]").

**B.     Analysis**

The Court first looks at the Settlement Letter to determine if the parties intended to be presently bound by the terms within. Defendant describes the letter as a "draft term sheet for review by Plaintiff's counsel, setting out certain terms of a proposed settlement." (Response, 4:18-19, ECF No. 44, citing Lieberman Decl. ¶¶ 3-4.) At the top of this letter the subject line

reads "Potential Settlement." (Settlement Letter, pg. 1.) The first line of the letter states "[t]his letter is to memorialize what I believe is the settlement terms we are currently at for Liberty Media Holdings (LMH)." (*Id.*) The last page of the letter includes the following language: "[i]f you agree to these terms for your client please sign on the line below and return." (*Id.* at pg. 3.)

There is nothing in the Settlement Letter that indicates that Defendant did not intend to be presently bound by the proposed terms or that a future writing was required. The requirement for the Plaintiff's attorney to sign and return indicates that the parties do agree that all these terms are acceptable and binding. If this was only a proposal of terms there probably would not be a requirement for Plaintiff's counsel to sign and return.

Moreover, Defendant does not argue that it did not intend to be bound by the terms once the letter was signed. Instead Defendant only points to statements made by Plaintiff after signing the letter that it argues indicates the negotiations were ongoing. Defendant argues that the settlement was not final because the letter sent by Plaintiff to LeaseWeb states that "Oron.com is on the eve of making a deal with us." Likewise Defendant argues that the stipulation submitted to the court to delay the hearing on the permanent injunction motion does not state that a settlement was reached and that Plaintiff's counsel's comments indicating that "the settlement we brokered is going off the rails," is further proof of no settlement.

However, the Court is not persuaded that any of these statements are sufficient evidence to indicate that the parties did not intend to be bound by the terms in the signed Settlement Letter. The comment that "Oron.com is on the eve of making a deal" only indicates that documents have not been finalized. A contract can be formed so long as the parties agree to the material terms, even though the contract's exact language is not finalized until later. *See May*, 119 P.3d 1254 at 1257. The stipulation submitted to the Court likewise makes no concession regarding the state of the settlement negotiations. Finally, the comments that the "settlement we brokered is going off the rails" including the context of the e-mail actually indicates the

1 contrary, that Defendant was not holding up its end of the bargain.

2 Thus the Court needs to determine if all the material terms of the contract were agreed to in the Settlement Letter. Defendant claims that it understood the Settlement Letter would release all defendants from the claims by Plaintiff. The e-mail correspondence that took place on July 3, 2012, however, demonstrates that Plaintiff believed the Settlement Letter only applied to Defendant and not Mr. Bochenko. The parties' correspondence on July 3, 2012, makes clear that the avoidance of future litigation was a goal of Defendant in seeking the settlement. (*See* E-mails.) Defendant argues that it always believed that it could not ensure future litigation arising from the facts of this case if Mr. Bochenko was not also dismissed with prejudice. "If the prevention of future litigation is one of the primary goals of a settlement, the essential terms of the release needed to achieve that goal are material to the settlement agreement." *May*, 119 P.3d at 1258. Thus it does appear there was no meeting of the minds regarding a material term of the settlement at the time of the Settlement Letter. However, the issue then becomes whether or not Plaintiff's latter acceptance of Defendant's proposed interpretation of the settlement term – a latter "meeting of the minds" – constitutes an enforceable settlement agreement.

Plaintiff's counsel orally accepted Defendant's interpretation of the released parties in his conversation with local counsel David Kahn on July 5, 2012, and also sent the same in a text message to Mr. Lieberman. (Randazza Decl. attached to Reply, ECF No. 66-3.) There can be no dispute that there was a meeting of the minds regarding the material term at that point. Defendant cannot simply disregard Plaintiff's acceptance of its settlement term and argue that there was never a "meeting of the minds" because there obviously was at some point. It does not matter that some of the material terms are agreed to orally so long as there was intent to be bound by the agreement. *See May*, 119 P.3d 1254 at 1257. Defendant cannot plausibly claim that it no longer intended to be bound by all the other terms of the Settlement Letter when it "got its way" on the one material term in dispute.

The Court finds that there is an enforceable contract. The Settlement Letter written by Defendant was an offer, accepted by Plaintiff when its counsel signed the letter. There was a meeting of the minds as to all material terms on July 5, 2012, when Plaintiff agreed that the settlement would include dismissal with prejudice of Mr. Bochenko. There settlement includes valuable consideration on the part of both Plaintiff and Defendant. In this case, the Court can compel compliance because there are no uncertain material terms that remain. Accordingly, the Court grants Plaintiff's Motion to Enforce Settlement.[2]

**C.     Motion to Seal**

Plaintiff filed a Motion to Seal (ECF No. 32) its Motion to Enforce Settlement (ECF No. 33) and Motion for Attorney's Fees (ECF No. 34). Plaintiff explains that it wishes to file these two motions with accompanied exhibits under seal because they include discussions of the settlement agreement which was supposed to be confidential. Defendant filed a fiery opposition explaining that the motions should not be filed under seal because the terms had already been leaked to the media and that Plaintiff has not proffered any other reason to file the documents under seal. (*See* Opposition, ECF No. 39.) Plaintiff basically withdraws its motion in its Reply. Plaintiff acknowledges that if Defendant does not want the documents filed under seal then it will not continue to move for such protection. (*See* Reply, ECF No. 41.) Accordingly, the Court does not see any reason to grant the Motion to Seal.

## CONCLUSION

**IT IS HEREBY ORDERED** that Plaintiff Liberty Media Holdings, LLC's Motion to Enforce Settlement (ECF No. 33) is **GRANTED**.

**IT IS FURTHER ORDERED** that the Clerk of the Court shall enter judgment against

---

[2] The Court recognizes that Defendant has always challenged personal jurisdiction in this case. (*See* Response to PI, ECF No. 71; Mtn to Dismiss, ECF No. 73.) However, Defendant waived personal jurisdiction as to the enforcement of the settlement agreement when it agreed to settle this case with Plaintiff. Accordingly, this Court finds that it has personal jurisdiction over Defendant for the sole purpose of enforcing the settlement agreement.

"FF Magnat Limited, *d/b/a/ Oron.com*" and in favor of Plaintiff in the amount of $550,000.00, and execution of that amount shall be issued forthwith.

**IT IS FURTHER ORDERED** that FF Magnat's account shall remain frozen, in order to satisfy any fee award, which may be sought by Plaintiff, but which must be brought within thirty (30) days of this Order.

**IT IS FURTHER ORDERED** that this case is **DISMISSED with prejudice** against Defendant FF Magnat and Defendant Maxim Bochenko.

**IT IS FURTHER ORDERED** that Plaintiff's Motion to Seal (ECF No. 32) is **DENIED**. **All documents filed under seal shall be immediately unsealed by the Clerk.**

**IT IS FURTHER ORDERED** that the Motions at ECF Nos. 4, 5, 6, 21, 68, 70 and 73 are **DENIED as moot**.

**IT IS FURTHER ORDERED** that Plaintiff's Motion for Attorney's Fees (ECF No. 34) remains under submission with the Court.

**IT IS FURTHER ORDERED** that the motion hearing scheduled for **Thursday, August 9, 2012** at 1:30 p.m. in Courtroom 7D, is hereby **VACATED**.

**DATED** this 7th day of August, 2012.

_____
Gloria M. Navarro
United States District Judge