ORIGINAL
FILED

AUG 20 2012

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

E-filing

D. GILL SPERLEIN (SBN 172887)
THE LAW OFFICE OF D. GILL SPERLEIN
345 Grove Street
San Francisco, California 94102
Telephone: (415) 404-6615
Facsimile: (415) 404-6616
gill@sperleinlaw.com

Attorney for Plaintiff DataTech Enterprises, LLC,

# UNITED STATES DISTRICT COURT
## NORTHER DISTRICT OF CALIFORNIA

CRB

DATATECH ENTERPRISES, LLC, a
Nevada Limited Liability Company,

    Plaintiff,

        vs.

FF MAGNAT LIMITED d/b/a
ORON.COM, STANISLAV
DAVIDOGLOV, and JOHN DOE a/k/a
ROMAN ROMANOV (an alias); and

    Defendants.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

Case No.: CV 12 4500

**DECLARATION OF PETER PHINNEY IN SUPPORT OF PLAINTIFF DATATECH ENTERPRISES, LLC'S *EX PARTE* APPLICATION FOR TEMPORARY RESTRAINING ORDER**

I, Peter Phinney, declare:

    1.    I am a partner in Porn Guardian a company that provides anti piracy services to adult film production companies.

    2.    DataTech Enterprises, Inc. hired Porn Guardian to locate infringements on the Internet and to send take down notices on their behalf.

-1-

THE LAW OFFICE OF D. GILL SPERLEIN
345 GROVE STREET
SAN FRANCISCO, CA 94102
TEL: 415-404-6615     FAX: 415-404-6616

3.     On behalf of DataTech alone, we sent 42,356 takedown notices (or in some cases removed infringements directly) from oron.com.  We have sent or removed over 650,000 infringing files from oron.com for all clients combined.

4.     Hundreds of infringements of DataTech's works occurred by and through the oron.com website prior to June 15, 2012.

5.     I am familiar with how oron.com and similar cyber lockers work.

6.     When a user uploads a file to Oron.com, FF Magnat Ltd. provides the user with a Uniform Resource Locator ("URL" or "link").  The user can then distribute the link through a separately maintained index available to other individuals, allowing any recipient of the link to access, reproduce, and download the infringing material from FF Magnat Limited's servers.  A user with the link is not required to have a user name or password or other any form of security information to access the files.

7.     While FF Magnat Ltd. allows individuals to download these unsecured files without providing security information and without paying a membership fee, it constructed the website to intentionally limit the usefulness of the site for non-paying members by keeping strict 100MB downloading maximums, limiting multiple downloads, limiting downloading speed, and not allowing users to resume downloads that have been interrupted. In order to efficiently access files on FF Magnat Ltd.'s system, a downloader must pay a €9.95 per month or up to as much as €74.95 per year.

8.     FF Magnat Ltd.'s affiliates reward program offered members the opportunity to make money based upon several different metrics.  One of FF Magnat Ltd.'s programs employed a "Pay Per Download" structure, in which individuals uploading videos were paid

-2-

THE LAW OFFICE OF D. GILL SPERLEIN
345 GROVE STREET
SAN FRANCISCO, CA 94102   FAX: 415-404-6616
TEL: 415-404-6615

based upon the number of downloads of their posted materials. This program paid "up to $25 per 1,000 downloads." This model rewards people who upload popular files because a portion of the people who download the file will purchase an oron.com membership in order to obtain the file more quickly and efficiently. The higher number of people interested in a file, the higher the number of people who will purchase an oron.com membership.

9. FF Magnat Ltd. also had "Pay Per Sale" programs that compensated members based upon how many premium memberships were bought by users specifically accessing a file a user uploaded to FF Magnat Ltd.'s servers. When the user distributed a link to someone who accessed the Oron.com servers and purchased an oron.com membership, FF Magnat Ltd. compensated the member who uploaded the infringing file with a percentage of the sale. These "Pay Per Sale" programs also compensated the uploading user anytime a credited user renewed their oron.com membership, commonly referred to as "rebills" or service renewals. FF Magnat Ltd. offered two different "Pay Per Sale" fee scales: the first provided the member with 55% of sales and 55% of rebills; the second provided 70% of sales and 30% of rebills. Essentially, FF Magnet, Ltd. sold infringing copies of movies and the split the revenue with the individuals who provided them with the infringing movies

10. FF Magnat Ltd. also offered a "MIX" program (compensated a user with half of the "Pay Per Download" rate and $7.00 for each sale).

11. FF Magnat Ltd. also operated a "website owners" program ("WSO") which compensated website owners with up to 15% of all sales referred through the owner's website, even if a different Oron user originally uploaded the content and created the link. In this way, FF Magnat Ltd. paid individuals to maintain indexes directing people where to find

-3-

DECLARATION OF PETER PHINNEY IN SUPPORT OF TRO

THE LAW OFFICE OF D. GILL SPERLEIN
345 GROVE STREET
SAN FRANCISCO, CA 94102
TEL: 415-404-6615    FAX: 415-404-6616

movies on the oron.com servers. The indexes often took the form a of a personal blog. the blog would display the box cover of the pirated movies, screen captures of various scenes, a description of the pirated movie, and finally the oron.com URL that anyone could click and slowly download the pirated movie without providing any username, password or other security information. Alternatively, the user could purchase an oron.com membership if they did not already have one and download the movie quickly and efficiently. This of course is what FF Magnat Ltd. relied upon to earn its illicit profits. When downloaders were willing to pay the fee, FF Magnet, Ltd. gave a portion of the illicit funds to the individuals maintaining the indexing websites.

12.     Page 1 from Exhibits A, B, and C show examples from websites that were eligible for the web owners program. These correspond to just there first three movies identified by in Exhibit A to Lance Blundell's Declaration, *The Other Side of Aspen*, *Blue Movie*, and *Limits*. As indicated by notations added to page 1 of Exhibit A, these operators typically assist FF Magnat Ltd. by displaying a box cover from the movie, a description, screen captures and the link to Oron.com. Page 2 show the page a user is taken to when he clicks the Oron link. The third page shows the final display before downloading the movie file. One can see there is an opportunity to purchase an oron.com membership to spread up the download. A portion of the sale goes to the person who uploaded the link to Oron and a portion goes to the indexing website (usually they are one and the same).

13.     Oron.com does not have an effective repeat infringer policy. Regardless of how many times Porn Gaurdian identified a user as an infringer, FF Magnat, Ltd. continued to allow them to post additional works to its website and presumably continued to pay the user

DECLARATION OF PETER PHINNEY IN SUPPORT OF TRO

THE LAW OFFICE OF D. GILL SPERLEIN
345 GROVE STREET
SAN FRANCISCO, CA 94102
TEL: 415-404-6615    FAX: 415-404-6616

affiliate fees for sign ups generated by the works the user posted. The result is that in one case alone we reported over 1,600 separate infringements of our clients' works by the same user, and FF Magnat, Ltd. continued to allow the user to post. Exhibit D is a partial copy of a report showing the files removed for just one oron.com uploader who used the name gigaron.

Pursuant to the laws of the United States, I declare under penalty of perjury the foregoing is true and correct.

Dated: <u>August 27, 2012</u>              Peter Phinney

DECLARATION OF PETER PHINNEY IN SUPPORT OF TRO

IN THE HIGH COURT OF THE
HONG KONG SPECIAL ADMINISTRATIVE REGION
COURT OF FIRST INSTANCE
MISCELLANEOUS PROCEEDINGS NO. 1275 OF 2012

--------------------

BETWEEN

LIBERTY MEDIA HOLDINGS, LLC            Plaintiff

and

FF MAGNAT LIMITED                  Defendant

--------------------

Before:    Deputy High Court Judge Saunders in Chambers (Open
           to Public)
Date of hearing:  6 July 2012 at 10.05 am
Present:   Ms P Wong, of Messrs Gall, for the Plaintiff
           Mr Chase Pun, instructed by Messrs S T Poon & Wong, for
           the Defendant

--------------------
P R O C E E D I N G S
--------------------

COURT:  Miss Wong.

MR PUN:  May it please my Lord, I appear for the defendant.

MS WONG:  I appear for the plaintiff.

COURT:  Thank you.

MS WONG:  There are two applications before the court today, the
          plaintiff's application for the continuation of the Mareva
          injunction for a period of 14 days, and there's also the
          defendant's application to discharge the Mareva, and for
          other orders.

MR PUN:  Yes, my Lord, this is the defendant's application for
         discharging the ex parte order...

COURT:  I've read your skeleton.

MR PUN:  Yes, my Lord.

COURT:  There's been proper disclosure.  The information was all
        before the judge and what the information disclosed is that
        you're acting for a company that hasn't taken any steps,

there's no affidavits before me, nothing that I can draw any
inference from.  The only inference I can draw is that there
is a bank statement which shows a company which is rapidly
moving its money out of the United States into another
jurisdiction where it invests it in gold.  If that's not a
prima facie case of dissipation, I'm not sure what is.

MR PUN:  Yes, that's my submissions...

COURT:  Your best case is to ask for directions, isn't it?

MR PUN:  Yes, if that's the case, coupled with the...

COURT:  Could I have the skeleton from the defendant, please.
Mr Pun had filed a very sensible skeleton in which he set
out some directions.  That's what I want from him.  Sorry,
here it is here.

MR PUN:  You've got it.

COURT:  Yes, I had it all along, Mr Pun.  It was my fault, it was
here.  Miss Wong, I have already indicated to Mr Pun that I
don't see any merit in his application to discharge at this
stage.  There has been sufficient disclosure because the
whole of the bank statement was put before the judge, but I
am sympathetic to letting him have the directions he seeks.
Do you have anything you wish to say about the directions in
paragraph 22 of the skeleton?

MS WONG:  My Lord, we've annexed the draft order that we propose
to our skeleton submission.

COURT:  I'm not going to dismiss the summons.  It's to be
adjourned sine die, to be brought on for hearing at the same
time as the substantive application.  So paragraph 1 of your
draft will be amended accordingly.

Mr Pun, what do you say about paragraph 2 of Miss Wong's
proposed directions?  Have you got those?

MR PUN:  May I have a moment?  May I have a copy of this draft?

COURT:  You will see, at the bottom of page 1, she asks for your
summons to be dismissed with costs against you.  I'm not
going to give her that.  I'm going to adjourn your summons
so that the question of discharge and the grounds that you
rely on remain alive.

MR PUN:  Yes.

COURT:  And costs are reserved on that.

MR PUN:  I'm grateful.

A

**COURT:** She asks then that the plaintiff's summons for the injunction be adjourned to the summons judge on 20 July. What do you say to that?

B

**MR PUN:** Yes. I think if that's the case, the defendant's summons, I wonder whether it should be adjourned to the same day?

C

**COURT:** Well, I'm wondering if you're going to have -- no, she actually goes to paragraph 4. She wants 35 days to file affidavits in response. Let's make this more sensible. You will have - I'm going to deal with this, this way - your summons will be adjourned in accordance with paragraph (1) of your directions to a date to be fixed in consultation with counsel's diaries with three hours reserved. So that order is made.

**MR PUN:** Yes.

**COURT:** The plaintiff -- you're going to file your affirmations first in response.

**MR PUN:** In fact, the same has been filed yesterday. I wonder whether it...

**COURT:** That hasn't come to me.

**MR PUN:** I apologise.

**COURT:** All right, you got your affidavits in.

**MR PUN:** Yes.

**COURT:** So Miss Wong, 35 days is too long. Mareva injunctions should not sit around. I know this comes from the United States; we have things called telephones and we have a strange thing called the internet which means they can get an affidavit to you within six minutes.

**MS WONG:** Yes, I understand, my Lord, it's just...

**COURT:** So you will have -- Mr Pun has filed his affidavit. Has it been served on you yet?

**MS WONG:** Yes, it was served with the bundle yesterday.

**COURT:** All right, fine, you'll have 14 days to reply. Mr Pun has 14 days thereafter to reply to your...

**MS WONG:** My Lord, if I may just add that the parties have come to a settlement agreement and the parties wish to have 14 days in order to enforce the settlement agreement, or perform the settlement agreement, and in that time, we've asked for 35 days so that we could try to resolve the matter

A     and not incur further legal costs in the meantime, and if it
      doesn't resolve, then we will put on our affidavit evidence.

B     COURT:  Do you know about that?

C     MR PUN:  I'm not aware of that.  But in fact, last week, those
      instructing me received the message from the US party that
      they're negotiating.  But in fact -- and we tried to vacate
D     today's hearing.

E     COURT:  All right.  I'm going to stand down for five minutes.  I
      think the solicitors and counsel had better talk to each
      other.  If it is right that some form of settlement has been
F     arranged, then it is silly to make people file affidavits
      and incur expense.  If Miss Wong is right, and if you accept
      that, I will adjourn the matter for 14 days to the summons
G     judge.  If a settlement cannot be effected in that time,
      then I would expect you to come back to the summons judge
      with an agreement direction in respect of filing affidavits.
H
      Miss Wong, you shouldn't expect 35 days from 14 days.

I     MS WONG:  Yes, my Lord.

J     COURT:  At the best, you would get from me 14 days, all right.

K     MS WONG:  Yes.

L     COURT:  So I'll adjourn now.  Have a talk about it and my clerk
      will let me know when you're in a position to tell me what
      the position is.

M     MR PUN:  I'm grateful.

N     Hearing adjourns - 10.13 am

      Hearing resumes - 10.30 am
O     Appearances as before.

P     COURT:  Miss Wong, what's the position?

Q     MS WONG:  My Lordship, the plaintiff was happy to adjourn the
      matter for 14 days, however, the defendant did not agree to
      that.  As such, we seek directions and we ask for 28 days
      for our affidavits in reply.

R     COURT:  All right.  The defendant's inter partes summons is
      adjourned for argument on a date to be fixed in consultation
S     with counsel's diaries, three hours reserved.  The plaintiff
      has 14 days' leave to file and serve affirmation in
      opposition; defendant, 14 days to file and serve its
T     affidavit thereafter.  No further affirmations without
      leave.

U

A      Mr Pun, I'm not prepared to release the money at this stage.

B      MR PUN: My Lord, in fact, the affidavit has been filed by my
       client and served on the other side yesterday.

C      COURT: You're only asking for 3.4 million out of - how much is
       the total in the account?

D      MR PUN: Eight million, over 8 million.

E      COURT: Yes.

       MR PUN: But there's evidence that those amount is the usual
F      business expenses.

G      COURT: What is the evidence as to that, please?

       MR PUN: My Lord, I wonder whether you -- before you there is a
H      bundle from the defendant.

       COURT: Yes.

I      MR PUN: Yes. My Lord, I do apologise for the late filing of
       those evidence but it has been explained by those
J      instructing me...

K      COURT: Whose affidavit is it?

       MR PUN: The second affidavit of Miss Wong Suk-mei, starting
L      from...

       COURT: Well, that affidavit doesn't appear to be before me.
M
       MR PUN: It's in a bundle, starting from page 15 of the
N      defendant's bundle.

       COURT: Page 15, yes, all right. Where do you give the
O      information about these expenses?

P      MR PUN: Yes. My Lord, attached to the second affirmation of
       Wong Suk-mei is the second affirmation of Stanley Lee David
       Clough(?), starting from page 19, which has been affirmed
Q      but he is on the way to Hong Kong.

       COURT: Yes.

R
       MR PUN: In fact, there is explanation in this affidavit about
S      the transfer of the funds from US to Hong Kong, saying that
       this is the...

T      COURT: Now, what I'm concerned about, you say you want 3.4
       million for ordinary and proper business expenses.

U      MR PUN: Yes. That's starting from page 25, paragraph 18.

A

COURT:  Of?

B

MR PUN:  Of the bundle, page 25 of the bundle.

C

COURT:  How do you get to your figure of 3.4 million?

D

MR PUN:  That's from the letter marked as exhibit to that
        affirmation.

E

COURT:  What page is that, please?

MR PUN:  It is page 117.

F

COURT:  Your client company has been paying this but not from its
        Hong Kong account, has it?

G

MR PUN:  They pay it from Hong Kong account.

H

COURT:  Where does that show?

I

MR PUN:  From the bank statement disclosed.  For example, page
        114 of the same bundle.

J

COURT:  Yes.

K

MR PUN:  Yes, you can see there a column of 'withdrawal'.

COURT:  Yes.

L

MR PUN:  Yes, the operation is that they...

M

COURT:  Well, look, Mr Pun, I can see, on page 114, I see three
        withdrawals and they are all in respect of gold exchange
        debits.

N

MR PUN:  It is exchange, that's there to convert the Hong Kong
        dollar to euros or US dollar.

O

COURT:  No, it's not, it's a gold exchange debit, it's got
        nothing to do with euros or US dollars.

P

MR PUN:  That's gold/exchange.

Q

COURT:  "Gold/exchange debit."

R

MR PUN:  Debit.

S

COURT:  Mr Pun, I'm not silly.  I've bought US dollars, I've
        bought Australian dollars through my own bank account and
        nothing appears saying "gold/exchange debit".

T

MR PUN:  Perhaps may I have...

U

V

COURT:  The evidence falls far short of establishing that these
        withdrawals are in respect of payments to the party that you
        say the money is going to.  The inference arises that this
        is for the purchase of gold.

MR PUN:  My apology, my Lord, perhaps it is my misunderstanding.
        Those instructing me remind me that in fact that is not the
        page, it's the next page, page 115.

COURT:  Yes.

MR PUN:  My apology.

COURT:  All right, well, you're asking for -- where's paragraph
        18?  I'm sorry, you'll have to remind me.  It was page...

MR PUN:  Page 25.

COURT:  And the bill to LeaseWeb is where?  Well, you see, there
        are some withdrawals...

MR PUN:  Yes, euro.

COURT:  ...but the highest -- on page 115, some withdrawals are
        shown.  There's one on 3 May of 98,000; there's one on 4 May
        of 99,000.  How do you relate these to the payments in the
        LeaseWeb letter and how do you come to the sum of
        $3,406,000?

MR PUN:  My Lord, those -- the items you mention is about US
        dollars, but if we go further down, that's about euro.

COURT:  Yes.

MR PUN:  We can see, on 30 April, there's a 235 euros
        withdrawal.  And then further down, 16 May...

COURT:  Well, where is the evidence those two withdrawals are
        LeaseWeb payments and how are they calculated?

MR PUN:  I think it's from the evidence of my client's
        affirmation.

COURT:  At page 25?

MR PUN:  Before that, there's the explanation about the
        operation of that company.  My Lord, starting from paragraph
        14, that's page 23, he explained that the company has a
        PayPal account for accepting payments from customers on
        their website.

COURT:  Yes, but the PayPal account is in the US, isn't it?

MR PUN:  In the US.

A  COURT:  And then they transfer the money to Hong Kong.

B  MR PUN:  To Hong Kong.  Because this is a Hong Kong company, the defendant is a Hong Kong registered company.

C  COURT:  Yes.

D  MR PUN:  So they open their bank account in Hong Kong and their main business is...

E  COURT:  All right, this is what I'm going to -- I am not satisfied that the evidence is sufficient at the moment for me to order the release of these funds, but I will allow you to file an affidavit within 14 days, or earlier, and to come back on three days' notice for leave to release a sum from the bank account for your ordinary and proper business.

H  You're going to have to file an affidavit which shows precisely how this sum of 3.4 million is arrived at.  If you want to say that there are payments out of the bank account which relate to proper business payments, you're going to have to show what those payments are, what they were for and how they were calculated.  Because at the moment, all you're doing is saying, "See, they took money out of their bank account, therefore I should have 3.4 million".  And there's a big gap between the two.  Do you understand?

K  MR PUN:  I understand your Lordship's view, but that 3 million in fact is, as set out in the letter on page 117, because of the injunction and therefore the other side asked for payment for the remainder of the contract.  That's paragraph 2 in the middle of page 117.  And there's a deadline set there.

N  COURT:  What's the present exchange rate between the Hong Kong dollar and the euro?

O  MR PUN:  I think it's about 10.

P  COURT:  Sorry?

Q  MR PUN:  About 10 to 11.

COURT:  Yes.

R  MS WONG:  My Lord, may I address the court on the defendant's application?  First of all, the starting point is that the onus is on the defendant to prove that this amount is necessary for its regular business expenses and we say that the defendant has failed to discharge that onus.  That letter, on page 117, in the last sentence, LeaseWeb specifically say that the agreement "was entered into by a Mr G Maksim in person and LeaseWeb has not consented to the

A   assignment of the agreement to FF Magnat, the defendant, or
    any other entity or person".

B   So first of all, the defendant is not liable for this
    amount.  They haven't shown any contract to say that they're
    liable for the amount, and there's also evidence that this
C   is not an ordinary business expense at all.  Also, the
    defendant has actually made an application - two
D   applications to the US court for the release of funds, and
    on the first occasion, the court released US$100,000, and
    there's no evidence of what the defendant has done with this
E   money, and now it's asking the Hong Kong court for more.

F   COURT:  What do you say about that, Mr Pun?

    MR PUN:  My Lord, first of all, there's a remark at the end of
G            that letter, but it doesn't mean that there's no liability
             to pay the amount to the...

H   COURT:  Well, what is the evidence of the liability of your
            corporate client to pay an obligation of Mr Maksim?

I   MR PUN:  My Lord, the letter was addressed to Oron.com, that's
             the trade name of the defendant here.  You can see from the
J            top of the letter.

    COURT:  Yes.
K
    MR PUN:  Yes, and the amount has been set out in paragraphs 1
L            and 2.  And concerning the US order, it has been specified
             in that order that the US injunction will not affect the
             application or the release of any proper business expenses.
M
    COURT:  What I want you to tell me is what is the evidence that
N           Oron.com should be liable for an obligation of Mr Maksim?

    MR PUN:  The problem has...
O
    COURT:  The fact that this letter is addressed to Oron.com
P           doesn't establish that your client is liable.  It may be
            convenient for your client to make this payment but it
            doesn't establish a legal liability.

Q   MR PUN:  No, Oron.com is the trade name, as my client in US was
             sued under the name of Magnat Limited trading as Oron.com.
R            That's...

S   COURT:  Well, where does Mr Maksim fit into all of this?

    MR PUN:  Pardon me?
T
    COURT:  Where does Mr Maksim fit into all of this?

U

V

MR PUN:  I think there is, as set out in that letter, I think there should be an assignment of the agreement.  We can infer that from the last paragraph.

MS WONG:  But my Lord, there's no evidence of an assignment.

MR PUN:  We can infer from that sentence.

COURT:  We can't infer from that sentence.  The inference I draw from this letter is that LeaseWeb assume that Mr Maksim has assigned its agreement to Oron, but they haven't seen an agreement and they haven't approved any assignment.

MR PUN:  Right.  I think that's a reasonable inference.

COURT:  Well, then why should the injunction be lifted to allow your client to pay an obligation for which it is not legally liable?

MR PUN:  I think there's no dispute that my client is now trading under the name of Oron.com.

COURT:  That's right.  But Oron.com is going to have to show me why it should have to pay an obligation.  I'm not going to release the money at this stage, Mr Pun.  The evidence is insufficient.

MR PUN:  Yes, very well.

COURT:  I decline to make the order under paragraph (5) of Mr Pun's directions.  Mr Pun may come back on three days' notice to apply to have that sum released if he can put appropriate evidence before the court.  I will, however, make the order in terms of paragraph (6) so that the solicitors are paid.  That's a proper business expense.

MS WONG:  My Lord, the 100,000 that was released by the US court actually covered the Hong Kong/US proceedings.

COURT:  I'm going to release 269,000 out of 13 million, Miss Wong.  Don't ask for too much.

The costs on today's hearing will be reserved.

So your summons is adjourned, you've got directions for filing affidavits in response.  You haven't got your money out but you can come back on three days' notice.  All you have to do is file an affidavit and ask the court to re-list it in front of a judge on three days' notice.  It may come back before me, you might get lucky; it may not.  I don't know what will happen.  So that concludes the matter, does it?

MR PUN:  I'm grateful, yes.

COURT:  Yes.  Mr Arthur, I called you Mr Man, I'm sorry.

MR ARTHUR:  No problem, my Lord.

COURT:  Thank you.

MR PUN:  Good-day.

Hearing adjourns - 10.47 am
6 July 2012

I/we certify that to the best of our ability and
skill, the foregoing is a true transcript of the
audio recording of the above proceedings

*J et Cure*

..........................................
Name:  C J Collier
Date:  24 July 2012

HCMP1275/2012

### IN THE HIGH COURT OF THE

### HONG KONG SPECIAL ADMINISTRATIVE REGION

### COURT OF FIRST INSTANCE

### MISCELLANEOUS PROCEEDING NO.1257 of 2012

**\*\*\*\*\*\*\*\*\***

BETWEEN

LIBERTY MEDIA HOLDINGS, LLC                          PLAINTIFF

and

FF MAGNAT LIMITED                                    DEFENDANT

**\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\***

### 2ND AFFIRMATION OF WONG SUK MEI

**\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\***

I, Wong Suk Mei, solicitor of Messrs. S.T. Poon & Wong, solicitors for the Defendant of 16th Floor, Hong Kong Trade Centre, 161-167 Des Voeux Road Central, Hong Kong, solemnly, sincerely and truly affirm and say as follows :-

1.      I have personal conduct of the above case.  I am duly authorised by the Defendant to make this affirmation for and on its behalf.

2.      Unless otherwise stated herein, the facts and matters deposed to herein are within my own knowledge or had been derived in the conduct of the above case, and are true and correct to the best of my knowledge, information and belief.

3.      On or about 00:23 hour on 3rd July 2012, I was informed by Mr. Stevan Lieberman the attorney for the Defendant in United States that the claim against the Defendant in United Sates had reached a settlement.

4.      Upon receipt the confirmation from our client, I therefore prepare a letter together with a draft consent summons to the Plaintiff's solicitors for their consideration. I also contacted Mr. Wan clerk to the Deputy High Court Judge Carlson tried to arrange the appropriate time to submit the duly signed consent summons for the Deputy High Court Judge Carlson's approval.

5.      On 4th July 2012, I was informed by the Plaintiff's solicitors that no agreement had been reached between the Plaintiff and the Defendant and 2 draft consent summons were annexed to their covering letter. Upon receipt of such information, I contacted the Defendant for further instructions and arrange the affirmations to be affirmed at Mascow forthwith.

6.      I therefore received the affirmed affirmation on the 5th July 2012. I produced copy affirmation together with exhibit duly affirmed by on 4th July 2012 as Exhibits "WSM-2". The Affirmations was affirmed by the Beneficial Owner of the Defendant in support of the Defendant's application to discharge the Order made by the Deputy High Court Judge Carlson and to release money from the Hongkong and Shanghai Banking Corporation Limited to the Defendant for its ordinary and proper business operation and legal fee and representation.

7.      The purpose of this affirmation is to enclose the copy affirmation in support of the Defendant's application on an urgent basis. The affirmation is currently sent to Hong Kong by courier and I will ensure the original thereof will be filed at this Honourable Court as soon as possible upon receipt.

8.    Up to the present stage, I estimated that our legal fee including but not limited to the counsel fee had been incurred in the sum of about HK$169,725.00 and I anticipate that further legal fee will be incurred for discharging the Order made by the Deputy High Court Judge Carlson on 22nd June 2012 in or about HK$100,000.00.

Affirmed at   *Messrs. Poon*    )
*Sum & Cheng solicitors*    )
    )
this *7th* day of   *July*   2012   )

Before me,

Lam Fong Vai Alex
Solicitor, Hong Kong SAR
Poon, Sum & Cheng
Solicitors & Notaries

HCMP1275/2012

IN THE HIGH COURT OF THE

HONG KONG SPECIAL ADMINISTRATIVE REGION

COURT OF FIRST INSTANCE

MISCELLANEOUS PROCEEDING NO.1257 of 2012

**********

BETWEEN

LIBERTY MEDIA HOLDINGS, LLC                    PLAINTIFF

and

FF MAGNAT LIMITED                              DEFENDANT

***********************************************

This is the exhibit marked "WSM-2" referred in the Affirmation of Wong Suk Mei dated the 5th July 2012.

| Item No. | Description | Dated | Pages |
|----------|-------------|-------|-------|
| 1. | 2nd Affirmation of Stanislav Davidoglov | 4/07/12 | 1-103 |

*Before me*

*Lam Fng V*

Lam Fong Vai Alex
Solicitor, Hong Kong SAR
Poon, Sum & Cheng
Solicitors & Notaries

HCMP 1275 / 2012

IN THE HIGH COURT OF THE
HONG KONG SPECIAL ADMINISTRATIVE REGION
COURT OF FIRST INSTANCE
MISCELLANEOUS PROCEEDINGS NO. 1275 OF 2012

BETWEEN

LIBERTY MEDIA HOLDINGS, LLC                                Plaintiff

and

FF MAGNAT LIMITED                                          Defendant

## 2ND AFFIRMATION OF STANISLAV DAVIDOGLOV

I, Stanislav Davidoglov of 20 Muhina St., apt. 27, Yalta 98603, Ukraine, do solemnly, sincerely and truly affirm and say as follows :-

1.      I am the beneficiary owner of the Defendant company FF Magnat Limited ("FF Magnat") and am duly authorized to make this Affirmation on behalf of FF Magnat in support of its application for discharge and/or variation of the *ex parte Mareva* injunction made by Deputy High Court Judge Carlson on 22 June 2012 ('the Order').

2.      Unless otherwise stated herein, the facts and matters deposed to herein are within my own knowledge or are gleaned from records and documents, and are true and correct to the best of my knowledge, information and belief.

*Incorporation of FF Magnat*

3.      FF Magnat is a Hong Kong private limited company incorporated on 26 November 2010. Although the registered shareholder is Annabelle Jean Louis, I am the beneficiary owner of FF Magnat by a deed of trust duly signed by Annebelle Jean Louis.

*Business of FF Magnat – Oron.com*

4.      Since 26th November 2010 FF Magnat has run its internet business in the domain name of Oron.com, which is a file sharing hosting company that provides worldwide "cloud" data storage services accessible on the internet throughout the world to private individuals, business and professional users. Like well-known "cloud services" offered by such companies as Apple ("iCloud" and apple.me), Amazon, Google, Hewlett Packard and DropBox, Oron.com offers its users the ability to upload and store large amounts of data on remote and secure servers. The users have complete control over their stored data and decide whether to share their data with others.

5.      Oron.com allows free storage and access to data on its website but charges a flat fee for its premium service, which allows faster uploading and downloading and longer storage. That is how Oron.com makes its money, not through the infringement of anyone's copyrights. Oron.com is strictly governed by its extensive Terms of Service to which each user or guest has to agree to comply. Oron.com is fully compliant with laws such as the Digital Millennium Copyright Act and the Communications Decency Act in USA and similar worldwide legislations.

6.      The majority of the users of Oron.com are from Europe and Asia and only 13.4% of the visitors to Oron's website come from USA. The overwhelming

percentage of its revenue is derived from users outside of the United States.

7.     The Plaintiff is a producer of hard core gay pornographic material, some of which third persons might have stored on Oron.com's computer servers. However, when compared to the total amount of third party files stored on Oron.com's servers, the amount of the Plaintiff's material is infinitesimal. It is estimated that uploads of Plaintiff's files constitute significantly less than one-tenth of one percent (0.1%) of the data stored on Oron.com.

*The litigation in USA*

8.     On or about 30 May 2012, the Plaintiff provided to FF Magnat's US attorney a draft complaint, which is similar to a draft Statement of Claim in Hong Kong, alleging that they had a valid claim against FF Magnat in USA. Negotiation of settlement and arranging for mediation between the Plaintiff and FF Magnat then took place. At one stage, the Plaintiff requested FF Magnat to, among other terms, pay them US$500,000 as settlement sum.

9.     On 20 June 2012, the Plaintiff commenced legal proceedings in the District Court of Nevada, USA against 3 defendants, including FF Magnat d/b/a Oron.com being the 1st defendant and on 21 June 2012 obtained a Temporary Restraining Order freezing the domain name of oron.com and the assets of FF Magnat. There is now produced and shown to me marked "SD-1" a copy of the Temporary Restraining Order dated 21 June 2012 made by United States District Judge Gloria M Navarro ("the US District Judge").

10.    The US Attorney was also retained to defend FF Magnat in the US proceedings. The Answering Papers has been filed in the US Nevada District Court. There is now produced and shown to me marked "SD-2" a copy of the Defendants' Answering Papers dated 3 July 2012. I am advised and verily believe

that FF Magnat has a good defence to the Plaintiff's claim in USA.

11.     On 26 June 2012, upon FF Magnat's application, the US District Judge authorized US$100,000 be released from FF Magnat's PayPal account for its legal fees and business expenses notwithstanding the objection made by the Plaintiff. There is now produced and shown to me marked "SD-3" a copy of the Order of the US District Judge dated 26 June 2012.

*Chronology of events*

12.     For convenience, a chronology of events is appendixed hereunder and in which the important events have been identified:

| Date | | Events |
|---|---|---|
| 26 November 2010 | | Incorporation of FF Magnat |
| 26 November 2010 | | Operation of Oron.com |
| 30 May 2012 | | Plaintiff provided to FF Magnat's US attorney a draft complaint |
| Between 30 May and 20 June 2012 | | Negotiation of settlement and arranging for mediation between Plaintiff and FF Magnat took place |
| 20 June 2012 | | Plaintiff was alerted by a third party that HK$852,278.58 was to be transferred from Paypal to FF Magnat' HSBC account in HK |
| 20 June 2012 | | Plaintiff commenced legal proceedings in the District Court of Nevada, USA against 3 defendants, including FF Magnat d/b/a Oron.com |
| 21 June 2012 | | Plaintiff obtained a Temporary Restraining Order from the US District Judge freezing |

| | | the domain name of oron.com and the assets of FF Magnat |
|---|---|---|
| 22 June 2012 | | Based on the said information of transfer of fund to HK and of the move of registration of Oron.com website from a US company to a European company on 12 June 2012, the Plaintiff apply to the High Court of HK for an *ex parte Mareva* injunction which was granted by Deputy High Court Judge Carlson on the same day |
| 26 June 2012 | | The US District Judge authorized US$100,000 be released from FF Magnat's PayPal account for its legal fees and business expenses |
| 3 July 2012 | | The Defendants' Answering Papers filed in the US Nevada District Court. |

*FF Magnat's assets in Hong Kong*

13.     It is not in dispute that FF Magnat holds the bank account number 614-024354-838 with HSBC ("HSBC Account") in Hong Kong, and it is true that FF Magnat have regularly transferred funds from its PayPal account to the HSBC Account in Hong Kong, where is the domicile of FF Magnat.  However, such regular transfers did not mean that FF Magnat were dissipating its assets as alleged by the Plaintiff.

*Regular transfer of funds from PayPal account to HSBC Account*

14.     As a matter of fact, FF Magnat Limited has a PayPal account that we used to accept payments from customers on our website Oron.com.  To actually get to the funds after FF Magnat Limited have accepted them, we need to withdraw funds from the PayPal account to the HSBC Account.  This is a completely normal and

routine operation. After funds transferred to the HSBC Account, FF Magnat Limited would use those funds to cover costs of running the website. In fact such operation has been done by FF Magnat Limited since 17th January 2011. There is now produced and shown to me marked "SD-4" a copy of the confirmation from PayPal showing the transfers made in 2012.

15.    Such normal and routine operation is also supported by the monthly bank statements of the HSBC Account, a copy of which is produced and shown to me and marked exhibit "SD-5". As seen from the PayPal confirmation and the HSBC bank statements, the routine transfers had been done well before the Plaintiff provided to FF Magnat's US attorney a draft complaint on 30 May 2012, although in the Affidavit of Ronald D. Green, JR made on behalf of the Plaintiff it was said that Mr. Marc J. Randazza *"only discovered the transfer on 20 June 2012 after he had provided a draft complaint to the Defendants on 30 May 2012"*. As such, the Plaintiff's allegations that *"the transfer of these funds demonstrates that the Defendants and their attorneys were negotiating potential settlement and mediation in bad-faith"* and that *"these assets are being intentionally moved offshore for the express intent of keeping the company's valuable property away from the reach of U.S. Courts"* are without foundation and is misconceived.

*Alleged transfer of the registration of domain name*

16.    The Plaintiff also alleged that on 12 June 2012 *"the Oron.com website was moved from registration with Network Solutions, LLC, an American company, to registration with EuroDNS S.A., a European company"* (page 97 of exhibit "MJR-1" and paragraph 31 of Affidavit of Ronald D. Green, JR). Based on this information together with the so-called "transfer of funds", the Plaintiff said that they had come to the conclusion that FF Magnat was dissipating its assets offshore.

17.    Though it is admitted that EuroDNS S.A has been used by FF Magnat since

12 June 2012 to replace Network Solutions, LLC. I would clarify that it was not a change of domain name registration but is merely a change of domain name registrar. Both EuroDNS S.A and Network Solutions, LLC are worldwide domain name registrar. It was simply because we believed that EuroDNS S.A would be able to provide better customer services than Network Solutions, LLC did, we therefore decided to use its services instead of Network Solutions, LLC's. It is not a *"transfer of the registration domain name to an offshore registrant"* as alleged by the Plaintiff, and there is nothing to do with dissipating assets at all.

*FF Magnat's business expenses*

18.    As deposed above, after funds transferred from the PayPal account to the HSBC Account, FF Magnat Limited would use those funds to cover costs of running the website. A sum of around EUR72,000.00, which is equivalent to HK$703,000.00 per month is required for settlement of FF Magnat's running costs on a regular basis. However, due to the Order, FF Magnat did not have any funds to settle the monthly bill to Leaseweb and Leaseweb demanded the balance of the contract price in the sum of EUR348,845.29 to be paid forthwith on or before 9 July 2012 as shown in the demand letter of Leaseweb, a copy of which is now produced and shown to me marked "SD-6".

19.    In such circumstance, I apply to this Honourable Court for the release of HK$3,406,086.65 to FF Magnat from the HSBC Account on or before 9 July 2012 so that we can settle the said bill within time, otherwise the website will likely be shut down by the service provider.

20.    I also reserve the right to apply further sum be released to FF Magnat from the HSBC Account for its ordinary and proper business expenses.

*Legal expenses*

21.    FF Magnat has retained solicitors and counsel for legal advice and also

making the present applications. A sum of around HK$169,725.00 has already been incurred. It is expected that a further sum of about HK$100,000 is required when the application for discharge is set down for argument. I thus apply to this Honourable Court for an order that HK$269,725 be released to FF Magnat's solicitors, namely Messrs. S.T. Poon & Wong from the HSBC Account to cover the legal expenses incurred and to be incurred.

22.    In the premises, I respectfully pray for an Order in terms of the Summons filed herein.

AFFIRMED at                    )
                               )
                               )
                               )
this 4 day of   July  2012     )

Before me

I, Brezhneva Galina Vladimirovna, deputy of head of the branch N9 of ninth Moscow City State Notary Office, do testify to the authenticity of the signature of known to me Mr. Davidoglov Stanislav Pavlovich, residing at Ukraine, Yalta, Muhina St 20, apt 27., that was put before me.

Entered into the registry as  1 n-108

Fee of 3000 rubles collected according to the fee schedule

Notary Public

This Affidavit / Affirmation is filed on behalf of the Defendant

HSBC Business Direct Statement
滙豐「理財易」商務戶口結單

# HSBC 🅭 滙 豐

| | | | | |
|---|---|---|---|---|
| Number 戶口號碼 | 614-024354-838 | Branch 分行 | KOWLOON BAY CVC | |

Page 2 of 4
16 May 2012

---

**Portfolio Summary 資產摘要**

**HSBC Business Direct 滙豐「理財易」商務戶口**

| | Account Number 戶口號碼 | CCY 貨幣 | Balance 結餘 (DR=Debit 結欠) | HKD Equivalent 等值港幣 (DR=Debit 結欠) |
|---|---|---|---|---|
| **Deposits 存款** | | | | |
| HKD Savings 港元儲蓄 | 614-024354-838 | HKD | 120,447.28 | 120,447.28 |
| Foreign Currency Savings 外幣儲蓄 | | USD | 16,945.07 | 147,178.57 |
| | | EUR | 509,962.20 | 5,032,602.56 |
| | | CHF | 0.18 | 1.48 |
| | | CNY | 26.91 | 33.05 |
| Foreign Currency Time Deposits 外幣定期存款 | | USD | 4,000.49 | 31,078.61 |
| Total 總計 | | | | 5,331,341.55 |

---

**Account Activities 戶口進支紀錄**

**HSBC Business Direct HKD Savings 滙豐「理財易」商務戶口 – 港元儲蓄**

| Date 日期 | Transaction Details 進支詳情 | | Deposit 存入 | Withdrawal 提取 | Balance 結餘 |
|---|---|---|---|---|---|
| 16 Apr | B/F BALANCE | 承前轉結 | | | 11,017.26 |
| 18 Apr | HK1160429TA24J25G 055 | | | | |
| | DBA FDC ENTERPRISES | 轉賬收入 | 8,962.00 | | 19,979.26 |
| 23 Apr | N42300108462 | | | | |
| | GOLD/EXCHANGE DEBIT | 限入金/外匯支出 | | 19,979.00 | 0.26 |
| 25 Apr | HK1250429JAP8M2J2 055 | | | | |
| | DBA FDC ENTERPRISES | 轉賬收入 | 13,276.67 | | 13,276.93 |
| 27 Apr | CREDIT INTEREST | 利息收入 | 0.82 | | 13,277.75 |
| 2 May | PAYPAL PTE LTD | | | | |
| | 4CWJ25TTH-I3G26 | 轉賬收入 | 123,779.70 | | |
| | PAYPAL PTE LTD | | | | |
| | 4CWZ25U3TD2CDJ | 轉賬收入 | 211,267.78 | | |
| | PAYPAL PTE LTD | | | | |
| | 4CWJ25TTGTY54 | 轉賬收入 | 750,000.00 | | |
| | PAYPAL PTE LTD | | | | |
| | 4CWJ25TUFQNUO | 轉賬收入 | 885,226.70 | | |
| | PAYPAL PTE LTD | | | | |
| | 4CWJ25U4BH0ZU | 轉賬收入 | 889,066.66 | | 2,872,618.59 |
| 3 May | HK0030629J3FI3E 055 | | | | |
| | DBA FDC ENTERPRISES | 轉賬收入 | 24,728.69 | | |
| | N50030155045 | | | | |
| | GOLD/EXCHANGE DEBIT | 限入金/外匯支出 | | 776,900.00 | |
| | N50030155427 | | | | |
| | GOLD/EXCHANGE DEBIT | 限入金/外匯支出 | | 2,000,000.00 | 120,447.28 |

| | | | | |
|---|---|---|---|---|
| Total No. of Deposits: 存入次數總計 | 9 | Total No. of Withdrawals: 提取次數總計 | | 3 |
| Total Deposit Amount: 存入總額 | HKD 2,908,309.02 | Total Withdrawal Amount: 提取總額 | HKD | 2,796,879.00 |

---

**HSBC Business Direct Foreign Currency Savings 滙豐「理財易」商務戶口 – 外幣儲蓄**

| CCY 貨幣 | Date 日期 | Transaction Details 進支詳情 | | Deposit 存入 | Withdrawal 提取 | Balance 結餘 |
|---|---|---|---|---|---|---|
| USD | 16 Apr | B/F BALANCE | 承前結站 | | | 46,685.04 |
| | 23 Apr | DEPOSIT | 存款 | | | |
| | | Internet Ref: | | | | |
| | | BIB- N42300108452 | | 2,570.24 | | |
| | | WITHDRAWAL | 提款 | | 4,000.00 | |
| | | WITHDRAWAL | 提款 | | 14.20 | 45,241.08 |
| | 3 May | WITHDRAWAL | 提款 | | 3,000.00 | |
| | | WITHDRAWAL | 提款 | | 14.20 | |
| | | WITHDRAWAL | 提款 | | 2,550.00 | |
| | | WITHDRAWAL | 提款 | | 2,628.00 | |
| | | WITHDRAWAL | 提款 | | 14.20 | |
| | | WITHDRAWAL | 提款 | | 2,750.00 | |
| | | WITHDRAWAL | 提款 | | 14.20 | |
| | | WITHDRAWAL | 提款 | | 1,250.00 | |
| | | WITHDRAWAL | 提款 | | 14.20 | |

**Exchange Rate 匯率**

USD 7.768700      CHF 8.216065      CNY 1.228292      EUR 9.868580

The Hongkong and Shanghai Banking Corporation Limited
香港上海滙豐銀行有限公司

HSBC Business Direct 滙豐「理財易」商務戶口 ☎ 2748 8288

Sperlein Declaration
Exhibit B Page 13

HCMP1275/2012

IN THE HIGH COURT OF THE

HONG KONG SPECIAL ADMINISTRATIVE REGION

THE COURT OF FIRST INSTANCE

MISCELLANOUS PROCEEDING NO.1275 of 2012

**********

BETWEEN

LIBERTY MEDIA HOLDINGS, LLC    Plaintiff

and

FF MAGNAT LIMITED    Defendant

**********

mmmmmmmmmmmmmmmmmmmmmmmmmmmmmmmmm

2ND AFFIRMATION OF WONG SUK MEI

mmmmmmmmmmmmmmmmmmmmmmmmmmmmmmmmmm

**Filed this** 5th **day of** July **2012.**

S. T. POON & WONG
SOLICITORS
16TH FLOOR, HONG KONG TRADE CENTRE,
161-167 DES VOEUX RAOD,
CENTRAL, HONG KONG

REF: CI/MW/ET/MW/55289/12