UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| Flava Works, Inc., | ) |
| | ) |
| Plaintiff, | ) Case No. 1:12-cv-05844 |
| | ) |
| FF Magnat Limited d/b/a Oron.com, et. al, | ) |
| | ) |
| Defendants. | ) |

**PLAINTIFF, FLAVA WORKS, INC.'S,
AMENDED RESPONSE TO DEFENDANT, FF MAGNAT LIMITED'S
MOTION TO QUASH**

Plaintiff, Flava Works, Inc. ("Flava"), by its attorneys, Meanith Huon, states as follows:

## I. FACTS

### A. FF MAGNAT LIMITED THREATENED TO RENEGE ON A $550,000.00 SETTEMENT AGREEMENT UNLESS IT INCLUDED MAXIM BOCHENKO IN THE NEVADA LITIGATION.

Defendant, FF Magnat Limited d/b/a Oron.com ("FF Magnat") contends that it has no relationship with Maxim Bochenko. FF Magnat, and Mr. Bochenko were sued in Liberty Media Holdings, LLC v. FF Magnat Ltd., 2012 U.S. Dist. LEXIS 110116 (D. Nev. 2012) (the "Nevada Litigation"). On June 22, 2012, the Nevada District Court entered a temporary restraining order freezing the assets of FF Magnat. Exhibit "A". On June 25, 2012, FF Magnat filed an Emergency Motion seeking relief from the order to pay expenses. Exhibit "B".[1]

On July 1, 2012, Defendant, FF Magnat, agreed to settle its lawsuit with Liberty Media Holdings in the Nevada litigation for 300,000.00. Exhibit "C". However, Defendant, FF Magnat, then threatened to renege on the settlement agreement, unless Mr. Bochenko was

---

[1] The plaintiff's attorney in Liberty Media Holdings, LLC v. FF Magnat Ltd. also obtained an order freezing 3,000,000.00 of FF Magnat's asserts in Hong Kong. Exhibit "B".

included in the settlement.[2] FF Magnat's, attorney in the Nevada litigation stated "Oron intended that any agreement would include both itself and Defendant Maxim Bochenko, and believed that the term sheet so provided . . . Exhibit "D". The fact that FF Magnat would risk a settlement that could unfreeze the $3,000,000.00 in frozen assets needed to run its business because Mr. Bochenko was not included in the settlement is telling.[3]

### B.  FF MAGNAT WAS MOVING FUNDS OVERSEAS.

A plausible explanation for why plaintiff's counsel in the Nevada litigation did not want to include Mr. Bochenko in the settlement, is because FF Magnat could shut down Oron.com, move its assets overseas, and start a new website.  In <u>Datatech Enters. LLC v. FF Magnat Ltd.</u>, the District Court in the Northern District of California entered a temporary restraining order and a permanent injunction against Defendant, FF Magnat, for that reason:

> Datatech's dissipation argument rests on filings from the Liberty Media Holdings litigation indicating that, shortly after receiving a draft copy of the complaint, Magnat transferred its domain name registration overseas and moved over $100,000 from its PayPal account to a Hong Kong bank, where money was converted into foreign currencies. See Ex. A to Datatech Request for Judicial Notice (dkt. 2-1); Sperlein Decl. ¶¶ 2, 4 (dkt. 3). Also, a user of Magnat's website says that in January 2012 Magnat switched its payment processing services   from PayPal, a U.S. company, to Alertpay, which (according to Datatech's counsel) is a Canadian company. See Hare Decl. ¶ 7 (dkt. 29-1). Finally, Datatech argues that because Magnat's website has ceased operating after the Liberty Media Holdings litigation, Stanislav Decl. ¶ 3, once funds are moved it is unlikely they will be replenished. <u>Datatech Enters. LLC v. FF Magnat Ltd.</u>, 2012 U.S. Dist. LEXIS 131711, 12-13 (N.D. Cal. Sept. 14, 2012).  (The "California litigation".)

### C.      MAXIM BOCHENKO IS AN AGENT OF FF MAGNAT.

---

[2] A dispute arose after the Settlement Letter was signed . Defendant believed that all defendants, including Mr. Bochenko, would be included in the terms; Plaintiff apparently did not.  <u>Liberty Media Holdings, LLC v. FF Magnat Ltd</u>., 2012 U.S. Dist. LEXIS 110116, 2-5 (D. Nev. Aug. 7, 2012).

[3] Defendant, FF Magnat, was served in the Nevada Litigation by service on "Maxim Bochenko a/k/a Roman Romanov." Exhibit "E".  FF Magnat filed a 17 page Motion to Dismiss for Lack of Jurisdiction in the Nevada litigation based on lack of personal jurisdiction, without arguing insufficiency of process of service.  Exhibit "F".

Maxim Bochenko is associated with the email address at main_max@mail.ru, Exhibits "J" and "K", and mainroman@gmail.com , Exhibit "L". Roman Romanov has used the same the mainroman@gmail.com address, identifying himself as Maxim Bochenko. Exhibit "M".[4] A report on royalfoam.us website lists Maxim Bochenko as the owner, the email address listed is main_max@mail.ru, the owner's address is listed as Jacksonville, Florida. Exhibit "19". DMCA notices or copyright violation notices to Oron.com were forwarded to mainroman@gmail.com. Group Exhibit "N". A DMCA or copyright violation notice to another file-sharing service, Fileserve.com, was sent to mainroman@gmail.com. Exhibit "N". Emails from mainroman@gmail.com were sent to himself with a file called "Oron Work.txt." and "Oron Abuses". Exhibit "T". Email from mainroman@gmail.com was sent to another individual with an Oron.com password. Exhibit "T".

The LeaseWeb.com hosting bills to Oron.com was directed to "Mr. G. Maksim." Exhibit "O". There is an email from LeaseWeb.com to support@oron.com and mainroman@gmail.com re instructions for how to pay the LeaseWeb.com hosting bill. Numerous payments were made to the account associated with the email addresses at main_max@mail.ru , mainmax@gmail.com, and mainroman@gmail.com. Exhibit "P". Payments were made to Maxim Bochenko by Pay Pal associated with email address main_max@mail.ru . Exhibit "P". Pay Pal corresponds with Oron.com. Exhibit "P". An email from alertpay.com was sent to via mainroman@gmail.com with the account history of FF Magnat. Several emails were sent to Oron.com via mainroman@gmail.com. Group Exhibit "Q".

There are emails between sven@oron.com at Oron.com and mainroman@gmail.com discussing Oron.com's marketing plans. Exhibit "R". There were emails forwarded from

---

[4] Flava relies on the documents filed Docket No. 83 in the Nevada Litigation.

sven@oron.com a/k/a Marketing Manager to mainroman@gmail.com regarding email correspondence to a vendor and the need for the use of a new name by the Marketing Manager for Oron.com. Exhibit "R". Email from Oron.com was sent asking a third party to contact Oron.com via Skype under the alias "mainroman." Exhibit "U". An email from mainroman identifying himself as a manager from Oron.com was sent. Exhibit "U". Oron.com support emailed a webmaster to contact him at his confidential and private Skype alias at "mainroman." Exhibit "U". Support@Oron.com emailed rapidgator.net to Skype "mailroman" in response to an inquiry as to the owner of Oron.com. Exhibit "U". An email from Oron.com was signed "Maxim." Exhibit "V". An email was sent to Maxim at Oron.com. Exhibit "V". Attached as Exhibit "Y" is a text file that contains picsforfriends.info image links and Oron.com links. The file includes posts with the username "mainroman."

    A series of email to Oron.com referred to the same individual as "Roman" and "Maxim", associated with a Skype alias "mainroman." Exhibit "W". An email was sent from GoDaddy.com to Roman Romanov at the email address mainroman@gmail.com. Exhibit "W". An email from Roman Romanov at mainroman@gmail.com asked Tulipworld.com to ship a delivery to Maxim Bochenko in Ponte Vedra Beach, Florida. Exhibit "X". A search online reveals several   order confirmation, shipping confirmations associated with the mainroman@gmail.com address that were sent to Maxim Bochenko. Exhibit "X". Roman Romanov emailed Clips4Sale.com using the mainroman@gmail.com address and identified himself as Maxim Bochenko. Exhibit "X". On information and belief, Clips4Sale.com is a site for adult amateur porn, fetish, sex videos, hardcore movies, videos and clips with 600 fetish

Case: 1:12-cv-05844 Document #: 58 Filed: 03/05/13 Page 5 of 17 PageID #:1922

categories from 50000 different studios.  A Dell computer was shipped to Maxim Bochenko at the address in Florida, with the email address mainroman@gmail.com.  Exhibit "S".[5]

## II.  ARGUMENT

### A.  MR. BOCHENKO WAS PROPERLY SERVED AS AN AGENT OF FF MAGNAT UNDER FRCP 4 FOLLOWING ILLINOIS LAW.

FRCP 4(h) provides that a domestic or foreign corporation must be served:

(1) in a judicial district of the United States:

(A) in the manner prescribed by Rule 4(e)(1) for serving an individual; or

(B) by delivering a copy of the summons and of the complaint to an officer, a managing or general agent, or any other agent authorized by appointment or by law to receive service of process and—if the agent is one authorized by statute and the statute so requires—by also mailing a copy of each to the defendant; or

(2) at a place not within any judicial district of the United States, in any manner prescribed by Rule 4(f) for serving an individual, except personal delivery under (f)(2)(C)(i).

FRCP 4(e) provides as follows:

(e) Serving an Individual Within a Judicial District of the United States. Unless federal law provides otherwise, an individual—other than a minor, an incompetent person, or a person whose waiver has been filed—may be served in a judicial district of the United States by:

(1) following state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located or where service is made; or

Illinois law provides as follows:

Sec. 2-204. Service on private corporations. A private corporation may be served (1) by leaving a copy of the process with its registered agent or any officer or agent of the

---

[5] In his Declaration, Mr. Bochenko admits that goods were ordered under the name of Roman Romanov and shipped to his address.  In his Affidavit, Mr. Romanov admits that he ordered goods that were shipped to Mr. Bochenko's address. Mr. Bochenko has produced a Declaration in English dated September 28, 2012.  Exhibit "Z".    Mr. Bochenko has produced a Declaration of Roman Romanov in English dated the same date.   Exhibit "AA".   But the notary certification for Mr. Romanov's declaration is in Russian.

corporation found anywhere in the State; or (2) in any other manner now or hereafter permitted by law. A private corporation may also be notified by publication and mail in like manner and with like effect as individuals. (735 ILCS 5/2-204).

Illinois courts have held that agents who solicits business, a secretary, a receptionist can accept service on behalf of a private corporation. <u>Sarro v. Illinois Mut. Fire Ins. Co.</u>, 34 Ill. App. 2d 270, 273-274 (Ill. App. Ct. 2d Dist. 1962) (A person who can "solicit business and collect premiums" for his principal is, in our view, an agent with an unlimited capacity for purposes of service ); <u>United Bank of Loves Park v. Dohm</u>, 115 Ill. App. 3d 286, 292 (Ill. App. Ct. 2d Dist. 1983) (We are satisfied from the record that Barb Baxter was an agent of the Rockford bank for receipt of process and that she understood the purport of the service of summons and her duty to deliver the document. That she was a clerk rather than a registered officer of the corporation is not important); <u>Union Asbestos & Rubber Co. v. Evans Products Co.</u> (7th Cir. 1964), 328 F.2d 949 and <u>Island Terrace Apts. v. Keystone Serv. Co.</u>, 35 Ill. App. 3d 95, 99 (Ill. App. Ct. 1st Dist. 1975) (Service on a secretary or receptionist "who understands the purport of the service of summons" may be service on the corporation); <u>People v. Beaulieu Realtors, Inc.</u>, 144 Ill. App. 3d 580, 583-585 (Ill. App. Ct. 1st Dist. 1986) (service on a receptionist or secretary at Beaulieu); <u>Megan v. L. B. Foster Co.</u>, 275 N.E.2d 426, 427-428 (Ill. App. Ct. 2d Dist. 1971) (Service upon an intelligent clerk of a company who acts as a receptionist and who understood the purport of the service of summons was sufficient); <u>Megan v. L. B. Foster Company,</u> 1 Ill. App. 3d 284, 275 N.E. 2d 426 (1971) (an employee engaged as a clerk or a typist may be an agent for purposes of receiving service if that person understood the purport of service). When the agency of the person named on the return is disputed, the burden is on the defendant to show that the individual served was not a proper person to receive service.

Island Terrace Apartments v. Keystone Service Co., 35 Ill. App. 3d 95, 98, 341 N.E. 2d 41, 44 (1975). Golan v. Wells, 1980 U.S. Dist. LEXIS 10349 (N.D. Ill. Jan. 21, 1980)

In Herndon-Carter Co. v. James N. Norris, Son & Co., 224 U.S. 496 (U.S. 1912), the U.S. Supreme Court held that, based on a letter written to the individual who was served with the complaint from defendant, it was clear that defendant's relationship with the individual as the defendant's had not changed.[6] The Court concluded that the individual was the authorized managing agent of the defendant company. Herndon-Carter Co. v. James N. Norris, Son & Co., 224 U.S. 496, 502-503 (U.S. 1912). See also Michigan Aluminum Foundry Co. v. Aluminum Castings Co., 190 F. 879, 886-887 (C.C.D. Mich. 1911) (Service on a sales agent of the defendant and a general sales agent of the defendant was proper service on defendant corporation).

In this case, the Defendant, FF Magnat Limited, was served on September 12, 2012 by personal service on its agent, Maxim Bochenko. Exhibit "DD". Based on the documents filed in the Nevada litigation, and in an age where business is conducted via email correspondence, Oron.com, authorized Mr. Bochenko to act as its agent in the United States to solicit business, accept payments, make payments for hosting services, approve marketing plans. Mr. Bochenko held himself out as Roman Romanov and as a manager or principal of Oron.com. The

---

[6] The defendant company wrote to the plaintiff company as follows:

"The Herndon-Carter Company, Louisville, Ky.

GENTLEMEN: I am just in receipt of your several letters in which you call attention to the unpleasantness you are having with our house in Louisville.

Now, I would like to make myself plain in this matter. As I have always stated to you and every one else, there is never any good in fighting, but, on the contrary, lots of money lost and harm done. Our Mr. Adams, who runs our house in Louisville, has a certain interest in the profits, and it would be pretty hard for me to say that he shouldn't do this or that, which, in his judgment, curtails his profits." Herndon-Carter Co. v. James N. Norris, Son & Co., 224 U.S. 496, 502-503 (U.S. 1912).

documents indicate that payments were being made to Mr. Bochenko. Roman Romanov used the same email address as Mr. Bochenko and identified himself as Maxim Bochenko. Oron.com sent emails via Support@Oron.com Oron.com asking third parties to contact Oron.com via Skype under the alias "mainroman"—Mr. Bochenko used the email address mainroman@gmail.com. LeaseWeb.com hosting bills to Oron.com were directed to "Mr. G. Maksim." Emails from LeaseWeb.com were sent to support@oron.com and mainroman@gmail.com with instructions for how to pay the LeaseWeb.com hosting bill. Numerous payments were made to the account associated with the email addresses used by Mr. Bochenko. Payments were made to Maxim Bochenko by Pay Pal associated with email address main_max@mail.ru . An email from alertpay.com was sent to Mr. Bochenko with the account history of FF Magnat. Several emails intended for Oron.com were sent to Mr. Bochenko. There are emails between sven@oron.com at Ornon.com and mainroman@gmail.com discussing Oron.com's marketing plans. An email from mainroman identified himself as a manager from Oron.com was sent. DMCA take down notices were being sent to Oron.com at the email addresses associated with Mr. Bochenko.

Defendant, FF Magnat, had $3,000,000.00 in assets frozen affecting its business operations. Defendant, FF Magnat called off a settlement that could have allowed it to unfreeze its assets, because Mr. Bochenko was not included in the settlement. Defendant, FF Magnat, would not have threatened to call off a settlement for $500,000.00 that could have unfrozen its assets for an individual who has no relation to the company.

**B.  MR. BOCHENKO WAS PROPERLY SERVED AS AN AGENT OF FF MAGNAT UNDER FRCP 4 FOLLOWING FLORIDA LAW.**

Florida law provide as follows:

§ 48.081.  Service on corporation

(1) Process against any private corporation, domestic or foreign, may be served:

(a) On the president or vice president, or other head of the corporation;

(b) In the absence of any person described in paragraph (a), on the cashier, treasurer, secretary, or general manager;

(c) In the absence of any person described in paragraph (a) or paragraph (b), on any director; or

(d) In the absence of any person described in paragraph (a), paragraph (b), or paragraph (c), on any officer or business agent residing in the state.

(2) If a foreign corporation has none of the foregoing officers or agents in this state, service may be made on any agent transacting business for it in this state.

(3) (a) As an alternative to all of the foregoing, process may be served on the agent designated by the corporation under s. 48.091. However, if service cannot be made on a registered agent because of failure to comply with s. 48.091, service of process shall be permitted on any employee at the corporation's principal place of business or on any employee of the registered agent. A person attempting to serve process pursuant to this paragraph may serve the process on any employee of the registered agent during the first attempt at service even if the registered agent is temporarily absent from his or her office.

(b) If the address provided for the registered agent, officer, director, or principal place of business is a residence or private mailbox, service on the corporation may be made by serving the registered agent, officer, or director in accordance with s. 48.031.

(4) This section does not apply to service of process on insurance companies.

(5) When a corporation engages in substantial and not isolated activities within this state, or has a business office within the state and is actually engaged in the transaction of business therefrom, service upon any officer or business agent while on corporate business within this state may personally be made, pursuant to this section, and it is not necessary in such case that the action, suit, or proceeding against the corporation shall have arisen out of any transaction or operation connected with or incidental to the business being transacted within the state.  Fla. Stat. § 48.081.

Service on an employee pursuant to subsection 48.081(3) may be resorted to when service cannot be made on a registered agent in Florida because of a corporation's failure to maintain the registered agent pursuant to subsection 48.091.  <u>NTCA Corp. v. Assocs. Commer. Corp.</u>, 812 So. 2d 506 (Fla. Dist. Ct. App. 3d Dist. 2002).  In <u>NTCA Corp.,</u> plaintiff

served a subpoena for deposition duces tecum on NTCA's manager Ernesto Roque in the absence of any superior or corporate officer. The Florida Appellate Court agreed with the trial court that NTCA was properly served. Section 48.081 provides for service of process by serving the president, vice president or head of a corporation, or in their absence, by serving the next category of persons: the cashier, treasurer, secretary or general manager. Alternatively, the registered agent can be served. If service cannot be made because a corporation has not designated a registered agent, service is permitted on any employee at the corporation's place of business. In NTCA Corp., the plaintiff chose to serve process in accordance with the method prescribed in 48.081(1), rather than serve the registered agent as provided in 48.081(3). That choice was the plaintiff's to make; it was not required to serve the registered agent. Accordingly, service on the general manager in the absence of a superior officer, was entirely proper. NTCA Corp. 812 So. 2d at 506-507.

In Richardson v. Albury, the Florida Appellate Court held that once the process server determined that the corporation had not complied with section 48.091 by keeping current its registered agent listing at the Department of State, Division of Corporations Florida Statutes, the process server could serve "any employee at the corporation's place of business." 505 So. 2d 521, 522-523 (Fla. Dist. Ct. App. 2d Dist. 1987). The process server served "Susan Shafronsky as Station Mgr. . . . of defendant corporation in the absence of any superior as defined by Florida Statute, Section 48.081. . . ." Navigation, Inc., 576 So. 2d at 420. The Court explained that "The purpose of service of process is to give a defendant proper notice that it is answerable to a plaintiff's claim, to advise the defendant as to the nature of that claim, and to afford the defendant an opportunity to defend against it." Id.

The Eleventh Circuit stated that "the purpose of process is to advise the party of the

nature of the action brought against him." Woodham v. Nw. Steel & Wire Co., 390 F.2d 27, 30 (11th Cir 1968).[7] The test used to determine if service upon an agent is sufficient to constitute service upon a corporation is whether or not, in fact, the corporation will receive notice of the action. Sehringer v. Big Lots, Inc., 532 F. Supp. 2d 1335, 1342 (M.D. Fla. 2007). In cases where actual notice of suit has been received by defendant, Rule 4(d)(1) should be liberally construed to effectuate service. Id. Effective service is most likely found when a defendant has engaged in deception to avoid service of process. In certain situations, strict compliance with Fed. R. Civ. P. 4(d)(1) is unnecessary. Id.

For the same reason stated above, Mr. Bochenko is an agent of Defendant, FF Magnat. On information and belief, Defendant, FF Magnat, has not designated a registered agent in Florida. http://sunbiz.org/scripts/cornamelis.exe. Thus, Plaintiff, Flava Works, Inc. can serve any employee at Defendant's place of business. From the email correspondence and documents, he received a Dell computer that was shipped to his home in Florida, Mr. Bochenko conducted business from his computer, he received instructions on making payments to Leaseweb for hosting services, he received payments from Paypal, he contacted Clips4sale.com for products, he received DMCA notices, he conferred with Oron.com about marketing and other business matters. Mr. Bochenko was an agent in the U.S. for Oron.com that had abundant U.S. contacts. As the next section discusses, about 12% of Magnat's website traffic came from the United States, and according to a website that analyzes web traffic, the United States was the country with the largest share of Magnat's traffic. FF Magnat's website had at least 260,000 daily

---

[7] This decision was formerly cited as from the Fifth Circuit: Woodham v. Northwestern Steel & Wire Co., 390 F.2d 27, 30 (5th Cir. Fla. 1968).

visitors, meaning that the absolute volume of U.S. daily traffic exceeded 30,000 hits. Datatech Enters. LLC v. FF Magnat Ltd., 2012 U.S. Dist. LEXIS 131711, 7-9 (N.D. Cal. Sept. 14, 2012).

The test used to determine if service upon an agent is sufficient to constitute service upon a corporation is whether or not, in fact, the corporation will receive notice of the action. In this case, a few days after Flava Works, Inc. noticed its motion to default Defendant, FF Magnat, by serving Mr. Bochenko, the attorneys for Defendant, FF Magnat, filed its appearance.

### C.  DEFENDANT HAS WAIVED THE ISSUE OF PERSONAL JURISDICTION.

Defendant, FF Magnat, has not raised the issue of personal jurisdiction and, thus, has waived it. Tiernan v. Dunn, 295 F. Supp. 1253, 1255-1256 (D.R.I. 1969); Crest Auto Supplies, Inc. v. Ero Mfg. Co., 360 F.2d 896 (7th Cir.1966). FRCP 12(h)(1) provides "A party waives any defense listed in Rule 12(b)(2)–(5) by: (A) omitting it from a motion in the circumstances described in Rule 12(g)(2); or . . ."[8]

Arguing in the alternative, The District Court in the California litigation held that it had personal jurisdiction over Defendant, FF Magnat, based on its abundant U.S. contacts and daily volume of U.S. traffic [9] Flava Works, Inc. also adopts and incorporates the arguments made in its Response to Bochenko's Motion to Dismiss. Docket No. 23.

---

[8] FRCP 12(g)(2) provides:" Except as provided in Rule 12(h)(2) or (3), a party that makes a motion under this rule must not make another motion under this rule raising a defense or objection that was available to the party but omitted from its earlier motion."

[9] As the District Court explained:

In Datatech's view, Magnat had abundant U.S. contacts: • About 12% n1 of Magnat's website traffic came from the United States, and according to a website that analyzes web traffic, the United States was the country with the largest share of Magnat's traffic, Sperlein Decl. ¶ 2

• Magnat registered a copyright agent with the U.S. Copyright Office, Stanislav Decl. ¶ 12
• Magnat's "Terms of Service" on its website referred to U.S. Law, Ex. B to Stanislav Decl.
• Magnat used PayPal, a U.S. company providing web-payment services, to process transactions with customers, Phinney Decl. ¶ 2

### D. IN THE ALTERNATIVE, PLAINTIFF, FLAVA WORKS, INC. SEEK LEAVE TO SERVE DEFENDANT BY ALTERNATIVE SERVICE.

Federal Courts have provided for alternative methods of service. In re Int'l Telemedia Associates, Inc., 245 B.R. 713, 720 (Bankr. N.D. Ga. 2000); Fin. Group, LLC v. President & Fellows, 199 F.R.D. 22, 23–24 (D.Me.2001); Moreland v. Dorsey Thornton & Assocs. LLC, 2010 U.S. Dist. LEXIS 139036 (E.D. Wis. Dec. 29, 2010); Fifth Third Bank v. Malone, 2010 U.S. Dist. LEXIS 4352 (N.D. Ill. Jan. 20, 2010).[10]

Illinois law also provides for service by special order of court:

Sec. 2-203.1. Service by special order of court. If service upon an individual defendant is impractical under items (1) and (2) of subsection (a) of Section 2-203, the plaintiff may move, without notice, that the court enter an order directing a comparable method of service. The motion shall be accompanied with an affidavit stating the nature and extent of the investigation made to determine the whereabouts of the defendant and the reasons why service is impractical under items (1) and (2) of subsection (a) of Section 2-203, including a specific statement showing that a diligent inquiry as to the location of the

---

• Magnat permitted Porn Guardian, a U.S. company, to have some access its servers to protect U.S. copyright holders from illegal uses of Magnat's website, and Porn Guardian notified Magnat over 40,000 times of files that violated Datatech's copyrights, Phinney Decl. ¶¶ 7-12; Stanislav Decl. ¶ 15
• Magnat registered its domain name with a U.S. domain registrar for some time, Sperlein Decl. ¶ 3

[FOOTNOTES]
n1 Datatech also offered evidence that Magnat's website had at least 260,000 daily visitors, meaning that the absolute volume of U.S. daily traffic exceeded 30,000 hits. See Phinney Decl. ¶ 6.

The maintenance of a website accessible to U.S. visitors, and the use of U.S.-based web services like PayPal, may not themselves provide contacts sufficient to satisfy due process. Here, however, Magnat received a "substantial number of hits" from the United States and directly profited from those hits in the form of subscription fees from U.S. users. See Hare Decl. ¶¶ 2-6. In addition, several features of the website's operation and Terms of Service demonstrated an awareness that the website exploited (and threatened) U.S. copyright interests, and this suit arises out of the activities from the U.S. web traffic. There is "at least a reasonable probability" that it would not violate due process to hold Magnat answerable in the United States for the contents of a website whose economic value turned, in significant measure, on its appeal to United States users generating over 30,000 daily hits, and the receipt of subscriptions from users infringing copyrighted U.S. materials. Datatech Enters. LLC v. FF Magnat Ltd., 2012 U.S. Dist. LEXIS 131711, 7-9 (N.D. Cal. Sept. 14, 2012).

[10] The District Court in the California litigation granted plaintiff's leave to serve FF Magnat via alternative service. Exhibit "H". Plaintiff had asked for leave to serve FF Magnat via alternative service by delivering documents to an address for FF Magnat in Hong Kong and by emailing and delivering documents to FF Magnat's attorneys in California. Exhibit "I".

individual defendant was made and reasonable efforts to make service have been unsuccessful. The court may order service to be made in any manner consistent with due process. 735 ILCS 5/2-203.1) (from Ch. 110, par. 2-203.1).

In this case, it is impractical to serve Defendant, FF Magnat. Plaintiff seeks leave to serve Defendant by delivering documents to an address for FF Magnat in Hong Kong and by emailing and delivering documents to FF Magnat's attorneys.

### E. WHY MR. BOCHENKO WAS VOLUNTARILY DISMISSED WITHOUT PREJUDICE.

In the Nevada litigation, Mr. Bochenko and Defendant, FF Magnat Limited d/b/a Oron.com, were represented by attorneys. After Mr. Bochenko was served in this lawsuit, counsel for Flava Works, Inc. received a telephone call from an individual identifying himself as Mr. Bochenko's attorney. Subsequent to the telephone call, counsel for Flava Works, Inc. received a letter from Mr. Bochenko threatening to, among other actions, "File a grievance against you with the Attorney Registration and Disciplinary Commission of the Supreme Court of Illinois." Unlike a licensed attorney, Mr. Bochenko does not have to file a motion for *pro hac vice* admission to appear *pro se*, if he is not admitted to practice before the Northern District of Illinois. He is also not governed Illinois Rule of Professional Conduct 8.4(g).[11] His attorneys would be.

After Mr. Huon conferred with his client regarding Mr. Bochenko's threat to report him to the Illinois Attorney Registration and Disciplinary Commission and Mr. Huon's concern about the costs and expenses of responding to an inquiry, Mr. Huon was given permission to voluntarily dismiss Mr. Bochenko without prejudice. The decision was made to rebut Mr.

---

[11] **RULE 8.4: MISCONDUCT**

It is professional misconduct for a lawyer to:

(g) present, participate in presenting, or threaten to present criminal or professional disciplinary charges to obtain an advantage in a civil matter.

Bochenko's accusations in Federal Court **with a level playing field** where an attorney's conduct would be governed by the same rules. There was also an issue as to who (if anyone) was assisting Mr. Bochenko and Mr. Romanov in drafting the FRCP 11 letters. The certification of Mr. Romanov's English affidavit is in Russian. Mr. Bochenko was voluntarily dismissed for—among other reasons—to try to draw out who was assisting him and whose conduct might be governed by the Rules of Professional Conduct to level the playing field. Accordingly, Plaintiff, Flava Works, Inc. filed a response brief to rebut Mr. Bochenko's accusations, stating why it believed that the Court had personal jurisdiction over Defendant, FF Magnat, and why Mr. Bochenko was properly served. See Docket No. 23.[12] Mr. Bochenko was voluntarily dismissed without prejudice on or about December 4, 2013.

After Plaintiff, Flava Works, Inc. served its Notice of Motion to Default Defendant, FF Magnat, via electronic filing and by mailing a copy to Mr. Bochenko, attorneys for Defendant, FF Magnat, filed an appearance. Mr. Huon received a letter from The Boston Law Group threatening him with FRCP 11 sanctions and **referring to the FRCP 11 letter sent by Mr. Bochenko to Mr. Huon**. Exhibit "CC".

Plaintiff, Flava Works, Inc.'s argument is not that the attorneys for Defendant FF Magnat is already here and, thus, the Court has jurisdiction. Flava Works, Inc.'s argument is Mr. Bochenko was properly served and Defendant, FF Magnat, has waived the issue of personal jurisdiction. Furthermore, the District Court in the California litigation held that there is sufficient U.S. contacts to assert personal jurisdiction over Defendant FF Magnat, and the District Court in the California litigation granted leave to serve Defendant, FF Magnat, via alternative service.

---

[12] Defendant, FF Magnat, does not raise the issue of personal jurisdiction in its Motion to Quash. The District Court in the California litigation held that the US Courts do have personal jurisdiction over Defendant. Datatech Enters. LLC v. FF Magnat Ltd., 2012 U.S. Dist. LEXIS 131711, 7-9 (N.D. Cal. Sept. 14, 2012).

WHEREFORE, Plaintiff, Flava Works, Inc., requests that this Honorable Court:

1. Enter an order denying Defendant, FF Magnat Limited's, Motion to Quash Service;

2. In the alternative, grant Plaintiff, Flava Works, Inc.'s leave to serve the Defendant, FF Magnat Limited, by delivering documents to an address for FF Magnat in Hong Kong and by emailing and delivering documents to FF Magnat's attorneys.

Respectfully Submitted,

By: /s/ Meanith Huon /s/

Meanith Huon

Meanith Huon
ARDC No.: 6230996
PO Box 441
Chicago, IL 60690
312-405-2789
huon.meanith@gmail.com

### CERTFICATE OF SERVICE

Under penalties of law, I certify that on March 5, 2013, I served the following documents or items:

**PLAINTIFF, FLAVA WORKS, INC.'S,
AMENDED RESPONSE TO
DEFENDANT, FF MAGNAT LIMITED'S MOTION TO QUASH**

by electronically filing and serving a copy on all counsel of record.

/s/ Meanith Huon
Meanith Huon
PO Box 441

                                                Chicago, Illinois 60690  
                                                Phone: (312) 405-2789  
                                                E-mail: huon.meanith@gmail.com  
                                                IL ARDC. No.: 6230996