1 **DAVID S. KAHN** (Nevada Bar No. 7038)
**SHERI M. THOME** (Nevada Bar No. 8627)
2 **J. SCOTT BURRIS** (Nevada Bar No. 010529)
**WILSON ELSER MOSKOWITZ EDELMAN & DICKER LLP**
3 300 South Fourth Street, 11th Floor
Las Vegas, NV 89101
4 (702) 727.1400; FAX (702) 727-1401
david.kahn@wilsonelser.com
5 sheri.thome@wilsonelser.com
j.scott.burris@wilsonelser.com
6

7 **KENNETH E. KELLER** (CA Bar No. 71450) (*pro hac vice in process*)
**STAN G. ROMAN** (CA BAR. NO. 87652) (*pro hac vice in process*)
8 **MICHAEL D. LISI** (CA Bar No. 196974) (*pro hac vice in process*)
**KRIEG, KELLER, SLOAN, REILLEY & ROMAN LLP**
9 555 Montgomery Street, 17th Floor
San Francisco, CA 94111
10 (415) 249-8330; FAX (415) 249-8333
kkeller@kksrr.com
11 sroman@kksrr.com
mlisi@kksrr.com
12

13
**STEVAN LIEBERMAN** (Washington, DC Bar No. 448218) (*pro hac vice in process*)
14 Greenberg & Lieberman, LLC
2141 Wisconsin Ave., NW Suite C2
15 Washington, DC 20007
(202) 625-7000; fax: 202-625-7001
16 stevan@APLegal.com

17
Attorneys for Defendant FF MAGNAT LIMITED
18

19

20                    **UNITED STATES DISTRICT COURT**

21                          **DISTRICT OF NEVADA**

22 LIBERTY MEDIA HOLDINGS, LLC, a          Case No. CV 2:12-cv-01057
   California Corporation,
23                                          **DEFENDANT FF MAGNAT LIMITED'S**
24              Plaintiff                   **EMERGENCY MOTION FOR PARTIAL**
                                            **RELIEF FROM TEMPORARY**
25        vs.                               **RESTRAINING ORDER AND FOR**
                                            **EXTENSION OF TIME; OR, IN THE**
26 FF MAGNAT LIMITED d/b/a/ ORON.COM;       **ALTERNATIVE, TO ADVANCE**

27 ─────────────────────────────────────────────────────────
   DEFENDANT FF MAGNAT LIMITED'S EMERGENCY MOTION FOR PARTIAL RELIEF
28 FROM TEMPORARY RESTRAINING ORDER AND FOR EXTENSION OF TIME; OR, IN
   THE ALTERNATIVE, TO ADVANCE HEARING ON PRELIMINARY INJUNCTION
   CASE NO. 2:12-cv-01057

   333467.5

|  | MAXIM BOCHENKO a/k/a/ ROMAN ROMANOV; and JOHN DOES 1 - 500.<br><br>       Defendants. | **HEARING ON PRELIMINARY INJUNCTION**<br><br>**Judge:**     **Hon. Gloria N. Navarro** |

Without intending to waive any defenses it may have based on lack of personal jurisdiction, venue or improper service of the summons and complaint, Defendant FF Magnat Limited dba Oron.com ("Oron") brings this emergency motion for partial relief from the Temporary Restraining Order entered by the Court on June 21, 2012, and for a brief extension of time to respond to the Court's Order to Show Cause on Plaintiff Liberty Media Holdings LLC's ("Liberty Media" or "Plaintiff") motion for preliminary injunction.[1]

Specifically, Oron requests that the Court amend the Temporary Restraining Order to allow Oron access to its funds held by PayPal so that Oron may pay legal fees to defend itself in this action and in a related action brought by Plaintiff in Hong Kong, as well as pay certain limited business expenses that are necessary to keep operating. Oron proposes that the Court allow PayPal to transfer €300,000 (approximately $375,00 U.S. dollars) in Oron's account to the trust account of Oron's outside counsel, Greenberg & Lieberman, LLC of Washington, D.C, and permit those funds to be disbursed to pay legal fees and costs, and business expenses necessary to keep the company

---

[1] Defendant Oron is specially appearing at this juncture to address a specific concern regarding the Temporary Restraining Order that was entered on June 21, 2012, based on an ex parte application and without providing defendants the opportunity to be heard. By making this request, Oron does not intend to submit to this Court's jurisdiction or to waive any right to challenge jurisdiction and/or improper service. To the contrary, Oron fully intends to raise its challenges to personal jurisdiction and service in its answer to Plaintiff's motion for a preliminary injunction, and also expressly reserves its right under the Federal Rules of Civil Procedure to challenge personal jurisdiction and service by way of a motion to dismiss the complaint in this action. The law provides that an opposition to a preliminary injunction motion under circumstances such as those present here does not constitute a waiver. *See, e.g., Hendricks v. Bank of America, N.A.*, 408 F.3d 1127, 1135 (9th Cir. 2005) (finding that the defendant had not waived its venue and personal jurisdictional defenses because it had raised them "in its first responsive pleading," which was its response to plaintiff's preliminary injunction motion); *Bear Stearns Cos. Inc. v. Lavalle*, 2000 WL 34339833 at *2 (N.D. Tex.) (same). *Cf. Bautista-Perez v. Mukasey*, 2008 WL 314486 (N.D. Cal. 2008) (citing *Hendricks* and finding waiver of venue objection because defendant did not raise it in its preliminary injunction opposition).

DEFENDANT FF MAGNAT LIMITED'S EMERGENCY MOTION FOR PARTIAL RELIEF
FROM TEMPORARY RESTRAINING ORDER  AND FOR EXTENSION OF TIME; OR, IN
THE ALTERNATIVE, TO ADVANCE HEARING ON PRELIMINARY INJUNCTION
CASE NO. 2:12-cv-01507

333467.5

1  operating. In addition, Oron requests a one-week extension of the briefing deadlines and the hearing

2  on Plaintiff's request for a preliminary injunction to enable its counsel to adequately address the

3  significant issues presented by that motion.

4      In the alternative, if the Court declines to amend the Temporary Restraining Order as

5  requested, Oron requests that the Court advance the hearing on Plaintiff's motion for preliminary

6  injunction to this Friday, June 29, 2012, so that the issue of the preliminary injunction can be

7  resolved before Oron is required to pay its hosting providers or face the shutdown of its business.

8                      **I.    INTRODUCTION**

9      Oron is a Hong Kong company that operates a "cloud" based data storage business. The

10 plaintiff is apparently a producer of pornographic video material, some of which third persons

11 apparently stored on Oron's computer servers. Very little of Oron's business comes from the United

12 States and Plaintiff's videos comprise an infinitesimal portion of the data that is stored by users on

13 Oron's servers. Oron contends that the Plaintiff's suit is entirely without merit on a number of

14 grounds, and is confident that it will establish that as this case proceeds.

15      Nevertheless, without notice to Oron and without giving Oron an opportunity to be heard,

16 Plaintiff obtained a Temporary Restraining Order ("TRO") freezing all of Oron's assets. If

17 unmodified the TRO threatens to prevent Oron from defending itself in this action. Moreover, if

18 Oron is barred from disbursing any of its funds and cannot pay its necessary expenses, it will be put

19 out of business even before this Court hears the pending preliminary injunction motion.

20      Plaintiff has also commenced legal proceedings in Hong Kong, where Oron is domiciled, and

21 on an *ex parte* basis obtained there a temporary restraining order. Unlike the order here, the Hong

22 Kong court's order expressly allows Oron to expend funds for it legal defense and necessary

23 business expenses. Oron, however, is prohibited from doing that by this Court's order.[2]

24

25  _____

    [2] Plaintiff's counsel is apparently sending notices to entities with whom Oron does business
26  essentially demanding that they cease business with Oron and/or that those entities 'preserve" their
    records, in an obvious attempt to destroy Oron's business relationships.
27  _____
                                    3
28  DEFENDANT FF MAGNAT LIMITED'S EMERGENCY MOTION FOR PARTIAL RELIEF
    FROM TEMPORARY RESTRAINING ORDER  AND FOR EXTENSION OF TIME; OR, IN
    THE ALTERNATIVE, TO ADVANCE HEARING ON PRELIMINARY INJUNCTION
                        CASE NO. 2:12-cv-01507

    333467.5

1    To be clear, Oron believes there are ample grounds to deny Plaintiff's request for a

2    preliminary injunction freezing its assets, and intends to fully address those grounds in its answer to

3    the Court's Order to Show Cause. The relief requested by this Emergency Motion is far more

4    narrow: Oron simply seeks the ability to pay its lawyers to represent it in this case and to pay the

5    business expenses necessary to keep it in business until such time as this Court rules on the

6    preliminary injunction motion. Not only is that request reasonable in scope, it is amply supported by

7    case law holding that a defendant faced with an asset freezing injunction should, except in

8    exceptional circumstances not present here, be permitted access to funds in order to defend itself and

9    pay necessary business expenses.

10    Moreover, given the myriad of complex legal issues to be addressed in Oron's upcoming

11    answer to the Order to Show Cause – including issues of personal jurisdiction and improper service

12    of process, issues of whether this case should proceed in Hong Kong rather than in this Court, the

13    lack of irreparable harm, and the unlikelihood that Plaintiff will prevail on the merits of its copyright

14    infringement claims (including the applicability of the safe harbor provisions of the Digital

15    Millennium Copyright Act) – the matter warrants a one-week extension of the briefing schedule and

16    hearing date on Plaintiff's request for a preliminary injunction. The Court's TRO was only signed

17    last Thursday, June 21, 2012 and Oron's opposition briefing on the motion is presently due this

18    Wednesday, June 27, 2012. Plaintiff is seeking relief that will effectively put Oron out of business,

19    and Oron should be afforded sufficient time to analyze and address the complex legal issues raised

20    by Plaintiff's request without the TRO itself serving to put Oron out of business before Oron even

21    has a chance to be heard by this Court.

22                                    **II.    BACKGROUND**

23    While Oron cannot address all of the numerous inaccuracies and misstatements contained in

24    the allegations of the Complaint, a brief statement of factual background is appropriate here.

25    **A.    Factual Background**

26    Defendant FF Magnat Limited is a legitimate business located in Hong Kong, which owns the

27

28    DEFENDANT FF MAGNAT LIMITED'S EMERGENCY MOTION FOR PARTIAL RELIEF
FROM TEMPORARY RESTRAINING ORDER  AND FOR EXTENSION OF TIME; OR, IN
THE ALTERNATIVE, TO ADVANCE HEARING ON PRELIMINARY INJUNCTION
CASE NO. 2:12-cv-01507

333467.5

domain name, Oron.com ("Oron").[3]  Oron provides file sharing and data storage services throughout the world and, like well-known "cloud services" offered by such companies as Apple ("iCloud"), Amazon, Google, Hewlett Packard and DropBox, Oron offers its users the ability to upload and store large amounts of data on remote and secure servers.  Oron assigns a unique URL web address to the user's data for access purposes.  However, the user has complete control over his or her documents and files and makes the decision whether to share those documents and files with others.  That is Oron's business model, and it is that business model which Plaintiff is attacking in this action.  Yet that attack, including Liberty Media's false and disparaging allegations of "piracy", "theft" and "conspiracy," is based on little more than Plaintiff's misstatement of the relevant facts.

Liberty Media is the parent company of and does business as CORBIN FISHER®. Although the complaint alleges that Liberty Media "produces, markets and distributes adult-oriented audiovisual works," that description of Liberty Media's business is an understatement.  Another federal court has described Liberty Media as "a distributor of lawful, albeit hardcore pornography." *Liberty Media Holdings, LLC vs. Swarm Sharing Hash File et al,* 821 F.Supp.2d 444, 447 n.2 (D. Mass. 2011).  Liberty Media and CORBIN FISHER® have been described as "America's most litigious . . . porn studio," and produces and distributes "gay hard core pornography."[4]  In addition, a simple internet search reveals that Liberty Media has filed numerous "mass defendant" lawsuits alleging copyright infringement against a host of companies as well as hundreds of individuals, including many of Liberty Media's own customers.  It appears that Liberty Media is developing a reputation as a "troll litigator" in the arena of copyright infringement.[5]

---

[3] The allegations of the Plaintiff's complaint regarding the "ownership" of Oron by "individuals" in the United States and its alleged "contacts" with this jurisdiction are not accurate.  Contrary to Plaintiff's allegations, Defendant Bochenko is not an owner, founder, officer, director, employee or controlling person of Oron.

[4] *See* http://www.queerty.com/did-americas-favorite-bareback-studio-spend-500k-on-gay-xxx-just-to-block-it-20111007/.

[5] There will be a question in this case whether the Copyright Act's protection should even extend to plaintiffs like Liberty Media and the hard core pornography that they distribute.

5

DEFENDANT FF MAGNAT LIMITED'S EMERGENCY MOTION FOR PARTIAL RELIEF
FROM TEMPORARY RESTRAINING ORDER  AND FOR EXTENSION OF TIME; OR, IN
THE ALTERNATIVE, TO ADVANCE HEARING ON PRELIMINARY INJUNCTION
CASE NO. 2:12-cv-01507

333467.5

1    Oron runs its business through a website called Oron.com.  As noted, Oron.com is simply a

2  file sharing system.  Oron provides these services through a variety of servers maintained by various

3  hosting providers.  If Oron were to lose the ability to provide these servers, its business would be

4  shut down and all of its users would immediately lose access to their files.  Oron pays these hosting

5  providers on a monthly basis and the invoices for these providers are due to be paid on June 30th.  If

6  Oron's assets are frozen and it cannot pay its hosting providers, its business will effectively shut

7  down as of July 1, 2012.

8    Oron's file storage system allows anyone to upload and store files.  Oron strictly maintains

9  the privacy of its customers.  It does not index the materials which are uploaded and it maintains no

10  catalogue or search function within the website.  For the storage services that it offers, Oron charges

11  its customers a monthly fee if they choose to use its premium services of faster

12  uploading/downloading and more and longer storage.  Visitors to Oron.com, whether for free or as

13  paying premium customers, do not have access to other user's materials. The individual who initially

14  uploads and stores his or her material has the sole control over the material which they upload and

15  store and decides whether to share any of that material with anyone else.  Oron is not involved in any

16  decision by its customers to share anything with anyone else.  Notably, this is not a "peer to peer"

17  system like Napster or Grokster, which have been held to run afoul of the copyright laws.  Oron

18  plays no active role in the uploading and sharing of material between its customers and it does not

19  "publish" anything, contrary to the allegations of the Complaint.

20    Oron offers its file storage services to individuals throughout the world.  The allegation in the

21  Complaint that Oron's "largest contingent of users are from the United States" is not true.  It can be

22  determined from publicly available information, such as WHOIS domain tools, (*see* Site Profile on

23  http://whois.domaintools.com/oron.com), that only 13.4% of Oron's visitors to its website come

24  from the United States.  The majority of its visitors come from Europe and Asia.  Moreover, the

25  extent to which Plaintiff's files are stored on Oron's servers is extremely small.  It is estimated that

26  Plaintiff's files constitute less than one-tenth of one percent of all the data stored on Oron.com.

27                                          6

28  DEFENDANT FF MAGNAT LIMITED'S EMERGENCY MOTION FOR PARTIAL RELIEF
FROM TEMPORARY RESTRAINING ORDER  AND FOR EXTENSION OF TIME; OR, IN
THE ALTERNATIVE, TO ADVANCE HEARING ON PRELIMINARY INJUNCTION
CASE NO. 2:12-cv-01507

333467.5

1  Thus, more than 99.9% of Oron's customers, none of whom have been alleged to infringe anyone's

2  intellectual property rights, will likely lose access to their stored files if the TRO is not modified.

3  **B.    Procedural History**

4  On June 20, 2012, Plaintiff filed its complaint in this action, and at the same time filed its

5  Emergency Motion for Ex Parte Temporary Restraining Order, Order for Seizure, and Appointment

6  of Receiver, and Order to Show Cause Re Preliminary Objection ("Motion").  Plaintiff sought ex

7  parte relief, without formal notice to Oron of defendant Maxim Bochenko (collectively, where

8  appropriate, "Defendants"), based on bare allegations that Defendants had "already taken affirmative

9  steps to move assets beyond the court's reach in order to frustrate any order the court may issue."

10 (Motion at 10:11-14).

11 On June 21, 2012, the Court entered an order (e-Docket 11) ("Order") granting the Motion in

12 part, and freezing all of Defendants' assets pending the hearing on Plaintiff's request for a

13 preliminary injunction, including all assets in any U.S. bank or financial institution, and any funds

14 held for Oron by PayPal, Inc., CCBill, LLC, and AlertPay.  The Court further ordered VeriSign to

15 "freeze the www.oron.com domain name from any further transfers, and enjoined Defendants "from

16 disgorging or dissipating any fund, property, domain names, or other assets until further notice."[6] *Id.*

17 at 2-3.  Finally, the Court ordered Plaintiff to immediately serve its complaint, motion papers, and

18 the Court's Order, and set a July 3, 2012 hearing on the request for a preliminary injunction.

19 Defendants are currently required to file their answering papers by 5:00 PM on June 27, 2012.[7]

20 In addition to this lawsuit, Plaintiff has instituted legal proceedings against Oron in Hong

21 Kong.  According to Plaintiff, it has already obtained an order, similar in some respects to the Order

---

[6] The Court stated that the Order "does nothing more than prohibit Defendants from fraudulent transfers and compels that they unwind those in which they have already engaged."  However, the broad language that Defendants may not dissipate any funds, read literally, goes further and prevents Defendants from spending any money for any legitimate purpose.

[7] Apparently Plaintiff has "served" the complaint and restraining order on Bochenko, who is not an authorized agent of Oron for service of process.  Furthermore, he is not an officer, director, owner, employee or shareholder of Oron.

7

DEFENDANT FF MAGNAT LIMITED'S EMERGENCY MOTION FOR PARTIAL RELIEF
FROM TEMPORARY RESTRAINING ORDER  AND FOR EXTENSION OF TIME; OR, IN
THE ALTERNATIVE, TO ADVANCE HEARING ON PRELIMINARY INJUNCTION
CASE NO. 2:12-cv-01507

333467.5

here, freezing Oron's assets ($3,00,000) in Hong Kong (the "Hong Kong Order"). (Declaration of

Stevan Lieberman in Support of Emergency Motion ("Lieberman Decl."), filed herewith, ¶ 4 & Ex.

A). Importantly, however, the Hong Kong Order does not restrict Oron from "disgorging or

dissipating" any of its funds, but instead expressly allows for the payment of legal fees and business

expenses.

## III.    ARGUMENT

### A.    The Court Should Modify the Temporary Restraining Order to Allow Defendant Access to Funds In Order to Pay the Legal Fees and Costs Associated With Its Defense To This Lawsuit

As written, the Court's Order places severe restrictions on Oron's ability to access the funds

in its accounts with various banks and payment services, including PayPal.[8] Not only does that

Order require those financial institutions and payments services to "freeze" any assets in Oron's

accounts, but it also enjoined Oron from "disgorging or dissipating any funds, property, domain

names, or other assets until further notice." (Order at 3:6-7.) Read literally, the Order prohibits

Oron from paying attorneys' fees or legal costs to defend itself in this action and related legal

proceedings in Hong Kong. It also prohibits Oron from paying its employees or satisfying other

legitimate business expenses, such as the monthly invoices from hosting providers for Oron's

servers.

In light of that Order, Defendant is placed in the difficult position of having to defend itself

in this action without having access to the funds it needs to pay legal counsel. Moreover, under the

terms of the Order, Oron is not permitted to withdraw the funds necessary to pay Hong Kong

---

[8] That Order was apparently predicated on the allegation that Oron was attempting to transfer funds out of the United States in order to take them out of this Court's jurisdiction, including a copy of an apparently redacted email from PayPal to Oron concerning the transfer of certain funds. There is no evidence that the transfer reflected in that email was anything outside the ordinary course of business, since Oron is domiciled in Hong Kong and it would be reasonable for it to transfer its funds there. Curiously, Plaintiff offers no details as to how it obtained a private email between Oron and its payment service, PayPal, and provides no foundation for that inadmissible document. As Oron will address more fully in its answer to the Order to Show Cause on Plaintiff's request for a preliminary injunction, it appears that the email in question was improperly obtained by "hacking" into Oron's email accounts. It is inappropriate for Plaintiff to seek relief in equity given that conduct and its own unclean hands.

8

DEFENDANT FF MAGNAT LIMITED'S EMERGENCY MOTION FOR PARTIAL RELIEF
FROM TEMPORARY RESTRAINING ORDER  AND FOR EXTENSION OF TIME; OR, IN
THE ALTERNATIVE, TO ADVANCE HEARING ON PRELIMINARY INJUNCTION
CASE NO. 2:12-cv-01507

333467.5

counsel in the action brought by Plaintiff. Given this, the Court should modify the Order to permit Oron to transfer funds from its PayPal account to the trust account of Oron's outside counsel, Greenberg & Lieberman, LLC, and to permit Oron to use those funds to pay the legal fees incurred in the defense of those actions as well as reasonable business expenses, which are essential for Oron to remain in business.

### 1. Ninth Circuit Precedent Supports Oron's Request

The law in the Ninth Circuit and elsewhere addressing asset freezing injunctions amply supports Oron's request for access to its funds in order to pay for its legal defense. For example, in *Republic of the Philippines v. Marcos*, 862 F.2d 1355 (9th Cir. 1988), the Ninth Circuit upheld a preliminary injunction enjoining the Marcoses from disposing of any of their assets. In balancing the relative hardships to determine the propriety of the injunction, the Court relied upon the fact that the district court had provided that the Marcoses could use their assets "to cover normal living expenses and legal fees." *Id.* at 1362.

The Ninth Circuit followed that holding more recently in *Johnson v. Couturier*, 572 F.3d 1067 (9th Cir. 2009). The *Johnson* court upheld a challenge to a district court's asset freezing injunction because the injunction was limited to the assets in the defendant's possession in which the plaintiffs had an equitable interest, and because the injunction expressly allowed assets to be used for "normal living expenses and legal fees." *Id.* at 1085-1086; *see also Fidelity National Title Insurance Company v. Castle*, 2011 WL 5882878 (N.D. Cal., Nov. 23, 2011 ) (relying on *Johnson v. Courtier* to fashion asset freezing injunction that allowed defendant to use personal funds to cover living expenses).

Similarly, in *Federal Savings & Loan Insurance Corp.*, 835 F.2d 554 (5th Cir. 1987), the Fifth Circuit held that an asset freezing injunction that allowed individual defendants only $3,500 per month for living expenses and legal fees was improper because it did not allow enough money for an adequate defense. As the Fifth Circuit explained:

> This suit was brought to establish the defendants' wrongdoing; the court

9

DEFENDANT FF MAGNAT LIMITED'S EMERGENCY MOTION FOR PARTIAL RELIEF
FROM TEMPORARY RESTRAINING ORDER  AND FOR EXTENSION OF TIME; OR, IN
THE ALTERNATIVE, TO ADVANCE HEARING ON PRELIMINARY INJUNCTION
CASE NO. 2:12-cv-01507

333467.5

cannot assume the wrongdoing before judgment in order to remove the defendants' ability to defend themselves. The basis of our adversary system is threatened when one party gains control of the other party's defense as appears to have happened here. Thus we conclude that some kind of allowance must be made to permit each defendant to pay reasonable attorneys' fees if he is able to show that he cannot pay them from new or exempt [i.e., unfrozen] assets . . . ."

*Id*. at p. 565 (citation omitted).[9]

Cases in the Ninth Circuit and elsewhere have also held it appropriate to allow a business entity defendant to pay necessary business expenses out of frozen assets. *See, e.g., Securities and Exchange Commission v. Hickey,* 322 F.3d 1123, 1131 (9th Cir. 2003) (injunction upheld where "under the terms of the freeze order, legitimate corporate business expenses may be paid from frozen assets..."); *United States v. Brown,* 988 F. 2d 658 (district court allowed defendant to use frozen funds for business expenses; Sixth Circuit accepted that but remanded for district court to ensure only funds that plaintiff might ultimately recover were frozen); *Federal Trade Commission v. QT, Inc.,* 467 F.Supp.2d 863 (N.D. Ill. 2006) (defendants allowed to pay out of frozen assets necessary business expenses and legal fees); *Securities and Exchange Commission v. Dodwell,* 2002 WL 236687 (W.D. Va. 2002) (court grants request to modify freeze order to allow for payment of ordinary business expenses).

Moreover, Liberty Media has obtained an order from a Hong Kong court freezing up to $3 million of Oron's assets. (Lieberman Decl., ¶ 4 & Ex. A). Unlike the Order here, however, the Hong Kong order allows funds to be used for legal fees and business expenses. (*Id*. at ¶ 12) ("This Order does not prohibit the Defendant from spending a reasonable sum toward its ordinary and proper business expenses and on legal advice and representation."). However, because this Court's Order as presently written prohibits the Defendants from "disgorging or dissipating any funds" for any purpose, Oron is unable to use funds for legal fees as expressly permitted by the court in Hong

---

[9] While there is some authority that, in appropriate cases, a district court has discretion to forbid or limit payment of attorneys' fees out of frozen assets, *see, e.g., Commodity Futures Trading Commission v. Noble Metals International, Inc.*, 67 F.3d 766 (9th Cir. 1995), the cases so holding have involved circumstances going far beyond those presented in this case, and are thus inapposite.

10

DEFENDANT FF MAGNAT LIMITED'S EMERGENCY MOTION FOR PARTIAL RELIEF FROM TEMPORARY RESTRAINING ORDER AND FOR EXTENSION OF TIME; OR, IN THE ALTERNATIVE, TO ADVANCE HEARING ON PRELIMINARY INJUNCTION
CASE NO. 2:12-cv-01507

333467.5

Kong, where Oron is domiciled.

### 2. The Request Is Reasonable Because The Complaint Raises Numerous Complex Issues and Thus Preparation of Oron's Defense Will Require Significant Legal Expense

Oron's request should also be granted because it is reasonable in scope, and seeks only the release of sufficient funds to permit Oron to respond to Plaintiff's request for a preliminary injunction, and to keep Oron in business during that time. In order to prevail on that request, Plaintiff is obligated to demonstrate, *inter alia*, a likelihood of success on the merits of its claims. Yet as described below, the complaint in this action raises a host of complex legal issues, each of which impacts Plaintiff's ability to make such a showing. Consequently, in order to prepare an answer to the Court's Order to Show Cause on Plaintiff's request for a preliminary injunction, Oron's counsel will be required to conduct extensive factual and legal research into each of the following issues in order to prepare Oron's answering brief.[10]

### a) Jurisdiction and Service

As noted above, Oron is specially appearing for purposes of this motion and intends to fully contest whether this Court has jurisdiction to enter any order concerning Oron or its assets. The complaint contends that Oron is subject to personal jurisdiction under the Nevada long arm statute, and that Oron has sufficient contacts with the United States for this Court to find personal jurisdiction exists. Oron, however, is a Hong Kong corporation, which receives the majority of its income from customers in Europe, Asia and Russia. Contrary to the allegations of the complaint, less than 14% of Oron's online traffic is from the United States. Moreover, the allegation that Maxim Bochenko is a resident of Florida and Colorado and is the "director/controlling party for Oron" is also false. None of Oron's employees or officers is a United States resident. Given that jurisdiction here is premised on these false allegations, the issue of personal jurisdiction will need to be analyzed in detail in Oron's opposition to the motion for preliminary injunction.

---

[10] Oron intends to address each of these issues in greater detail in its answer to the Court's Order to Show Cause. In addition, Oron reserves the right to address additional issues in that answer.

DEFENDANT FF MAGNAT LIMITED'S EMERGENCY MOTION FOR PARTIAL RELIEF FROM TEMPORARY RESTRAINING ORDER  AND FOR EXTENSION OF TIME; OR, IN THE ALTERNATIVE, TO ADVANCE HEARING ON PRELIMINARY INJUNCTION
CASE NO. 2:12-cv-01507

333467.5

1   At the same time, Plaintiff has not properly served the complaint in this action, and thus has

2   not obtained personal jurisdiction over Oron in any event. When Plaintiff's counsel asked if Oron's

3   outside counsel would accept service of process, he was expressly told that counsel was not

4   authorized to accept such service. As such, service here was improper, and will need to be addressed

5   more fully in Oron's answer to the motion for preliminary injunction.

6   **b)      No Basis for Preliminary Injunction**

7   Oron also needs to pay legal fees to address the legal basis for an asset freeze. There are two

8   ways a federal court can freeze a defendant's assets in a civil case. First, under Federal Rule of Civil

9   Procedure 64, the court can use remedies such as attachment that are available under the law of the

10  state where the court is located. The plaintiff has not requested such relief.

11  Second, the court in appropriate cases can use its equitable power to issue a preliminary

12  injunction to maintain the status quo. However, the circumstances which such injunctions are

13  appropriate are very limited. The legal issues in this area will require careful examination in the

14  opposition to the motion for preliminary injunction. For example, the United States Supreme Court

15  held in *Grupo Mexicano de Desarrollo, S.A. v. Alliance Bond Fund, Inc.*, 527 U.S. 308 (1999) that a

16  district court has no authority to issue a preliminary injunction freezing a defendant's assets in

17  connection with a claim for money damages. The Court stressed the historical principle that an

18  unsecured creditor has no prejudgment rights – at law or in equity – in the property of a debtor.  527

19  U.S. at 328-330.  As the Supreme Court explained:

20          The remedy [of a preliminary injunction freezing assets] sought here could
            render Federal Rule of Civil Procedure 64, which authorizes use of state
21          prejudgment remedies, a virtual irrelevance. Why go through the trouble of
            complying with local attachment and garnishment statutes when this all-
22          purpose prejudgment injunction is available?

23  *Id.* at 330-331.  The Court warned of allowing a situation of creditors racing to the courthouse to

24  freeze assets in a way that could prove "financially fatal" to debtors.  *Id.* at 331.

25  Another issue that will be addressed is that the preliminary injunction sought here is not

26  limited to funds or property that the Plaintiff contends should be turned over to Plaintiff if it prevails.

27  _____12_____

28  DEFENDANT FF MAGNAT LIMITED'S EMERGENCY MOTION FOR PARTIAL RELIEF
    FROM TEMPORARY RESTRAINING ORDER  AND FOR EXTENSION OF TIME; OR, IN
    THE ALTERNATIVE, TO ADVANCE HEARING ON PRELIMINARY INJUNCTION
    CASE NO. 2:12-cv-01507

    333467.5

Rather, Plaintiff seeks a preliminary injunction to freeze all of Oron's assets, whatever they may be and wherever they may be located, with no evidence that the assets should belong to the Plaintiff or are in any way involved in this case. As indicated above, less than one-tenth of one percent of the files stored on Oron's servers are Liberty Media's materials. The remaining 99.9% of Oron's business involves users whose files have nothing to do with Liberty Media and for whom no allegations of copyright infringement have or can be made. The Ninth Circuit has made clear that a district court "cannot issue a preliminary injunction to freeze assets of a defendant that are unrelated to the case to ensure the defendant will have money to pay a future judgment." *In re USA Commercial Mortgage Co.*, 397 Fed. Appx. 300, 306 (9th Cir. 2010) (citing *Grupo Mexicano*, 527 U.S. at 333).

Moreover, even in cases where a preliminary injunction to freeze assets might be proper in order to maintain the status quo so that the court can afford final injunctive relief, the barrier to obtaining such an injunction is a high one.

> Even under the more lenient standard for claims seeking equitable relief…[the plaintiff] would have to show a 'likelihood of dissipation of the claimed assets, or other inability to recover monetary damages, if relief is not granted. Courts have construed this standard narrowly, only exercising their inherent authority to freeze assets where there is considerable evidence of likely asset dissipation. . . . Certainly, every creditor would like to freeze its alleged debtor's assets before proving its claims, increasing leverage in settlement negotiations and the chances of collecting any judgment. In the typical case, however, such an imposition on the alleged debtor and the courts is not justified.

*Allstate Insurance Co. v. Baglioni*, No. CV 11–06704 (DDP), 2011 WL 5402487, *2 (C.D. Cal., November 8, 2011) (citations omitted). The *Allstate* court denied a preliminary injunction even though there was evidence of a transfer of property that was "quite possibly fraudulent." *Id.* Here, on the other hand, the only "evidence" that has been provided to the Court is a copy of a redacted email, reportedly obtained by unidentified means by a "third party," that reflects a transfer of funds from Pay Pal to Hong Kong – where Oron is domiciled. (*See* Declaration of Marc J. Randazza In Support of Plaintiff's Emergency Motion For Ex Parte Temporary Restraining Order, ¶ 4). There is

---

13

DEFENDANT FF MAGNAT LIMITED'S EMERGENCY MOTION FOR PARTIAL RELIEF FROM TEMPORARY RESTRAINING ORDER AND FOR EXTENSION OF TIME; OR, IN THE ALTERNATIVE, TO ADVANCE HEARING ON PRELIMINARY INJUNCTION
CASE NO. 2:12-cv-01507

333467.5

1   no evidence that this transfer, if it occurred, was anything other than a transfer made in the ordinary

2   course of Oron's business, and it certainly does not justify the extraordinary relief of freezing all of

3   Oron's assets. Again, this issue will require extensive legal and factual analysis for purposes of

4   Oron's response to Plaintiff's motion for preliminary injunction.

5                       c)      **Copyright Infringement Issues**

6           The crux of this action is Plaintiff's claim that Defendants have infringed its copyrighted

7   materials. Yet that claim raises numerous issues regarding whether Plaintiff can establish a

8   likelihood of success on merits, all of which Oron needs the time and legal fees to present to the

9   Court.

10          For example, there are serious questions whether one or more of the defendants can be held

11  liable for copyright infringement (whether directly or indirectly) because the evidence will establish

12  that they fall under the safe harbor provision of the Digital Millennium Copyright Act ("DMCA").

13  17 U.S.C. § 512. Section 512(c) of the DMCA limits liability for "infringement of copyright by

14  reason of the storage at the direction of a user of material that resides on a system or network

15  controlled or operated by or for the service provider" so long as the service provider meets various

16  conditions described in sections 512(c) and (i). The evidence here – as compared to Plaintiff's

17  unsupported accusations – will establish that Oron satisfies each of those conditions, and thus is

18  protected under the DMCA safe harbor provision. Indeed, the Complaint itself concedes that Oron

19  has complied with the DMCA by registering a DMCA agent more than one year ago. At the same

20  time, there are significant questions as to whether Plaintiff's alleged DMCA notices were sufficient

21  to trigger the statutes take-down provisions. *See* 17 U.S.C. §§ 512 (c)(3).

22          Plaintiff's claims for contributory and vicarious infringement are similarly flawed. For

23  example, Plaintiff has provided no admissible evidence that Oron had actual knowledge of any of the

24  allegedly infringing activity, and thus cannot be liable for contributory infringement. *See e.g.,*

25  *Perfect 10 Inc. v. Amazon.com, Inc.*, 508 F.3d 1146, 1172 (9th Cir. 2007). To the contrary, per the

26  strict terms of service between Oron and its customers, Oron maintains the privacy of its clients'

27                                                     14

28  DEFENDANT FF MAGNAT LIMITED'S EMERGENCY MOTION FOR PARTIAL RELIEF
    FROM TEMPORARY RESTRAINING ORDER AND FOR EXTENSION OF TIME; OR, IN
    THE ALTERNATIVE, TO ADVANCE HEARING ON PRELIMINARY INJUNCTION
    CASE NO. 2:12-cv-01507

    333467.5

content. Nor has Plaintiff offered any admissible evidence that Oron exercised the requisite control over the alleged direct infringer and/or that Oron derived a financial benefit from the direct infringement. *Id.* at 1173 (a defendant "exercises control over a direct infringer when he has both a legal right to stop or limit the directly infringing conduct, as well as the practical ability to do so.") (citing to *Metro-Goldwyn-Mayer Studios, Inc. v. Groskster, Ltd.*, 545 U.S. 913, 930 (2005)).

Likewise, Plaintiff's claim for inducement of copyright infringement will fail. Plaintiff has not established that Defendants provided a service "with the object of promoting its use to infringe copyright, as shown by clear expression or other affirmative steps taken to foster infringement." *Grokster*, 545 U.S. at 936-937. "[M]ere knowledge of infringing potential or actual infringing uses would not be enough here to subject [a defendant] to liability." *Id.* at 937. To "establish inducement liability, it is crucial to establish that the distributors 'communicated an inducing message to their ... users,' the classic example of which is an 'advertisement or solicitation that broadcasts a message designed to stimulate others to commit violations.'" *Perfect 10, Inc. v. Visa Int'l Service, Assoc.*, 494 F.3d 788 (9th Cir. 2007) (citing *Grokster*, 545 U.S. at 936-937). Here the evidence will establish that Defendants do not actively promote their service to commit copyright infringement, or that the service has no other legitimate use. To the contrary, the evidence will establish that the vast majority of its service is for proper purposes.

### d) Balance of hardships

Another factor to be considered in connection with the proposed preliminary injunction is the balance of the hardships that would be imposed should the preliminary injunction be entered. In addition to the prejudice such an injunction would impose on Oron's ability to fund its legal defense, the proposed injunction would also effectively "shut down" Oron without any finding of infringement on its part. Because the proposed injunction would freeze Oron's accounts with its billing payment services, such as PayPal, entry of that injunction would drastically impact Oron's

---

15

DEFENDANT FF MAGNAT LIMITED'S EMERGENCY MOTION FOR PARTIAL RELIEF FROM TEMPORARY RESTRAINING ORDER AND FOR EXTENSION OF TIME; OR, IN THE ALTERNATIVE, TO ADVANCE HEARING ON PRELIMINARY INJUNCTION
CASE NO. 2:12-cv-01507

333467.5

1    customers and its ability to conduct business.[11]  As noted, Oron offers its customers a premium

2    service for an additional fee, thereby allowing those customers greater storage capability and faster

3    service.  If Oron's accounts with its payment services are frozen, those customers will not be able to

4    pay for those premium services, and Oron's cash flow will essentially dry up.  That impact on its

5    business and its customers must be analyzed and balanced as part of Oron's answer to Plaintiff's

6    motion for preliminary injunction.

7             **e)**      **Lack of Irreparable Harm**

8        In addition, there are also serious issues whether Plaintiff can establish irreparable harm.

9    Although Plaintiff suggests that irreparable harm in copyright cases is presumed, *see* Motion at 6,

10    that is not the law in this circuit.  To the contrary, the Ninth Circuit has confirmed that irreparable

11    harm is no longer presumed in copyright infringement cases.  *See e.g., Perfect 10, Inc. v. Google,*

12    *Inc.*, 653 F.3d 976, 981 (9th Cir. 2011) (citing *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 392

13    (2006)); *see also Skinvisible Pharmaceuticals, Inc. v. Sunless Beauty*, Ltd., 2012 WL 1032549,  * 2-

14    3 (D. Nev. March 27, 2012) (confirming same).

15        At the same time, Plaintiff has not presented any evidence to support its claim of irreparable

16    harm.  Plaintiff has not established by any admissible evidence that it has and/or will suffer any

17    damages other than a monetary loss.  Without more, that is not enough to establish irreparable

18    injury.  *See e.g., Rent-a-Center, Inc. v. Canyon Television & Appliance Rental, Inc.*, 944 F.2d 597,

19    603 (9th Cir. 1991) (finding that "economic injury alone does not support a finding of irreparable

20    harm, because such injury can be remedies by a damage award").  Moreover, Plaintiff waited months

21    and years to bring suit.  Such a long delay undercuts Plaintiff's ability to prove irreparable harm.

22    *See e.g., McDermott v. Amersand Pub.*, LLC, 593 F.3d 950, 964-65 (9th Cir. 2010) (no irreparable

23    harm found given long delay in seeking injunction).

24

25

---

26    [11] Liberty Media's counsel has been emailing numerous billing services in an attempt to block and or
shut down Oron's ability to accept money from its clients.

27                                           16

DEFENDANT FF MAGNAT LIMITED'S EMERGENCY MOTION FOR PARTIAL RELIEF
28    FROM TEMPORARY RESTRAINING ORDER  AND FOR EXTENSION OF TIME; OR, IN
THE ALTERNATIVE, TO ADVANCE HEARING ON PRELIMINARY INJUNCTION
CASE NO. 2:12-cv-01507

333467.5

#### f)      Inadequacy of Bond

Finally, the Court's Order requires Plaintiff to post a bond in the amount of $100. Yet at the same time, the Order freezes all of Oron's assets before any infringement has been proven. Consequently, Oron will need to analyze and address the appropriateness of that bond should a preliminary injunction issue.[12]

In light of the complexity of the legal issues that need to be addressed, and the reasonableness of Oron's limited request for access to funds to pay legal fees and costs, Oron respectfully requests that the TRO be modified to allow it to transfer funds to its counsel's trust account and to use those funds to pay legal fees and costs as requested herein.

### B.      The Court Should Grant a One-Week Extension of Time for the Briefing Schedule and Hearing on Plaintiff's Request for a Preliminary Injunction

Given the myriad of complex legal issues presented by this lawsuit, Oron also requests that the Court grant a one-week extension of time for the parties to file their respective briefs on Plaintiff's motion for preliminary injunction, and a similar extension of the hearing on that motion. Such a short extension will cause no prejudice to Plaintiff, given the Court's entry of the TRO essentially freezing all of Oron's assets. By contrast, forcing Oron to respond on less than a week's notice to these complex issues would impose an undue burden on Oron and its counsel, and would be prejudicial to its ability to present a complete defense on these issues.

### C.      In the Alternative, the Court Should Advance the Hearing on Plaintiff's Motion for Preliminary Injunction

In the event that the Court declines to grant the relief requested above and amend the TRO to permit Oron to pay its legal and business expenses, Oron requests, in the alternative, that the Court advance the hearing on Plaintiff's motion for preliminary injunction to Friday, June 29, 2012. As described above, Oron must pay its hosting providers by the end of this month in order to avoid termination of those hosting services. If Oron's servers are shut down for non-payment of those

---

[12] Oron will also address the impropriety of Plaintiff's request for appointment of a receiver in Oron's opposition to the motion for preliminary injunction.

<div align="center">17</div>

DEFENDANT FF MAGNAT LIMITED'S EMERGENCY MOTION FOR PARTIAL RELIEF
FROM TEMPORARY RESTRAINING ORDER  AND FOR EXTENSION OF TIME; OR, IN
THE ALTERNATIVE, TO ADVANCE HEARING ON PRELIMINARY INJUNCTION
CASE NO. 2:12-cv-01507

333467.5

monthly hosting fees, it will effectively be out of business, and its users – 99.9% of whom have no connection to this litigation – will lose access to their data.  Given this potential hardship, Oron requests that, if the request to modify the TRO is denied, that the Court advance the hearing so that the preliminary injunction issue can be resolved before the June 30 deadline for payment of those hosting fees.

## IV.    CONCLUSION

For the foregoing reasons, Oron respectfully requests that the Court (1) amend its Temporary Restraining Order to allow Oron to transfer €300,000 (300,000 Euros, approximately $375,000 USD) from its PayPal account to the trust account of Oron's outside counsel, Greenberg & Lieberman, LLC and to use those funds to pay the legal fees associated with this action and Plaintiff's action against Oron in Hong Kong, as well as to pay reasonable business expenses, including server fees, so that Oron can stay in business until the preliminary injunction motion is decided; and (2) grant a one-week extension of time for the briefing deadlines and hearing on Plaintiff's request for a preliminary injunction.

Dated: this 25th day of June, 2012

Wilson Elser Moskowitz Edelman & Dicker LLP

By: _____
DAVID S. KAHN
Attorneys for Defendant FF MAGNAT LIMITED

DEFENDANT FF MAGNAT LIMITED'S EMERGENCY MOTION FOR PARTIAL RELIEF FROM TEMPORARY RESTRAINING ORDER  AND FOR EXTENSION OF TIME; OR, IN THE ALTERNATIVE, TO ADVANCE HEARING ON PRELIMINARY INJUNCTION
CASE NO. 2:12-cv-01507

333467.5

DAVID S. KAHN (Nevada Bar No. 7038)
SHERI M. THOME (Nevada Bar No. 8627)
J. SCOTT BURRIS (Nevada Bar No. 010529)
WILSON ELSER MOSKOWITZ EDELMAN & DICKER LLP
300 South Fourth Street, 11th Floor
Las Vegas, NV 89101
(702) 727.1400; FAX (702) 727-1401
david.kahn@wilsonelser.com
sheri.thome@wilsonelser.com
j.scott.burris@wilsonelser.com

KENNETH E. KELLER (CA Bar No. 71450) (pro hac vice in process)
STAN G. ROMAN (CA BAR. NO. 87652) (pro hac vice in process)
MICHAEL D. LISI (CA Bar No. 196974) (pro hac vice in process)
KRIEG, KELLER, SLOAN, REILLEY & ROMAN LLP
555 Montgomery Street, 17th Floor
San Francisco, CA 94111
(415) 249-8330; FAX (415) 249-8333
kkeller@kksrr.com
sroman@kksrr.com
mlisi@kksrr.com

STEVAN LIEBERMAN (Washington, DC Bar No. 448218) (pro have vice in process)
Greenberg & Lieberman, LLC
2141 Wisconsin Ave., NW Suite C2
Washington, DC 20007
(202) 625-7000; fax: 202-625-7001
stevan@APLegal.com

Attorneys for Defendant FF MAGNAT LIMITED

UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| LIBERTY MEDIA HOLDINGS, LLC, a California Corporation,<br><br>Plaintiff<br><br>vs.<br><br>FF MAGNAT LIMITED d/b/a/ ORON.COM; | Case No. CV 2:12-cv-01057<br><br>**DECLARATION OF STEVAN LIEBERMAN IN SUPPORT OF DEFENDANT FF MAGNAT LIMITED'S EMERGENCY MOTION FOR PARTIAL RELIEF FROM TEMPORARY RESTRAINING ORDER AND FOR** |

DECLARATION OF STEVAN LIEBERMAN IN SUPPORT OF DEFENDANT'S
EMERGENCY MOTION FOR PARTIAL RELIEF FROM TEMPORARY
RESTRAINING ORDER AND FOR EXTENSION OF TIME; OR, IN THE
ALTERNATIVE, TO ADVANCE HEARING ON PRELIMINARY INJUNCTION
CASE NO. 2:12-cv-01057

333466.2

1  MAXIM BOCHENKO a/k/a/ ROMAN
   ROMANOV; and JOHN DOES 1 - 500.
2
              Defendants.
3

| **EXTENSION OF TIME; OR, IN THE ALTERNATIVE, TO ADVANCE HEARING ON PRELIMINARY INJUNCTION** |
| :--- |

4          **Judge:**       **Hon. Gloria N. Navarro**

5        I, Stevan Lieberman, declare and state as follows:

6        1.       I am a member of the Bars of the State of Maryland and the District of Columbia.  I

7  make this declaration in support of Defendants' Motion for Partial Relief from Temporary

8  Restraining Order Stay and for Extension of Time.  If called as a witness, I could and would so

9  competently testify.

10       2.       I represent defendant FF Magnat Limited in business and intellectual property

11  matters.

12       3.       I verify that the facts set forth in the accompanying Emergency Motion for Partial

13  Relief from Temporary Restraining Order Stay and for Extension of Time are, to the best of my

14  knowledge, true and correct.

15

16       4.       I have been informed by Plaintiff's counsel that Plaintiff has already obtained an

17  order, similar in some respects to the Temporary Restraining Order in this action, freezing Oron's

18  assets (up to $3,00,000) in Hong Kong.  A true and correct copy of that order, as provided to me by

19  Plaintiff's counsel, is attached as Exhibit A.

20

21       I hereby declare under penalty of perjury under the laws of the United States of America that

22  the foregoing is true and correct.

23       Executed on June 25, 2012 at Washington, D.C.

24

25                                    Stevan Lieberman, Declarant

26

27                                        2

28  DECLARATION OF STEVAN LIEBERMAN IN SUPPORT OF DEFENDANTS'
   MOTION FOR PARTIAL RELIEF FROM TEMPORARY RESTRAINING ORDER
   STAY AND FOR EXTENSION OF TIME CASE NO. 2:12-cv-01507

   333466.2



HCMP 1275 / 2012

**IN THE HIGH COURT OF THE**
**HONG KONG SPECIAL ADMINISTRATIVE REGION**
**COURT OF FIRST INSTANCE**
**MISCELLANEOUS PROCEEDINGS NO. 1275 OF 2012**

**2 2 JUN 2012**

BETWEEN

LIBERTY MEDIA HOLDINGS, LLC                                   Plaintiff

AND

FF MAGNAT LIMITED                                            Defendant

---

### INJUNCTION PROHIBITING DISPOSAL OF ASSETS IN HONG KONG

---

<div style="border:1px solid black; padding:1em;">

**IMPORTANT**
**NOTICE TO THE DEFENDANT**

1. This Order prohibits you from dealing with your assets up to the amount stated.

   The Order is subject to the exceptions which are set out in the Order. You should read the whole of this document carefully. You are advised to consult a solicitor as soon as possible. You have the right to ask the Court to vary or discharge this Order.

2. If you disobey this Order you may be found guilty of contempt of court and you may be sent to prison or fined or your assets may be seized.

</div>

### BEFORE DEPUTY HIGH COURT JUDGE CARLSON IN CHAMBERS
### (NOT OPEN TO PUBLIC)

---

**ORDER**

---

1

An application was made on 22 June 2012 by the solicitors for the Plaintiff, to the Judge who read the Originating Summons and the Affidavits listed in Schedule 1 and accepted the undertakings in Schedule 2 at the end of this Order. After hearing the application the Judge made the following Order.

**IT IS ORDERED THAT:**

*RESTRICTION ON DISPOSAL OF ASSETS*

1.  The Defendant must not:

    (a)  remove from Hong Kong any of its assets which are within Hong Kong, whether in its own name or not, and whether solely or jointly owned, up to the value of US$3,000,000 (or HK$23,400,000[1]); or

    (b)  in any way dispose of or deal with or diminish the value of any of its assets, which are within Hong Kong, whether in its own name or not, and whether solely or jointly owned up to the value of US$3,000,000. This prohibition includes the following assets in particular:

        (i)  any money in the HSBC Business Direct account numbered 614-024354-838 at The Hongkong and Shanghai Banking Corporation Limited (the **"Account"**); and

        (ii)  any money in any other accounts held by the Defendant at any other banks in Hong Kong.

2.  If the total unencumbered value of the Defendant's assets in Hong Kong exceeds US$3,000,000, the Defendant may remove any of those assets from Hong Kong or may dispose of or deal with them so long as the total unencumbered value of its assets still in Hong Kong remains above US$3,000,000.

---

[1] US$1 = HK$7.8

## DISCLOSURE OF INFORMATION BY THE DEFENDANT

3.  The Defendant must inform the Plaintiff in writing at once of all its assets of an individual value of US$3,000,00 or more in Hong Kong, as at the date of this Order, whether in its own name or not and whether solely or jointly owned, giving the value, location and details of all such assets. The Defendant may be entitled to refuse to provide some or all of this information on the grounds that it may incriminate itself.

4.  This information must be confirmed in an affidavit which must be served on the Plaintiff's solicitors within 7 days after this Order has been served on the Defendant.

## DISCLOSURE OF INFORMATION BY THE HONGKONG AND SHANGHI BANKING CORPORATION LIMITED, HONG KONG

5.  The Hongkong and Shanghai Banking Corporation Limited ("HSBC") do disclose to the Plaintiff's solicitors, Gall, and Gall be at liberty to inspect and take copies of, all documents in the possession, custody or power of HSBC relating to:

    (a)  details, records and/or documents in connection with the opening of the Account;

    (b)  details and/or records of all transactions in the Account including, without limitation, bank vouchers, forms, instructions, transaction advices, cheques and correspondence between HSBC and any person or entity involved in the aforesaid transactions from January 2011 to date;

    (c)  details, records and/or documents (including without limitation, documents, records or forms identifying the beneficial owners of the Account and/or the accounts described in this sub-paragraph (c)) relating to all bank accounts, whether inside or outside Hong Kong, which it has knowledge of the Defendant; and

3

(d)     details of which it has knowledge of all payments made by or to the Defendant or any other entity or person which it knows or has reason to believe is connected to the Defendant from January 2011 to date.

6.      HSBC do comply with the orders specified in paragraph 5 above by 5:00 p.m. on Friday, 6 July 2012.

7.      The Plaintiff do reimburse HSBC for its costs of complying with paragraph 5 above on an indemnity basis.

8.      HSBC shall not disclose any such information in connection with its compliance with paragraph 5 above to the Defendant or any third party without permission of the Court or written consent of the Plaintiff.

9.      HSBC have liberty to apply, on notice, if necessary on an expedited or urgent basis.

### USE OF INFORMATION

10.     The Plaintiff do have leave to use information obtained as a result of this Order for the purpose of:

(a)     actual or contemplated proceedings against the Defendant in Hong Kong, the United States of America or elsewhere; and

(b)     investigating, commencing and/or pursuing civil proceedings whether in Hong Kong, the United States of America or elsewhere against persons or entities implicated in any wrongdoing by such information.

### DURATION OF THIS ORDER

11.     This Order will remain in force up to and including 6 July, 2012 at 10:00a.m. (the **"return date"**), unless before then it is varied or discharged by a further Order of the Court. The application in which this Order is made shall come back to the Court for further hearing on 6 July, 2012 at 10:00a.m. before the Summons Judge unless the Defendant pays the sum of US$3,000,000 (or HK$23,400,000)

4

into Court makes provision for security in that sum by some other method as provided for hereinabove and serves notice that it does not require the application to come back to Court. The parties are at liberty to apply for an earlier hearing date.

## EXCEPTIONS TO THIS ORDER

12. This Order does not prohibit the Defendant from spending a reasonable sum towards its ordinary and proper business expenses and on legal advice and representation.

13. The Defendant may agree with the Plaintiff's solicitors that the above spending limits should be increased or that this Order should be varied in any other respect, but any such agreement must be in writing.

14. This Order shall cease to have effect if the Defendant provides security by paying the sum of US$3,000,000 into Court or makes provision for security in that sum by some other method agreed with the Plaintiff's solicitors or approved by the Court.

## EFFECT OF THIS ORDER

15. The Defendant which is a corporation and which is ordered not to do something must not do it itself or by its directors, officers, employees or agents, or in any other way.

## THIRD PARTIES

16. Effect of this Order

It is a contempt of court for any person notified of this Order knowingly to assist in or permit a breach of this Order. Any person doing so may be imprisoned, fined, or have its assets seized.

17. Set off by banks

This injunction does not prevent any bank from exercising any right of set-off it may have in respect of any facility which it gave to the Defendant before it was notified of this Order.

18. Withdrawals by the Defendant

No bank need inquire as to the application or proposed application of any money withdrawn by the Defendant if the withdrawal appears to be permitted by this Order.

**UNDERTAKINGS**

19. The Plaintiff gives to the Court the undertakings set out in Schedule 2 to this Order.

**VARIATION OR DISCHARGE OF THIS ORDER**

20. The Defendant (or anyone notified of this Order) may apply to the Court at any time to vary or discharge this Order (or so much of it as affects that person), but anyone wishing to do so should first inform the Plaintiff's solicitors.

**COSTS**

21. The costs of this application be reserved to the Judge hearing the application on the return date.

**INTERPRETATION OF THIS ORDER**

22. In this Order "he", "him" or "his" include "she", "her", "hers" and "it" or "its".

23. When there are two or more defendants then (unless otherwise stated):

(a)    references to the "defendant" mean both or all of them;

6

(b)    an order requiring "the defendant" to do or not to do anything requires each defendant to do it or not to do it; and

(c)    a requirement relating to service of this Order, or of any legal proceedings on "the defendant" means on each of them.

**NAME AND ADDRESS OF PLAINTIFF'S SOLICITORS**

The Plaintiff's solicitors are:
Messrs Gall
Unit 302, 3rd Floor
Dina House, Ruttonjee Centre
11 Duddell Street
Central, Hong Kong
Tel: +852 3405 7688
Fax: +852 28017202
(Ref: NG/RA/PW/1876-01/12)
The offices are open from Monday to Friday between 9:00 am and 6:30 pm.
Email: randallarthur@gallhk.com, peggywong@gallhk.com

Dated this 22nd day of June, 2012

Registrar

**SCHEDULE 1**
**AFFIDAVITS**

The Judge read the following affidavits before making this Order:

(1)   Affidavit of Randall Ivan Arthur made on 22 June 2012 together with the Exhibit **"RIA-1"** being the Affidavit of Ronald D. Green, Jr. made on 21 June 2012 together with the Exhibit **"MJR-1"**

8

(2)

## SCHEDULE 2
### UNDERTAKING GIVEN TO THE COURT BY THE PLAINTIFF

1.    If the Court later finds that this Order has caused loss to the Defendant or any other party and decides that the Defendant or that other party should be compensated for that loss, the Plaintiff will comply with any Order the Court may make.

2.    As soon as practicable the Plaintiff will serve on the Defendant the Originating Summons together with this Order.

3.    As soon as practicable the Plaintiff will issue and serve on the Defendant a summons to be heard on the return date together with a copy of the affidavits and copiable exhibits containing the evidence relied on by the Plaintiff and a copy of the skeleton argument used at the application for this Order.

4.    Anyone notified of this Order will be given a copy of it by the Plaintiff's solicitors.

5.    The Plaintiff will pay the reasonable costs of anyone other than the Defendant which have been incurred as a result of this Order including the costs of ascertaining whether that person holds any of the Defendant's assets and if the Court later finds that this Order has caused such a person loss, and decides that such person should be compensated for that loss, the Plaintiff will comply with any Order the Court may make. The Plaintiff will reimburse HSBC for its costs of complying with any disclosure order herein on an indemnity basis.

6.    If for any reason this Order ceases to have effect (including in particular where the Defendant provides security as provided for above), the Plaintiff will forthwith take all reasonable steps to inform, in writing, any person or company to whom he has given notice of this Order, or who he has reasonable grounds for supposing may act upon this Order, or who he has reasonable grounds for supposing may act upon this Order, that it has ceased to have effect.

<div style="border:1px solid black; padding:1em;">

**PENAL NOTICE**

IF YOU, THE WITHIN NAMED FF MAGNAT LIMITED, DISOBEY THIS ORDER, YOU MAY BE FOUND GUILTY OF CONTEMPT OF COURT AND LIABLE TO PROCESS OF EXECUTION TO COMPEL YOU TO OBEY IT AND YOU MAY BE SENT TO PRISON OR FINED OR YOUR ASSETS MAY BE SEIZED.

Dated the        day of June 2012.

**GALL**
Solicitors for the Plaintiff

</div>

**TAKE NOTICE**

This is a legal document. The consequences of ignoring it may be serious. If in doubt, you should enquire as soon as possible at the Registry of the Court issuing the document, namely, High Court, Hong Kong at LG1, High Court Building, No. 38 Queensway, Hong Kong. You should also consider taking the advice of a Solicitor or applying for Legal Aid.

**請 注 意**

因這是法律文件，忽視它可帶來嚴重的後果。 如有疑問，請儘早向發出文件的法庭登記處 (香港高等法院：香港金鐘道三十八號高等法院大樓 LG1 字樓) 查詢。 你亦應考慮聽取律師的意見或請申請法律援助。

10

HCMP 1275 / 2012

IN THE HIGH COURT OF THE
HONG KONG SPECIAL ADMINISTRATIVE
REGION
COURT OF FIRST INSTANCE
MISCELLANEOUS PROCEEDINGS NO. 1275 OF 2012

---

BETWEEN

LIBERTY MEDIA HOLDINGS, LLC          Plaintiff

and

FF MAGNAT LIMITED          Defendant

---

**INJUNCTION PROHIBITING DISPOSAL
OF ASSETS IN HONG KONG**

---

Dated the 22nd day of June 2012
Filed the       day of June 2012

**GALL**
Solicitors for the Plaintiff
Unit 302, 3rd Floor
Dina House, Ruttonjee Centre
11 Duddell Street
Central, Hong Kong
Tel: 3405 7688
Fax: 2801 7202
(Ref: NG/RA/PW/1876-01/12)

4850-4772-9423, v. 2

11