# LEXIS CITED AUTHORITY

Alvarez v. County of Maricopa

No. CV-10-310-PHX-DGC

UNITED STATES DISTRICT COURT FOR THE DISTRICT OF ARIZONA

*2010 U.S. Dist. LEXIS 62121*

June 23, 2010, Decided
June 23, 2010, Filed

**SUBSEQUENT HISTORY:** Partial summary judgment granted by, Summary judgment granted by, Count dismissed at *Alvarez v. Maricopa County, 2011 U.S. Dist. LEXIS 96268 (D. Ariz., Aug. 25, 2011)*

**COUNSEL:** [*1] For Celia A Alvarez, Plaintiff: N Patrick Hall, Steven E Harrison, Wallin Harrison PLC, Gilbert, AZ.

For Maricopa, County of, a political subdivision of the State of Arizona, Defendant: Sherle Rubin Flaggman, Maricopa County, Office of General Litigation Services, Phoenix, AZ.

For Joseph M Arpaio, in his capacity as sheriff of Maricopa County, Ava Arpaio, wife, Defendants: Timothy James Casey, Schmitt Schneck Smyth & Herrod PC, Phoenix, AZ.

**JUDGES:** David G. Campbell, United States District Judge.

**OPINION BY:** David G. Campbell

**OPINION**

**ORDER**

Defendants Maricopa County Sheriff Joseph M. Arpaio and the Maricopa County Sheriff's Office have filed a motion to dismiss the claims filed by Plaintiff Celia A. Alvarez. Dkt. # 7. The motion is fully briefed. Dkt. # # 11, 15. Defendant Maricopa County has also filed a motion to dismiss Plaintiff's claims against it, which is fully briefed. Dkt. # # 5, 10, 17. In her responses to both motions to dismiss, Plaintiff filed motions to conduct discovery under *Rule 56(f)* and also asked the

Court for leave to amend her complaint. Dkt. # # 10, 11. Plaintiff has also filed a motion for order authorizing alternative service (Dkt. # 20) to which Defendants have responded (Dkt. # 21). For reasons [*2] that follow, the Court will grant in part and deny in part Arpaio and the Sheriff's Office's motion to dismiss (Dkt. # 7), and will grant in part and deny in part Maricopa County's motion to dismiss (Dkt. # 5). The Court will deny Plaintiff's motions to conduct discovery, but will grant Plaintiff leave to amend her complaint by **July 16, 2010.** Dkt. # # 10, 11, 16, 18. The Court will deny Plaintiff's motion for order authorizing alternative service (Dkt. # 20). [1]

> 1   Defendants' request for oral argument is denied. The parties have fully briefed the issues and oral argument will not aid the Court's decision. *See Lake at Las Vegas Investors Group, Inc. v. Pac. Malibu Dev. Corp., 933 F.2d 724, 729 (9th Cir. 1991).*

**I. Background.**

On February 11, 2009, deputies from the Sheriff's Office conducted a raid at Plaintiff's workplace. Dkt. # 1 at 5. According to Plaintiff, several unknown deputies seized her, "lifted her off her feet, and slammed her face into a wall, causing severe injuries" to her face and jaw. *Id.* After the raid, according to Plaintiff, she was taken to a detention center where deputies conducted a strip search of her and refused to provide her with medical attention for the injuries [*3] inflicted by the unknown deputies, despite the fact that she complained of extreme pain. *Id.* at 5-6. She further contends that she never received adequate medical care during her detention. *Id.* at 6.

Plaintiff filed the present case against Maricopa

2010 U.S. Dist. LEXIS 62121, *3

County, the Sheriff's Office, Arpaio, and unknown deputies working for the Sheriff's Office and the County. She alleges negligence, gross negligence, and violation of *42 U.S.C. § 1983* based on deprivations of Plaintiff's *Fourth*, *Eighth*, and *Fourteenth Amendment* rights. Dkt. # 1.

## II. Legal Standard.

When analyzing a complaint for failure to state a claim under *Rule 12(b)(6)*, "[a]ll allegations of material fact are taken as true and construed in the light most favorable to the non-moving party." *Smith v. Jackson, 84 F.3d 1213, 1217 (9th Cir. 1996)*. "To avoid a *Rule 12(b)(6)* dismissal, a complaint need not contain detailed factual allegations; rather, it must plead 'enough facts to state a claim to relief that is plausible on its face.'" *Clemens v. DaimlerChrysler Corp., 534 F.3d 1017, 1022 (9th Cir. 2008)* (quoting *Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)*). "The plausibility standard . . . asks for more than a sheer possibility that [*4] a defendant has acted unlawfully," demanding instead sufficient factual allegations to allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal, U.S. , , 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009)* (citing *Twombly, 550 U.S. at 556*). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged -- but it has not 'show[n]' -- 'that the pleader is entitled to relief.'" *Id. at 1950* (citing *Fed. R. Civ. P. 8(a)(2)*).

The court may not assume Plaintiff can prove facts different from those alleged in the complaint. *See Associated Gen. Contractors of Cal. v. Cal. State Council of Carpenters, 459 U.S. 519, 526, 103 S. Ct. 897, 74 L. Ed. 2d 723 (1983)*; *Jack Russell Terrier Network of N. Cal. v. Am. Kennel Club, Inc., 407 F.3d 1027, 1035 (9th Cir. 2005)*. Similarly, legal conclusions couched as factual allegations are not given a presumption of truthfulness and "conclusory allegations of law and unwarranted inferences are not sufficient to defeat a motion to dismiss." *Pareto v. F.D.I.C., 139 F.3d 696, 699 (9th Cir. 1998)*; *see also Iqbal, 129 S. Ct. at 1949*. "*Rule 8* marks a notable and generous [*5] departure from the hyper-technical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Iqbal, 129 S. Ct. at 1950*. [2]

2 Plaintiff argues that *Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit, 507 U.S. 163, 113 S. Ct. 1160, 122 L. Ed. 2d 517 (1993)*, excuses Plaintiff from pleading specific facts because the facts are within the control of the Sheriff's Office or Maricopa County. The Court feels obligated to apply the Supreme Court's most recent rulings in *Iqbal* and *Twombly*.

## III. Arpaio and the Sheriff's Office.

The Sheriff's Office has moved for dismissal of all claims against it on the ground that it is a non-jural entity. Dkt. # 7 at 2-5. Arpaio has moved to dismiss all *§ 1983* claims against him. Dkt. # 7 at 5-11. The Sheriff's Office has also moved to dismiss without prejudice all claims against the fictitiously-named employees of the Sheriff's Office and Maricopa County. Dkt. # 7 at 12-13. The Court will consider each argument in turn.

### A. The Sheriff's Office.

The Sheriff's Office argues that it cannot be sued because it is a non-jural entity that does not have a separate legal existence from Maricopa County, [*6] and is only a political subdivision of the County that cannot sue or be sued in its own name. Dkt. # 7 at 3. In response, Plaintiff cites several cases which, she contends, support the proposition that the Sheriff's Office can be sued. *See Maricopa County Sheriff's Office v. Maricopa County Employee Merit Sys. Comm'n, 211 Ariz. 219, 119 P.3d 1022 (Ariz. 2005)*; *W. Valley View, Inc. v. Maricopa County Sheriff's Office, 216 Ariz. 225, 165 P.3d 203 (Ariz. App. 2007)*; *Patterson v. Maricopa County Sheriff's Office, 177 Ariz. 153, 865 P.2d 814 (Ariz. App. 1993)*; *Melendres v. Arpaio, 598 F. Supp. 2d 1025, 1039 (D. Ariz. 2009)*.

The Court does not find the cases cited by Plaintiff to be persuasive. *Melendres* is the only case where the court expressly considered the question of whether the Sheriff's Office is a jural entity. *Id.* In the other three cases, the Sheriff's Office was a party, but the courts did not consider whether it was amenable to suit. *See Maricopa County Employee, 119 P.3d at 1022*; *W. Valley View, Inc., 165 P.3d at 203*; *Patterson, 865 P.2d at 814*. In *Melendres*, the court did not hold that the Sheriff's Office undoubtedly is a jural entity, but instead refused to dismiss the Office because it had failed to file a reply brief [*7] to address some of plaintiff's arguments and

"[had] acted as a plaintiff as recently as 2005[.]" *598 F. Supp. 2d at 1039*. The Sheriff's Office has filed a reply brief in this case and has made convincing arguments as to why it is non-jural entity. For reasons stated in *Wilson v. Maricopa County, No. CV04-2873-PHX-DGC, 2005 U.S. Dist. LEXIS 28021, 2005 WL 3054051, *2 (D. Ariz. Nov. 15, 2007)*, the Court finds that Plaintiff has failed to show that the Sheriff's Office is a jural entity. The Court will dismiss all claims against the Sheriff's Office with prejudice.

**B. Arpaio.**

Arpaio argues that Counts Three and Four of the complaint, which allege violations of *§ 1983* under the *Fourth*, *Eighth*, and *Fourteenth Amendments*, must be dismissed. He makes five specific arguments: (1) Plaintiff cannot state a claim for violation of the *Eighth Amendment* for cruel and unusual punishment, (2) Plaintiff cannot state a claim for violation of the privileges and immunities clause of the *Fourth Amendment*, (3) Plaintiff cannot state a claim for violation of her right to due process or equal protection under the *Fourteenth Amendment*, (4) Plaintiff cannot state a claim for unlawful search and seizure and use of excessive force in violation [*8] of the *Fourth Amendment*, and (5) Arpaio is protected by qualified immunity. Arpaio also argues that he cannot be found liable for the punitive damages. The Court will consider each argument in turn.

**1. *Eighth Amendment*.**

Plaintiff concedes that none of her claims arise out of the *Eighth Amendment*. Dkt. # 11 at 6. To the extent the *§ 1983* claims are based on the *Eighth Amendment*, they are dismissed.

**2. *Fourth Amendment*.**

Plaintiff concedes that her claims do not arise out of the privileges and immunities clause of the *Fourth Amendment*. Dkt. # 11 at 9. To the extent the *§ 1983* claims are based on the privileges and immunities clause, they are dismissed.

**3. *Fourteenth Amendment*.**

**a. Due Process.**

Arpaio argues that Plaintiff has failed to state a *Fourteenth Amendment* due process claim against him

because she "does not allege facts that would show, if true, that she was deprived of her liberty by Arpaio." Dkt. # 7 at 8 (emphasis in original). He argues that she has merely stated facts that could show a possible deprivation of liberty from her interaction with several unidentified deputies -- an interaction with which he was not involved. *Id.* He further argues that he cannot be held liable for Plaintiff's [*9] interactions with the deputies under a theory of supervisory liability and that Plaintiff has failed to allege facts showing that he deprived her of any constitutional right based on his own actions.

"Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of *respondeat superior." Iqbal, 129 S. Ct. at 1948*. Instead, "a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Id.* As a result, Plaintiff cannot allege that Arpaio is liable for the actions of the unidentified deputies under *respondeat superior,* but rather must plead that Arpaio, through his own actions, "has violated the Constitution." *Id.* Plaintiff contends that she has pled facts showing that her "injuries were caused by customs, practices, and policies instituted and upheld by Arpaio through deliberate indifference." Dkt. # 11 at 7. The Court agrees.

In order for Plaintiff to allege a *Fourteenth Amendment* Due Process claim against Arpaio, she must state facts in her complaint that, if true, would amount to a constitutional deprivation caused by an act or omission of Arpaio. Further, [*10] she must also show that Arpaio's act or omission was taken with deliberate indifference, which requires Plaintiff to allege facts showing that Arpaio was "aware of facts from which the inference could be drawn that a substantial risk of serious harm exist[ed]" and that he "[drew] the inference." *See Farmer v. Brennan, 511 U.S. 825, 837, 841, 114 S. Ct. 1970, 128 L. Ed. 2d 811 (1994).*

The Court finds that Plaintiff has adequately pled such facts. She alleges that Arpaio, as policy-maker for the Sheriff's Office, instituted, implemented and permitted "unreasonably dangerous policies, practices, procedures, protocols, customs, and training," that Arpaio had "long been on notice and [has] had knowledge of the dangerous and unconstitutional actions, customs, conditions, and culture," and that, despite this notice and knowledge, he deliberately and indifferently permitted this culture to continue such that it ultimately caused the

violation of Plaintiff's constitutional rights. Dkt. # 1 at 8, 11, 12. These allegations -- that Arpaio knew of the dangerous and unconstitutional practices occurring in the Sheriff's office and intentionally permitted them to continue -- are sufficient to defeat a motion to dismiss. If proven, they [*11] would show that Arpaio was deliberately indifferent to Plaintiff's rights. *See Farmer, 511 U.S. at 837, 841*. As a result, the Court finds that Plaintiff has adequately stated a *Fourteenth Amendment* Due Process claim against Arpaio.

**b. Equal Protection.**

Arpaio also argues that Plaintiff has failed to set forth any "factual allegations supporting her conclusory characterization that she was somehow racially profiled by Arpaio" in denial of her *Fourteenth Amendment* right to equal protection. Dkt. # 7 at 8. In order to state a *§ 1983* equal protection claim in this circuit, Arpaio argues, a plaintiff must show that other similarly situated persons have been treated differently than the plaintiff and that the different treatment of the plaintiff was based on an impermissible motive. *Id.* Plaintiff argues that she has adequately "alleged her mistreatment was racially motivated based on her minority status," and that "evidence will be revealed during discovery establishing that Defendants have singled out Hispanics for its immigration 'crime sweeps' and that similarly situated Caucasians have not been singled out or prosecuted by Defendants." Dkt. # 11 at 10.

The Court agrees with Arpaio [*12] that Plaintiff has failed to state a claim on which relief can be granted. "To state a claim under *42 U.S.C. § 1983* for a violation of the *Equal Protection Clause of the Fourteenth Amendment* a plaintiff must show that the defendants acted with an intent or purpose to discriminate against the plaintiff based upon membership in a protected class." *Lee v. City of Los Angeles, 250 F.3d 668, 686 (9th Cir. 2001)* (internal quotation and citation omitted). Nowhere in Plaintiff's complaint does she allege that she is a member of a protected class or that she was treated differently than similarly situated people because of her membership in the protected class. *See* Dkt. # 1. Although Plaintiff states in her response that she is Hispanic and that "her mistreatment was racially motivated based on her minority status," these allegations are not contained in the complaint. Dkt. # 11 at 10. As a result, Plaintiff has failed to state a *Fourteenth Amendment* equal protection claim against Arpaio. The

Court will dismiss this claim without prejudice.

**4. *Fourth Amendment* -- Search and Seizure and Excessive Force.**

Arpaio alleges that Plaintiff's *Fourth Amendment* claims, which are based on a violation of [*13] the prohibition against unlawful searches and seizures and the use of excessive force, are legally deficient because they attempt to hold him vicariously responsible under *§ 1983* for the conduct or acts of others. As discussed above, "Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of *respondeat superior*." *Iqbal, 129 S. Ct. at 1948*. Instead, Plaintiff "must plead that [Arpaio], through [his] own individual actions, has violated the Constitution." *Id.*

Plaintiff contends that "the *Fourth Amendment* violations in this case were the product of customs and policies instituted and upheld by Arpaio." Dkt. # 11 at 11. As with her *Fourteenth Amendment* due process claim, Plaintiff has pled enough facts showing that the *Fourth Amendment* violations were caused by customs or policies instituted by Arpaio. Plaintiff makes the factual assertion that Arpaio encouraged and instituted "policies or customs condoning racial profiling, unlawful searches and seizures, excessive use of force, and indifference to the medical care of its detainees[.]" Dkt. # 1 at 12. She further alleges that Arpaio had adequate notice of these practices and that, [*14] despite this knowledge, permitted them to continue. *Id.* Taking these allegations as true, Plaintiff has pled sufficient facts showing that Arpaio's conduct permitted the allegedly unconstitutional actions of the two deputies. The Court finds that Plaintiff has adequately stated a *Fourth Amendment* claim against Arpaio.

**5. Qualified Immunity.**

Finally, Arpaio alleges that the Court must enter judgment in his favor because the alleged conduct did not violate "clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald, 457 U.S. 800, 818, 102 S. Ct. 2727, 73 L. Ed. 2d 396 (1982)*. Arpaio contends that the "relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Saucier v. Katz, 533 U.S. 194, 202, 121 S. Ct. 2151, 150 L. Ed. 2d 272 (2001)*.

Arpaio contends that Plaintiff's complaint fails to allege facts showing that Arpaio knowingly violated the law, or that it would have been "clear to a reasonable officer that his conduct was unlawful[.]" *Katz, 533 U.S. at 202*. He argues that, "if officers of reasonable competence could disagree" as to whether the alleged [*15] conduct was unlawful, "immunity should be recognized." *Malley v. Briggs, 475 U.S. 335, 341, 106 S. Ct. 1092, 89 L. Ed. 2d 271 (1986)*.

At the motion to dismiss phase, the Court must accept as true "[a]ll allegations of material fact" and must construe them "in the light most favorable to the non-moving party." *Smith, 84 F.3d at 1217*. The Court must accept as true that Arpaio is legally responsible for hiring and training employees, Arpaio is the policy-maker in the Sheriff's Office, Arpaio hired individuals and failed to train them in the proper use of force and the proper treatment of individuals, Arpaio knew his deputies were not properly trained, Arpaio knew there was a culture of dangerous and unconstitutional actions among his employees, Arpaio was deliberately indifferent in training such individuals, and Arpaio knew of and ratified this "pattern of malicious and reckless disregard for the constitutional rights of others." Dkt. # 1 at 7-15. Construed in the light most favorable to Plaintiff, the Court finds that a "reasonable officer" would have known that this conduct was unlawful under the Constitution. *Katz, 533 U.S. at 202-05*. As a result, the Court cannot dismiss the claims against Arpaio on the ground of qualified [*16] immunity.

**6. Punitive Damages.**

Arpaio argues that federal law prohibits Plaintiff from obtaining punitive damages against him in his official capacity. Dkt. # 7 at 10. Plaintiff concedes this point. Dkt. # 11 at 12. As a result, to the extent the complaint seeks punitive damages from Arpaio in his official capacity, that claim is dismissed.

Plaintiff states, however, that "[t]o the extent [her] Complaint suggests otherwise, Plaintiff offers to amend her Complaint to make it clear that she is only seeking punitive damages against Arpaio in his individual and marital capacity." Dkt. # 11 at 12. Arpaio argues that the complaint clearly does not seek punitive damages against him in his individual and marital capacity because it makes clear that Arpaio was acting at all times "within the scope" of his employment. Dkt. # 1 at 9. The Court agrees with Arpaio. Should Plaintiff wish to seek punitive damages against Arpaio in his individual and marital capacity, she should make that clear in her amended complaint.

**C. Fictitiously-Named Defendants.**

Arpaio and the Sheriff's Office argue that any *§ 1983* claims against fictitiously-named Defendants must be dismissed. Dkt. # 7 at 12-13. Plaintiff argues [*17] that she will learn during discovery the identities of the unnamed Defendants and will then amend her complaint to add their names. Dkt. # 11 at 12. Arpaio does not respond to Plaintiff's arguments. Dkt. # 15.

"As a general rule, the use of 'John Doe' to identify a defendant is not favored." *Gillespie v. Civiletti, 629 F.2d 637, 642 (9th Cir. 1980)* (citing *Wiltsie v. Cal. Dep't of Corrections, 406 F.2d 515, 518 (9th Cir. 1968)*). Where the identity of defendants cannot be known prior to the filing of a complaint, however, "the plaintiff should be given an opportunity through discovery to identify the defendants, unless it is clear that discovery would not uncover the identities, or that the complaint would be dismissed on other grounds." *Gillespie, 629 F.2d at 642* (citing *Wells Fargo & Co. v. Wells Fargo Express Co., 556 F.2d 406, 430-31 n. 24 (9th Cir. 1977)*); *Wakefield v. Thompson, 177 F.3d 1160, 1163 (9th Cir. 1999)*. In this case, it is not clear that discovery will not uncover the identities of the currently unnamed Defendants. As a result, the Court will not dismiss the fictitiously-named Defendants. Plaintiff may use the discovery processes to obtain the names of the persons whom [*18] she believes violated her constitutional rights. If Plaintiff discovers their identities, she may seek leave to amend the complaint to name these individuals.

**D. Plaintiff's Request to Conduct Discovery and Request to Amend.**

Plaintiff requests in her response "that she be permitted to amend her Complaint and/or conduct discovery under *Rule 56(f)*." Dkt. # 11 at 5. Under *Rule 15(a)(1)*, a party may amend his or her pleading once as a matter of course within 21 days after serving it or within 21 days after service of a responsive pleading or a motion under *Rule 12(b), (e)*, or *(f)*, whichever is earlier. *Fed. R. Civ. P. 15(a)(1)(A)-(B)*. *Rule 15(a)(2)* provides that in all other cases a party may amend his pleading only with the opposing party's written consent or leave of court. *Fed. R. Civ. P. 15(a)(2)*. The rule makes clear, however, that the Court "should freely give leave when justice so requires."

*Id.* This policy in favor of amendment must be heeded by the Court, *see Foman v. Davis, 371 U.S. 178, 182, 83 S. Ct. 227, 9 L. Ed. 2d 222 (1962)*, and applied with extreme liberality, *see Owens v. Kaiser Foundation Health Plan, Inc., 244 F.3d 708, 712 (9th Cir. 2001)*.

The Court will grant Plaintiff leave to file an amended complaint. [*19] *See Neuendorf v. Unknown Party, No. CV 10-124-PHX-RCB, 2010 U.S. Dist. LEXIS 57541, 2010 WL 1743198, at *2 (D. Ariz. Apr. 27, 2010)*. Plaintiff shall file her amended complaint by **July 16, 2010.**

The Court will deny Plaintiff's request to conduct discovery pursuant to *Rule 56(f)*. Under *Rule 56(f)*, a party opposing a motion for summary judgment can, in certain cases, avoid summary judgment by presenting an affidavit showing that "it cannot present facts essential to justify its opposition." This rule is inapplicable to the present *Rule 12(b)(6)* motion.

In her reply brief, Plaintiff argues for the first time that Defendants' motion raises matters outside the pleadings and, as a result, should be treated as a motion for summary judgment in accordance with *Rule 12(d)*. Dkt. # 16 at 1-2. Plaintiff does not point to any matters outside the pleadings which Defendants allegedly raised, and the Court does not find any. As a result, the Court will deny Plaintiff's request to treat the *Rule 12(b)(6)* motion as one for summary judgment.

**E. Conclusion.**

The Court will dismiss the claims against the Sheriff's Office with prejudice because it is a non-jural entity. The Court will dismiss the *Fourteenth Amendment* equal protection claim [*20] as to Arpaio without prejudice. The Court will not dismiss the remaining *§ 1983* claims against Arpaio or claims against the fictitiously-named Defendants.

**IV. Maricopa County.**

Maricopa County makes the following arguments as to why Claims 1 and 2 (negligence and gross negligence) should be dismissed: (1) Maricopa County is not responsible for the operation of the jails, and (2) Plaintiff failed to comply with Arizona's Notice of Claims statute. The County also makes the following arguments as to why the *§ 1983* claims and the accompanying claims for punitive damage should be dismissed: (3) *§ 1983* does

not authorize punitive damages against local government entities, (4) the County cannot be held liable under *§ 1983* on the basis of *respondeat superior*, (5) Plaintiff has failed to allege facts supporting a claim against the County for failure to train, (6) Plaintiff has failed to state an *Eighth Amendment* claim, (7) Plaintiff's claims against the fictitiously-named Defendants must be dismissed, (8) Plaintiff has failed to state a *Fourteenth Amendment* equal protection claim, privileges and immunities claim, or due process claim, (9) Plaintiff's allegations amount to claims of medical negligence, [*21] which are not compensable, and (10) Plaintiff has failed to state a *Fourth Amendment* claim against the County. Dkt. # 5.

**A. Negligence and Gross Negligence.**

**1. Operation of the Jails.**

Maricopa County argues that Plaintiff has failed to state a claim for negligence or gross negligence because it is not responsible for operation of the County jails. The County cites several Arizona statutes which empower the County Sheriff to "[t]ake charge of the county jail[.]" *A.R.S. §§ 11-441(A)(5), 31-101, 11-401, 11-409, 11-251*. The County also cites one case, *Hounshell v. White, 220 Ariz. 1, 202 P.3d 466, 470 (Ariz. App. 2008)*, which, it argues, supports a finding that the County is not responsible for jail operations.

Both this Court and courts in Arizona have held that "[t]he County is responsible for the Sheriff's jail policies." *Flanders v. Maricopa County, 203 Ariz. 368, 54 P.3d 837, 847 (Ariz. App. 2002)*; *Murphy v. County of Yavapai, CV-04-1861-PCT-DGC, 2006 U.S. Dist. LEXIS 63732, 2006 WL 2460916 (D. Ariz. Aug. 23, 2006)* ("Under Arizona law as interpreted in *Flanders*, a county is responsible for its sheriff's jail policies."). Moreover, the County's reliance on *Hounshell* is misplaced. In *Hounshell*, the court determined that a county board of supervisors [*22] "may not discipline the classified employees of other county officers," and did not consider the issue of whether a county is responsible for a sheriff's jail policies. *202 P.3d at 467*. The Court will not dismiss Claims 1 and 2 on this ground.

**2. Notice of Claims Statute.**

Under *A.R.S. § 12-821.01*, before a plaintiff may bring a state or common law claim against a public entity, the plaintiff must file a notice of claim "within one hundred eighty days after the cause of action accrues"

which "contain[s] facts sufficient to permit the public entity or public employee to understand the basis upon which liability is claimed." *A.R.S. § 12-821.01.* The statute bars any claims against a public entity that have not been asserted in a timely Notice of Claim. *Id.*

The County has moved to dismiss the Plaintiff's common law claims pursuant to *Rule 12(b)(6)* because Plaintiff failed to file a timely notice of claim. Generally, a statute of limitations defense can only be raised in a *Rule 12(b)(6)* motion "[i]f the running of the statute is apparent on the face of the complaint[.]" *Jablon v. Dean Witter & Co., 614 F.2d 677, 682 (9th Cir. 1980)* (citing *Graham v. Taubman, 610 F.2d 821 (9th Cir. 1979)).* Even [*23] if the relevant dates alleged in the complaint are beyond the statutory period, the "'complaint cannot be dismissed unless it appears beyond doubt that the plaintiff can prove no set of facts that would establish the timeliness of the claim.'" *Hernandez v. City of El Monte, 138 F.3d 393, 402 (9th Cir. 1998)* (quoting *Supermail Cargo, Inc. v. U.S., 68 F.3d 1204, 1206 (9th Cir. 1995)).*

The County has failed to show that "the plaintiff can prove no set of facts that would establish the timeliness'" of her Notice of Claim. *Hernandez, 138 F.3d at 402.* Indeed, the County's entire argument is based on evidence not included in the complaint. [3] *See* Dkt. # 5 at 3-5. Because "matters outside the pleadings are presented" in support of the County's *Rule 12(b)(6)* motion, the Court must treat it "as one for summary judgment under *Rule 56.*" *Fed. R. Civ. P. 12(d).* A court may deny a motion for summary judgment if the "party opposing the motion shows by affidavit that, for specified reasons, it cannot present facts essential to justify its position[.]" *Fed. R. Civ. P. 56(f).* Plaintiff has provided an affidavit stating that the necessary evidence on this issue "is solely within Defendants' control," including [*24] "medical records for Ms. Alvarez[.]" Dkt. # 9 at 1-4. As a result, the Court will deny the County's motion to dismiss Claims 1 and 2 on the ground that the Notice of Claim filed by Plaintiff was untimely.

> 3  The County's evidence consists of several medical complaints filed by someone named "Francisca Perez." Dkt. # 8 at 2-10. Plaintiff does not dispute the authenticity of these documents, but it is unclear why the documents do not state Plaintiff's name.

**B. *§ 1983* Claims.**

**1. Punitive Damages.**

The County argues that Plaintiff's claim for punitive damages must be dismissed because *§ 1983* does not authorize punitive damages against local government entities. Plaintiff agrees. Dkt. # 10 at 9. To the extent the complaint seeks punitive damages against the County, it will be dismissed.

**2. *Respondeat Superior.***

The County argues that it cannot be held liable under *§ 1983* on the basis of *respondeat superior.* The County is correct that "a municipality cannot be held liable under *§ 1983* on a *respondeat superior* theory." *Monell v. Dep't of Social Services of N.Y., 436 U.S. 658, 691, 98 S. Ct. 2018, 56 L. Ed. 2d 611 (1978).* A County may, however, be "liable under *§ 1983* when injury is inflicted by execution of that entity's policy, whether [*25] made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy." *Flanders, 54 P.3d at 847* (internal quotation and citation omitted). Moreover, under *Monell,* municipal liability can attach where a plaintiff's alleged constitutional deprivation was the result of a policy or custom of the local government. *436 U.S. at 691-94.* "For purposes of liability under *Monell,* a policy is a deliberate choice to follow a course of action . . . made from among various alternatives by the official or officials responsible for establishing final policy with respect to the subject matter in question." *Fogel v. Collins, 531 F.3d 824, 834 (9th Cir. 2008)* (internal quotations and citations omitted) (ellipses in original).

Plaintiff argues that the County had policies which caused her injuries and for which the County is responsible under *Flanders. 54 P.3d at 847.* In response, the County merely rehashes the point that the County cannot be vicariously liable for the actions of the Sheriff. Dkt. # 17 at 7. Plaintiff agrees on this point. *See* Dkt. # 10 at 9 ("Plaintiff agrees that the County cannot be held liable under a theory of *respondeat superior* for Ms. Alvarez' *Section 1983* [*26] claims.") (italics added). The County does not argue that it cannot be found liable for its own policies, nor does it argue that Plaintiff has failed to plead facts adequate to show that its policies caused her injuries. The Court will not dismiss the *§ 1983* claims on this ground.

**3. Failure to Train.**

The County argues that Plaintiff has failed to allege

facts supporting a failure by the County to train County personnel. Dkt. # 5 at 7. Generally, to state a claim for failure to train, a plaintiff must allege facts to support that the alleged failure to train amounted to deliberate indifference. *Canell v. Lightner, 143 F.3d 1210, 1213 (9th Cir. 1998)*. Plaintiff must allege facts showing that the County's failure to train was the result of a deliberate or conscious choice. *Id. at 1213-14*.

Plaintiff argues that "the County can be held liable for inadequate training in this case" because the County had a policy or custom of failing to train. Dkt. # 10 at 11. Plaintiff alleges that "Maricopa County . . . [was] deliberately and callously indifferent in training and/or failing to adequately train MCSO deputies, employees and agents[.]" Dkt. # 1 at 11. She alleges that the County was responsible [*27] for hiring and training employees, that the County has long known "of the dangerous and unconstitutional actions, customs, conditions, and culture that led to Plaintiff's injuries," and that the County "foster[ed], encourag[ed] and knowingly institut[ed] and/or up[held] formal and informal MCSO policies or customs condoning racial profiling, unlawful searches and seizures, excessive use of force, and indifference to the medical care of its detainees, such as what happened to Ms. Alvarez." Dkt. # 1 at 12. These facts are sufficient to allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal, 129 S. Ct. at 1949*. As a result, the Court will not dismiss the *§ 1983* claims against the County to the extent they allege a failure to train.

**4. *Eighth Amendment* Claim.**

Plaintiff concedes that none of her claims arise out of the *Eighth Amendment*. Dkt. # 10 at 14. As a result, to the extent the *§ 1983* claims are based on an alleged *Eighth Amendment* violation, they are dismissed.

**5. Fictitiously-Named Defendants.**

The County argues that Plaintiff's claims against the fictitiously-named Defendants must be dismissed on the ground that they do not [*28] identify the allegedly unconstitutional acts of each Defendant. Dkt. # 5 at 9. As the Court discussed above, however, where the identity of defendants cannot be known prior to the filing of a complaint, "the plaintiff should be given an opportunity through discovery to identify the defendants, unless it is clear that discovery would not uncover the identities, or that the complaint would be dismissed on other grounds."

*Gillespie, 629 F.2d at 642*; *Wakefield, 177 F.3d at 1163*. The Court will not dismiss the fictitiously-named Defendants.

**6. *Fourteenth Amendment*.**

**a. Equal Protection.**

"[T]o state a claim under *42 U.S.C. § 1983* for a violation of the *Equal Protection Clause of the Fourteenth Amendment* a plaintiff must show that the defendants acted with an intent or purpose to discriminate against the plaintiff based upon membership in a protected class." *Lee, 250 F.3d at 686*. The County alleges that Plaintiff has failed to state a claim because "Plaintiff fails to identify (1) what protected class is at issue; (2) whether she was a member of the protected class; and (3) if she was a member within that class, whether and how she was subjected to disparate treatment[.]" Dkt. # 5 at 11. The [*29] Court agrees.

As discussed above, nowhere in Plaintiff's complaint does she allege that she is a member of a protected class or that she was treated differently than similarly situated people because of her membership in the protected class. *See* Dkt. # 1. Although Plaintiff states in her response that she is Hispanic and that her mistreatment was racially motivated, this is not clear from the face of the complaint. Dkt. # 10 at 13. The Court finds that Plaintiff has failed to state a claim for a *Fourteenth Amendment* equal protection claim against the County.

**b. Privileges and Immunities.**

Plaintiff concedes that her claims do not arise out of the privileges and immunities clause of the *Fourth Amendment*. Dkt. # 10 at 14. To the extent her *§ 1983* claims are based on an alleged violation of the privileges and immunities clause, they are dismissed.

**c. Due Process.**

The County joins in Arpaio's motion as to why Plaintiff has failed to state a claim against it for violation of the *due process clause of the Fourteenth Amendment*. In order for Plaintiff to allege a *Fourteenth Amendment* due process claim against the County, she must state facts in her complaint that, if true, would amount to a constitutional deprivation [*30] caused by an act or omission of the County. She also must show that the County's act or omission was taken with deliberate

indifference. *See Farmer, 511 U.S. at 841*. To show deliberate indifference, Plaintiff must allege facts showing that the County was "aware of facts from which the inference could be drawn that a substantial risk of serious harm exist[ed]" and that it "[drew] the inference." *Id. at 837*.

Plaintiff has adequately pled such facts. She alleges that the County "knew or should have known that unconstitutional policies . . . existed within MCSO," that it upheld these policies, and that at the time of Plaintiff's injuries it had "long been on notice" of the "dangerous and unconstitutional actions, customs, conditions, and culture" that permeated the Sheriff's Office. Dkt. # 1 at 11-15. These facts, accepted as true, show that the County was aware that a serious risk of harm existed and that it drew that inference, meaning that it was deliberately indifferent. The Court finds that Plaintiff has adequately stated a *Fourteenth Amendment* due process claim against the County.

**7. Medical Negligence.**

The County argues that Plaintiff's "allegations that she was not timely provided [*31] medical care or treatment for her injuries amount to nothing more than claims of medical malpractice, not constitutional violations." Dkt. # 5 at 13. The County contends that "[w]hile Plaintiff argues that medical treatment was deliberately withheld and refused, Plaintiff in fact underwent a medical screening on the day after she was arrested. Orders were written 3 days later. Less than 2 weeks later, x-rays were taken and medications were ordered." Dkt. # 17 at 9.

The County's argument, as Plaintiff points out, "contradicts the allegations in Ms. Alvarez' Complaint and raises material issues of fact that would preclude dismissal under the standards set forth under *Rule 12(b)(6)* and *Rule 56*." Dkt. # 10 at 14. As a result, the Court cannot dismiss Plaintiff's claims on this ground.

**8. *Fourth Amendment*.**

The County argues that Plaintiff has failed to state a claim under the *Fourth Amendment* because her complaint does not implicate the *Fourth Amendment*. Dkt. # 5 at 14. Plaintiff argues that she has stated a claim because "paragraphs 14-20 of her Complaint contain allegations that Defendants used unnecessary force on two different occasions, and that they subsequently

conducted an unreasonable [*32] strip search during which Ms. Alvarez was humiliated by male and female deputies." Dkt. # 10 at 15.

Plaintiff's complaint clearly implicates the *Fourth Amendment*. She alleges that she was subjected to excessive force when she was slammed into a wall and violently struck, and that she was unreasonably strip-searched. Dkt. # 1 at 5-6.

**C. Plaintiff's Request to Conduct Discovery and Request to Amend.**

Plaintiff again requests "that she be permitted to amend her Complaint and/or conduct discovery under *Rule 56(f)*." Dkt. # 10 at 5. As discussed above, the Court will grant Plaintiff leave to file an amended complaint by **July 16, 2010.**

**D. Conclusion.**

The Court will dismiss Plaintiff's *Fourteenth Amendment* equal protection claim as to the County.

**V. Motion for Order Authorizing Alternative Service.**

Plaintiff has moved the Court for an order authorizing alternative service of Defendant Ava Arpaio on the ground that one attempt to serve her was unsuccessful. Dkt. # 20 at 2 (stating that a process server knocked on the door but that no one would answer the gate). The Court will deny the motion. Plaintiff has made only one attempt to serve Ava Arpaio, and the Court does not find that this is sufficient [*33] to show that personal service is impracticable.

**IT IS ORDERED:**

1. Arpaio and the Sheriff's Office's motion to dismiss (Dkt. # 7) is **granted in part and denied in part.** The Sheriff's Office is dismissed from this case with prejudice. The *Fourteenth Amendment* equal protection claim is dismissed without prejudice as to Arpaio.

2. Maricopa County's motion to dismiss (Dkt. # 5) is **granted in part and denied in part.** The *Fourteenth Amendment* equal protection claim is dismissed without prejudice as to the County.

3. Plaintiff's request to amend is **granted** and her requests for discovery pursuant to *Rule 56(f)* (Dkt. # # 10, 11, 16, 18) are **denied.**

2010 U.S. Dist. LEXIS 62121, *33

4. Plaintiff shall file an amended complaint by **July 16, 2010.**

    5. Plaintiff's motion for order authorizing alternative service (Dkt. # 20) is **denied.**

    DATED this 23rd day of June, 2010.

/s/ David G. Campbell

David G. Campbell

United States District Judge

C & F Sys., LLC v. Limpimax, S.A.

Case No. 1:09-cv-858

UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF
MICHIGAN, SOUTHERN DIVISION

*2010 U.S. Dist. LEXIS 973; 75 Fed. R. Serv. 3d (Callaghan) 956*

January 6, 2010, Decided
January 6, 2010, Filed

**COUNSEL:** [*1] For C & F Cystems, L.L.C., a Michigan liability company, plaintiff: Mark A. Hullman, LEAD ATTORNEY, Traverse City, MI.

**JUDGES:** Joseph G. Scoville, United States Magistrate Judge. Honorable Paul L. Maloney.

**OPINION BY:** Joseph G. Scoville

**OPINION**

**MEMORANDUM OPINION**

This is a civil action brought by a Michigan limited liability company against a Peruvian corporation. Plaintiff's claim arises from the alleged breach of a written sales agency agreement. The defendant corporation does not maintain any employees or facilities within the United States. The matter is before the court on plaintiff's *ex parte* motion brought under *Fed. R. Civ. P. 4(f)(3)* for an order authorizing alternative service upon the defendant by merely mailing a copy of the summons and complaint to defendant at its business address in Lima, Peru. The record does not indicate that plaintiff has made any effort to serve defendant by any other means. Chief Judge Paul Maloney has referred the motion to me. For the reasons set forth below, plaintiff's motion will be denied.

**Discussion**

Service of process upon corporations at a place not within any judicial district of the United States may be made in any manner prescribed by *Rule 4(f)* for serving an individual [*2] in a foreign country, except personal delivery. *See FED. R. CIV. P. 4(h)(2)*. *Rule 4(f)* contemplates six alternative means of service outside the United States:

> (1) by any internationally agreed means of service that is reasonably calculated to give notice, such as those authorized by the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents;
>
> (2) if there is no internationally agreed means, or if an international agreement allows but does not specify other means, by a method that is reasonably calculated to give notice:
>
>> (A) as prescribed by the foreign country's law for service in that country in an action in its courts of general jurisdiction;
>>
>> (B) as the foreign authority directs in response to a letter rogatory or letter of request; or
>>
>> (C) unless prohibited by the foreign country's law, by:
>>
>>> (i) delivering a copy of the summons and of the complaint to the individual personally; or

(ii) using any form of mail that the clerk addresses and sends to the individual and that requires a signed receipt; or

(3) by other means not prohibited by international agreement, as the court orders.

*FED. R. CIV. P. 4(f)*. As noted, with regard to corporations, the method set forth in *subsection (C)(i)* [*3] (delivery of a copy of the summons and complaint to an individual defendant) is not available. Consequently, with regard to corporate defendants, five alternative means of process are contemplated by *Rule 4(f)*.

The first method of service, and the one to be preferred in most cases, is service pursuant to an internationally agreed means, such as those authorized by the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents. *FED. R. CIV. P. 4(f)(1)*. The Republic of Peru is not signatory to the Hague Convention, but both Peru and the United States are signatories to the Inter-American Convention on Letters Rogatory of January 30, 1975, and the Additional Protocol of May 8, 1979 (found immediately after *28 U.S.C. § 1781*). These conventions establish a method agreed upon by both countries for service of civil process within their borders. Unlike the Hague Convention, the Inter-American Convention does not purport to provide the exclusive method of effecting service between the signatories. *Kreimerman v. Casa Veerkamp S.A. de C.V., 22 F.3d 634, 643-44 (5th Cir. 1994)*. Following the procedures authorized in the Convention, however, is nevertheless preferable for reasons [*4] of international comity, which is concerned with maintaining amicable working relationships between nations and mutual respect for the laws of foreign countries. *Tucker v. Interarms, 186 F.R.D. 450, 452-53 (N.D. Ohio 1999)*. Since both Peru and the United States have seen fit to agree upon a method of service acceptable to both countries, principles of international comity would counsel in favor of at least attempting to comply with the requirements of the Convention, even if they are not the exclusive allowable means of service in a strict sense. As indicated, there is no evidence before the court that plaintiff has attempted service pursuant to the Inter-American Convention.

*Rule 4(f)(2)* applies if there is no internationally agreed means of service, or if an international agreement allows but does not specify other means. As the Inter-American Convention does indeed allow other means of service, resort to *Rule 4(f)(2)* is possible. That rule allows service by a method reasonably calculated to give notice, either as prescribed by Peruvian law in an action pending in its courts or as Peru directs in response to a letter rogatory. Plaintiff has not presented this court with any evidence [*5] concerning the appropriate procedures under Peruvian law for service of process in its courts of general jurisdiction. As for the use of letters rogatory, that method of service is expressly governed by the Inter-American Conference, whose provisions plaintiff has apparently not pursued. The final method authorized by *Rule 4(f)(2)* is a form of mail sent by the Clerk and requiring a signed receipt. This method is only allowable if not prohibited by the foreign country's law. *FED. R. CIV. P. 4(f)(2)(C)*. Again, plaintiff has not provided this court with any information concerning the acceptability of service by mail under Peruvian law.

Plaintiff wishes to skip the express provisions of *subsections (1)* and *(2) of Rule 4(f)*, in favor of the catchall provision allowing the court to order service "by other means not prohibited by international agreement" under *Fed. R. Civ. P. 4(f)(3)*. This provision "serves as a safety valve for unanticipated situations . . . ." 4B CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE & PROCEDURE § 1133 at 313 (3d ed. 2002). "*Rule 4(f)(3)* is most likely to be employed when a foreign country's Central Authority fails to effect service within the six-month [*6] period provided by the Hague Convention or refuses to serve a complaint based on its own public policy or substantive law limitations." *Id.* at 313-14. Consequently, the better view is that *Rule 4(f)(3)* should be viewed as a "final effort to make service when other means have failed." *Marcantonio v. Primorsk Shipping Corp., 206 F. Supp. 2d 54, 58 (D. Mass. 2002)*. Some cases have authorized alternative service under *Rule 4(f)(3)* without first resorting to traditional means of service, *see, e.g., Rio Properties, Inc. v. Rio Int'l Interlink, 284 F.3d 1007, 1015 (9th Cir. 2002); Foreign Fin. Group, LLC v. President & Fellows of Harvard College, 199 F.R.D. 22, 23-24 (D. Me. 2001)*, but these cases seem to ignore the requirements of international comity and accord insufficient weight to the methods of service officially sanctioned by the governments of both the United States and its sister nation. Therefore, even if other methods of obtaining service of process are

2010 U.S. Dist. LEXIS 973, *6; 75 Fed. R. Serv. 3d (Callaghan) 956

technically allowed, principles of comity encourage the court to insist, as a matter of discretion, [1] that a plaintiff attempt to follow foreign law in its efforts to secure service of process upon defendant. *See Tucker, 186 F.R.D. at 452-53.*

[A] [*7] district court, in exercising the discretionary power permitted by *Rule 4(f)(3)*, may require the plaintiff to show that they have "reasonably attempted to effectuate service on defendant and that the circumstances are such that the district court's intervention is necessary to obviate the need to undertake methods of service that are unduly burdensome or that are untried but likely futile."

*FMAC Loan Receivables v. Dagra, 228 F.R.D. 531, 534 (E.D. Va. 2005)* (quoting *Ryan v. Brunswick, 2002 U.S. Dist. LEXIS 13837, 2002 WL 1628933, at * 2 (W.D.N.Y. 2002))*. Additionally, a court's insistence that a plaintiff follow procedures sanctioned by foreign law can have an ancillary benefit in plaintiff's favor: a failure to employ the safe harbor procedures of the Inter-American Convention may make enforcement in Peru of any judgment difficult or even impossible. *See Kreimerman, 22 F.3d at 643-44; Tucker, 186 F.R.D. at 452-53.*

1    "The district court's denial of a motion for alternative service of process under *Fed. R. Civ. P. 4(f)(3)* is subject to an abuse of discretion standard because the plain language of the rule stipulates that a district court 'may' direct alternative means of service." *Prewitt Enter., Inc. v. Organization of Petroleum Exporting Countries, 353 F.3d 916, 921 (11th Cir. 2003).*

**Conclusion**

For [*8] the foregoing reasons, plaintiff's *ex parte* motion for alternative service under *Rule 4(f)(3)* will be denied. Plaintiff will be required to proceed under the Inter-American Convention, pursuant to *Rule 4(f)(1)*, or by a method reasonably calculated to give notice and complying with Peruvian law, under *Rule 4(f)(2)*. The burden is on plaintiff to demonstrate to the court that any proposed method of service is consistent with Peruvian law. If plaintiff is unable to effect service after diligent attempts, it may reapply for leave to proceed under *Rule 4(f)(3)*.

Dated: January 6, 2010

/s/ Joseph G. Scoville

United States Magistrate Judge

**Fifth Third Bank v. Malone**

**Case No. 09-cv-6578**

**UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION**

*2010 U.S. Dist. LEXIS 4352*

**January 20, 2010, Decided**
**January 20, 2010, Filed**

**SUBSEQUENT HISTORY:** Motion granted by, Judgment entered by *Fifth Third Bank v. Malone, 2010 U.S. Dist. LEXIS 82856 (N.D. Ill., Aug. 12, 2010)*

**COUNSEL:** [*1] For Fifth Third Bank, an Ohio banking corporation, successor by merger with Fifth Third Bank, a Michigan banking corporation, Plaintiff: Patrick Thomas Stanton, LEAD ATTORNEY, Amy R Jonker, Dykema Gossett PLLC IL, Chicago, IL.

**JUDGES:** Robert M. Dow, Jr., United States District Judge.

**OPINION BY:** Robert M. Dow, Jr.

**OPINION**

**MEMORANDUM OPINION AND ORDER**

Before the Court are Plaintiff's motion to approve alternative service pursuant to *Federal Rule of Civil Procedure 4(e)(1)* [8] and Plaintiff's supplement to that motion [11]. For the reasons stated below, the motion [8] is granted.

**I. Background**

On October 19, 2009, Plaintiff filed this action against Defendants Donna Malone and Mark Anstett. As set forth in the materials attached to their motion, including the affidavit of their process server, Plaintiff has made several attempts to serve the summons and complaint on Ms. Malone. First, Plaintiff attempted to effectuate service at Malone's residences in Arlington Heights and Chicago. Those attempts failed, although the process server avers that on one occasion while he was on the phone with Malone's neighbor he heard Malone answer her door and refuse to come down to open the apartment building door for the process server. [*2] [See 8.] Plaintiff also attempted to obtain a waiver of service from Ms. Malone to no avail. [See 11.] On the basis of the foregoing, Plaintiff concludes that Malone is evading service and requests that the Court approve an alternative method of service.

**II. Analysis**

As the Seventh Circuit has noted, "[a] district court may not exercise personal jurisdiction over a defendant unless the defendant has been properly served with process." *United States v. Ligas, 549 F.3d 497, 500 (7th Cir. 2008)*. The Court further reminded district courts that "the service requirement is not satisfied merely because the defendant is aware that he has been named in a lawsuit or has received a copy of the summons and the complaint." *Id.;* see also *Equity Residential Properties Mgmt. Corp. v. Nasolo, 364 Ill. App. 3d 26, 35, 847 N.E.2d 126, 301 Ill. Dec. 467 (1st Dist. 2006)* (holding that a defendant's actual knowledge that an action is pending or that service has been attempted is not the equivalent of service of summons and would not relieve the plaintiff of its burden or vest the court with jurisdiction). In other words, the formalities of service of process under *Rule 4* must be observed.

The court of appeals stated that "the [*3] preferred approach" to service "is for the plaintiff to mail the defendant a copy of the complaint and summons and obtain a waiver of personal service from the defendant under *Rule 4(d)*." *Ligas, 549 F.3d at 500-01*. As noted above, Plaintiff has attempted to follow "the preferred approach," but was not successful in obtaining a waiver.

2010 U.S. Dist. LEXIS 4352, *3

Where, as here, "the defendant does not waive service and no federal statute otherwise supplies a method for service process, then *Rule 4(e)*'s list of methods is exclusive." *Id. at 501*. Those approved methods include personal service, leaving a copy of the summons and complaint at the defendant's "usual place of abode" with a person of suitable age who resides there, delivering a copy of the complaint and summons to an agent authorized to accept service, or "any other manner of serving process permitted by the law of the state where the district court sits." *Id.*

Here, having exhausted other methods of service, Plaintiff has invoked *Federal Rule of Civil Procedure 4(e)(1)* to request an order permitting service by an alternative method. *Rule 4(e)(1)* provides that service of a summons and complaint may be effected "following state law for serving a summons [*4] in an action brought in courts of general jurisdiction in the state where the district court is located or where service is made." See *Swaim v. Moltan Co., 73 F.3d 711, 719 (7th Cir. 1996)* (explaining that in the absence of rules for service of process set forth in the statute giving rise to the cause of action, "service of process is governed by the law of the state in which the district court is located").

Like federal law, the Illinois Code of Civil Procedure generally permits service on an individual "(1) by leaving a copy of the summons with the defendant personally, [or] (2) by leaving a copy at the defendant's usual place of abode, with some person of the family or person residing there, of the age of 13 years or upwards, and informing that person of the contents of the summons, provided the officer or other person making service shall also send a copy of the summons in a sealed envelope with postage fully prepaid, addressed to the defendant at his or her usual place of abode." *735 ILCS 5/2-203(a)*. However, if service is "impractical" under the methods set forth in *Section 2-203(a)*, a plaintiff "may move, without notice, that the Court enter an order directing a comparable method [*5] of service." *735 ILCS 5/2-203.1*. A motion to approve service under *Section 5/2-203.1* "shall be accompanied with an affidavit stating the nature and extent of the investigation made to determine the whereabouts of the defendant and the reasons why service is impractical * * *, including a specific statement showing that a diligent inquiry as to the location of the individual defendant was made and reasonable efforts to make service have been unsuccessful." *In re Schmitt, 321 Ill. App. 3d 360, 367,*

*747 N.E.2d 524, 254 Ill. Dec. 484 (2d Dist. 2001)*. If the moving party has satisfactorily made the required showing of "diligent inquiry" by affidavit, "[t]he court may order service to be made in any manner consistent with due process." *Id. at 367-68*.

The language of *Section 2-203.1* contemplates the entry of the order "directing a comparable method of service" in advance of the actual service of the summons and complaint. In view of the adequate showing of "diligent inquiry" by Plaintiff and its unsuccessful efforts to serve Ms. Malone notwithstanding a thorough "investigation made to determine the whereabouts of the defendant" and explanation of "the reasons why service is impractical" under the usual rule, the Court finds [*6] that this may be an appropriate case for an order prospectively authorizing alternative service under *735 ILCS 5/2-203.1*.

As the Court previously has explained (see *Hotel Employees & Restaurant Employees Int'l Union Welfare Fund v. Printer's Row, LCC, 2008 U.S. Dist. LEXIS 98499, 2008 WL 5142187, at *3 (N.D. Ill. Dec. 5, 2008)*), at least two of the small handful of published Illinois decisions applying *Section 2-203.1* suggest a "comparable method of service" that is readily available to Plaintiffs here and comports with due process where, as here, there is good reason to believe that the defendant is consciously and actively trying to evade service. In one of those cases, *In re Marriage of Schmitt, 321 Ill. App. 3d 360, 747 N.E.2d 524, 254 Ill. Dec. 484 (2d Dist. 2001)*, the petitioner in a marriage dissolution case contended that the respondent was attempting to evade service of process and sought relief under *Section 2-203.1* when the customary methods of effecting service had proven unsuccessful. The trial court issued an order authorizing service by leaving a copy of summons and petition with any two of five individuals or entities, including the respondent's mother, an employee of a corporation that the respondent controlled, and two attorneys [*7] who previously had represented the respondent.

After the petitioner served the employee and the attorneys and the case proceeded to judgment on the merits, the respondent appealed, arguing (among other things) that the trial court lacked jurisdiction because service was never properly made. *In re Marriage of Schmitt, 321 Ill. App. 3d at 366-67*. The appellate court rejected the respondent's objection to service. *Id. at 370*; see also *Schmitt v. Schmitt, 2002 U.S. Dist. LEXIS 1243,*

2010 U.S. Dist. LEXIS 4352, *7

*2002 WL 109359, at *1 (N.D. Ill. Jan. 28, 2002)* (noting that the trial court approved service of process on respondent's employee and former lawyers and that "the appellate court held that the method of service of process employed in this case was constitutionally permissible"). In so doing, the court at least tacitly endorsed the trial court's decision to permit service on an attorney where service on the attorney's client through the standard methods had proven impossible or impractical. To be sure, in view of the legal proposition that "an attorney's authority to act for a client terminates when the matter for which he has been retained ends" and the fact that both attorneys who were served under *Section 2-203.1* submitted affidavits [*8] stating that they no longer represented or had any contact with the respondent, the appellate court hinted (though it did not actually decide) that service on the attorneys may not have been appropriate in that case. *In re Marriage of Schmitt, 321 Ill. App. 3d at 370*. But the court's discussion clearly leaves open the possibility of lawfully effectuating service on an attorney who *currently* represents the evasive defendant (or respondent): "[e]ven assuming that service was insufficient on the two attorneys *because they no longer represented respondent or his business,* respondent presents no valid reason why service on [his employee] was not valid." *Id.* (emphasis added). The appellate court then concluded that given the respondent's admission that the person served worked for his company and the principle that "[c]ourts do not favor those who seek to evade service of summons," the plaintiff's service on the respondent's employee "was sufficient to convey notice to respondent" because "it is reasonable to believe that an employee would advise his employer that he had been served on the employer's behalf." *Id.* [1]

> 1 In *Waller,* service on "an attorney" (among others) where "the defendant's [*9] whereabouts remained unknown" was suggested by Justice Kapala in dissent as a superior method to the service by publication that the panel majority upheld. *348 Ill. App. 3d at 986-87* (Kapala, J., dissenting).

Due process requires notice that is "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane, 339 U.S. at 314*. The Illinois courts have indicated that service on an attorney for the defendant may suffice as "a comparable method" when service through the traditional

methods is "impractical." *In re Marriage of Schmitt, 321 Ill. App. 3d at 370*; *Waller, 348 Ill. App. 3d at 986-87* (Kapala, J., dissenting). Here, the record establishes that Ms. Malone currently is represented by counsel in another action pending in this district, *Equipment Acquisition Resources, Inc. v. Red Oak Acquistion Fund V LLC,* No. 1-09-cv-3317. And, as in *Marriage of Schmitt,* "it is reasonable to believe" that an attorney would advise his client that he had been served on the client's behalf. *321 Ill. App. 3d at 370*. Accordingly, consistent with *Fed. R. Civ. P. 4(e), 735 ILCS 5/2-203.1,* [*10] and the requirements of due process, this Court authorizes Plaintiff to serve Ms. Malone with the summons and operative complaint in care of her attorneys at the Arnstein & Lehr law firm, in the manner set forth at the conclusion of this opinion and order. See also *Davis v. Davis,* Order [Docket No. 12], No. 08-cv-2542 (N.D. Ill. Sept. 11, 2008) (approving alternative service including mailing copies of summons and complaint to defendant's home address, posting copies of summons and complaint in entrance lobby to building in which Defendant lived, and delivery of copies of summons and complaint to counsel for defendant in another case); *id.,* Minute Order and Transcript of Proceedings [Docket Nos. 39, 41] (N.D. Ill. July 9, 2009) (rejecting argument that default judgment was void and finding that plaintiff complied with federal and state service requirements, but granting motion to vacate default judgment on grounds of "excusable neglect and good cause for default").

In reaching this decision, the Court shares the views articulated recently by Circuit Judge Evans in similar circumstances: "it is somewhat regrettable that we are squabbling over service of process; [Defendant] was clearly [*11] dodging service and gaming the system. But service of process represents an important value on the whole -- notice to defendants that they are being sued -- even if it seems like a frustrating formality from time to time." *Ligas, 549 F.3d at 504* (Evans, J., dissenting). As Judge Evans further noted, "service of process laws are designed to ensure defendants receive notice in accordance with concepts of due process," and compliance with *Rule 4* is mandatory. *Id.* (citing *United States v. Jiles, 102 F.3d 278, 282 (7th Cir. 1996)*, and *McMasters v. United States, 260 F.3d 814, 817 (7th Cir. 2001)*). Here, *Rule 4(e)* authorizes service through any manner permitted by the law of the state where the district court sits, and the cases cited above demonstrate that Illinois law permits service on the defendant's current attorney as a last resort, when the customary and

2010 U.S. Dist. LEXIS 4352, *11

preferred methods have proven "impractical" despite the plaintiff's diligent efforts to use those standard methods, as is the case here.

### III. Conclusion

For the reasons stated above, Plaintiff's motion [8] for an order directing service on Defendant Donna Malone pursuant to *Federal Rule of Civil Procedure 4(e)(1)* and *735 ILCS 5/2-203.1* [*12] is granted to the extent and pursuant to the directions set forth below. The Court approves service of the summons and operative complaint on Ms. Malone through the combination of the following methods: (a) mailing a copy of the summons and complaint in a sealed envelope with postage fully prepaid via regular and certified, return receipt requested mail addressed to Malone at her residence at 454 N. Aberdeen, Unit 25, Chicago, Illinois 60622; (b) mailing a copy of the summons and complaint in a sealed envelope with postage fully prepaid via regular and certified, return receipt requested mail addressed to her in care of her attorneys at Arnstein & Lehr, LLP; (c) delivering by hand a copy of the summons and complaint in a sealed envelope addressed to her in care of her attorneys at Arnstein & Lehr, LLP.

Dated: January 20, 2010

/s/ Robert M. Dow, Jr.

Robert M. Dow, Jr.

United States District Judge

**Henry v. Black**

**Case No. 2:11-CV-129 TS**

**UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH,
CENTRAL DIVISION**

*2011 U.S. Dist. LEXIS 11473*

**February 4, 2011, Decided
February 04, 2011, Filed**

**SUBSEQUENT HISTORY:** Motion to strike denied by, Without prejudice, Sanctions allowed by, in part, Sanctions disallowed by *Henry v. Black, 2011 U.S. Dist. LEXIS 78498 (D. Utah, July 19, 2011)*

**COUNSEL:** [*1] For Justin Henry, Plaintiff: Loren M. Lambert, LEAD ATTORNEY, David S. Head, ARROW LEGAL SOLUTIONS GROUP, MIDVALE, UT.

**JUDGES:** TED STEWART, United States District Judge.

**OPINION BY:** TED STEWART

**OPINION**

MEMORANDUM DECISION AND ORDER DENYING WITHOUT PREJUDICE PLAINTIFF'S MOTION AND ORDER FOR ALTERNATIVE SERVICE

This matter is before the Court on Plaintiff's Motion and Order for Alternative Service. Plaintiff seeks to serve Defendant by serving his insurance company or, in the alternative, by sending a certified letter to Defendant's last known address and placing a notice in a Salt Lake City newspaper of general circulation. For the reasons discussed below, the Court will deny the Motion without prejudice.

Pursuant to *Fed.R.Civ.P. 4(e)(1)*, the Court may allow service of process as permitted by the law of Utah. *Rule 4(d)(4)(A)* of the Utah Rules of Civil Procedure provides:

Where the identity or whereabouts of the person to be served are unknown and cannot be ascertained through reasonable diligence, where service upon all of the individual parties is impracticable under the circumstances, or where there exists good cause to believe that the person to be served is avoiding service of process, the party seeking service [*2] of process may file a motion supported by affidavit requesting an order allowing service by publication or by some other means. The supporting affidavit shall set forth the efforts made to identify, locate or serve the party to be served, or the circumstances which make it impracticable to serve all of the individual parties. [1]

Under this rule, litigants may not resort to service by publication until they have first undertaken reasonably diligent efforts to locate the party to be served. This reasonable diligence requirement arises from constitutional due process rights and the recognition that publication alone is generally not a reliable means of informing interested parties that their rights are at issue before the court. [2]

1  *UtahR.Civ.P. 4(d)(4)(A).*
2  *Jackson Constr. Co., Inc. v. Marrs, 2004 UT 89, 100 P.3d 1211, 1215 (Utah 2004).*

"A determination of reasonable diligence thus properly focuses on the *plaintiff's* efforts to locate the

2011 U.S. Dist. LEXIS 11473, *2

defendant. Relevant factors may include the number of potential defendants involved, the projected expense of searching for them, and the number and type of sources of available information regarding their possible whereabouts . . . ." [3]

    3  *Id. at 1216*.

"The reasonable [*3] diligence standard does not require a plaintiff to exhaust all possibilities to locate and serve a defendant. It does, however, require more than perfunctory performance." [4]

    4  *Id. at 1217* (internal quotation marks and citation omitted).

    The diligence to be pursued and shown by the affidavit is that which is reasonable under the circumstances and not all possible diligence which may be conceived. Nor is it that diligence which stops just short of the place where if it were continued might reasonably be expected to uncover an address or the fact of death of the person on whom service is sought. . . . [Reasonable diligence] is that diligence which is appropriate to accomplish the end sought and which is reasonably calculated to do so. If the end sought is the address of an out-of-state defendant it encompasses those steps most likely, under the circumstances, to accomplish that result. [5]

    5  *Parker v. Ross, 117 Utah 417, 217 P.2d 373, 379 (Utah 1950)* (Wolfe, J., concurring).

    Having reviewed Plaintiff's Motion, the Court finds that it falls short of what is required under Utah law. Plaintiff has failed to submit an affidavit in accordance with *Utah Rule of Civil Procedure 4(d)(4)(A)* setting "forth the efforts [*4] made to identify, locate or serve the party to be served, or the circumstances which make it impracticable to serve all of the individual parties." Further, upon the record before the Court, it appears that Plaintiff has taken no efforts to locate Defendant, let alone reasonably diligent efforts. Without further information, supported by an affidavit, the Court is unable to make a determination as to whether service by alternative means is proper in this case. It is therefore

    ORDERED that Plaintiff's Motion and Order for Alternative Service (Docket No. 4) is DENIED WITHOUT PREJUDICE.

    DATED February 4, 2011.

    BY THE COURT:

    /s/ Ted Stewart

    TED STEWART

    United States District Judge

**Ortiz v. Green Bull, Inc.**

**10-CV-3747 (ADS)(ETB)**

**UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF NEW YORK**

*2011 U.S. Dist. LEXIS 131598*

**November 14, 2011, Decided**
**November 14, 2011, Filed**

**SUBSEQUENT HISTORY:** Motion denied by, Sanctions disallowed by, Costs and fees proceeding at, Motion denied by *Ortiz v. Green Bull, Inc., 2011 U.S. Dist. LEXIS 131600 (E.D.N.Y., Nov. 14, 2011)*

**COUNSEL:** [*1] For Plaintiff: Ahmuty, Demers & McManus, Albertson, NY, By: Mark A. Panzavecchia, Esq., Of Counsel.

For Green Bull, Inc.: Catalano, Gallardo & Petropoulos, LLP, Jericho, NY, By: Maria Massucci, Esq., Domingo R. Gallardo, Esq., Of Counsel.

For Werner Company. Inc.: Lewis Brisbois Bisgaard & Smith LLP, New York, NY, By: Carolyn Rose Comparato, Esq., Of Counsel.

NO APPEARANCE, Howard Manufacturing, Co.

**JUDGES:** ARTHUR D. SPATT, United States District Judge.

**OPINION BY:** ARTHUR D. SPATT

**OPINION**

**MEMORANDUM OF DECISION AND ORDER**

　　**SPATT, District Judge**.

　　On August 13, 2010, the plaintiff, Carlos Ortiz ("the Plaintiff"), commenced this action against Green Bull, Inc. ("Green Bull"), Howard Manufacturing Co., and Werner Company seeking damages for an injury he sustained on January 10, 2008 when he fell from a ladder allegedly manufactured by the defendants ("the initial complaint").

　　On December 10, 2010, United States Magistrate Judge E. Thomas Boyle held an initial pre-trial conference in this matter. Counsel for Green Bull made a limited appearance at this conference for the purposes of noting that it had not yet been served. As a result, on January 7, 2011, The Plaintiff filed an amended complaint: (1) alleging that Green Bull, [*2] a company incorporated in the State of Kentucky, had formally dissolved on November 3, 2009 and (2) naming as an additional defendant Liberty Surplus Insurance Corporation ("Liberty"), the insurance company that allegedly insured Green Bull on the date of the accident. According to The Plaintiff, Liberty, through its respective agents, "acted as agents, through correspondence and telecommunications, on behalf of Greenbull, Inc., prior and subsequent to Greenbull's dissolution as a corporate entity on or about November 3, 2009." (Am. Compl., ¶ 6.) The Plaintiff further alleged that, after diligent efforts to locate a possible entity upon which to execute service on Green Bull, Liberty was the only entity that could accept service on Green Bull's behalf. Also on January 7, 2011, The Plaintiff filed a second amended complaint, revising a number of allegations that improperly identified the accident as occurring on January 1, 2008 when it occurred on January 10, 2008.

　　On January 20, 2011, The Plaintiff attempted to effectuate service on Green Bull by serving Liberty. Although The Plaintiff contends that Liberty accepted service on Green Bull's behalf, counsel for Green Bull allegedly informed [*3] the Plaintiff on January 24, 2011 that it had still not yet appeared in the litigation because Green Bull had not yet been served. Thereafter, the Plaintiff voluntarily dismissed his claims against Liberty on March 16, 2011. (See Docket Entry #18.)

Subsequently, on March 25, 2011, the Plaintiff filed a motion for alternative service of process, seeking an order from the Court permitting the Plaintiff to serve Green Bull by service on Liberty. The Plaintiff contends that, as a dissolved foreign corporation not authorized to do business in New York, service on Green Bull is impracticable. Furthermore, the Plaintiff contends that service on Green Bull through Liberty will sufficiently notify Green Bull of the action against it because: (1) the Plaintiff has frequently been in contact with Liberty regarding the accident since it occurred in Liberty's capacity as Green Bull's insurer; (2) Liberty, as Green Bull's insurer, will ultimately be responsible for paying any damages assessed against Green Bull; and (3) Liberty previously accepted service on Green Bull's behalf and Green Bull's limited appearance reflects that such service gave Green Bull sufficient notice of the action. To date, [*4] there has been no opposition to the motion for alternative service.

Also on March 25, 2011, Green Bull filed a letter motion to dismiss the complaint pursuant to *Federal Rule of Civil 12(b)(5)* for improper service, and pursuant to *12(b)(2)* for lack of personal jurisdiction. On March 29, 2011, the Plaintiff submitted a letter opposition. The Court rejected the motion and opposition without prejudice for violating the Court's individual rules governing motion practice. Green Bull renewed its motion to dismiss for lack of jurisdiction and insufficient service of process on April 20, 2011. To date there has been no response to this motion.

The Court will address the Plaintiff's motion for alternative service and Green Bull's motion to dismiss in turn below.

## I. MOTION FOR ALTERNATIVE SERVICE

Service of process on a corporation within a judicial district of the United States may be completed either by serving a copy of the summons and the complaint "to an officer, a managing or general agent, or any other agent authorized by appointment or by law to receive service of process . . . [and] mailing a copy of each to the defendant" or by "following the state law for serving summons in an action [*5] brought in courts of general jurisdiction in the state where the district court is located or where service is made." *Fed. R. Civ. P. 4(e)(1)*. Here, where the case has been brought in the Eastern District of New York, service of the complaint on Green Bull is governed by New York law.

Under New York law, service of process on a foreign corporation is governed by *CPLR § 311*, which provides that service upon a corporation shall be made by delivering the summons "to an officer, director, managing or general agent, or cashier or assistant cashier or to any other agent authorized by appointment or by law to receive service". *N.Y. C.P.L.R. § 311(a)(1)*.

If service on a corporation is "impracticable" under *CPLR § 311(a)(1)* or "any other law", pursuant to *CPLR § 311(b)* the court may direct the plaintiff to serve the summons and complaint by alternate means. *N.Y. C.P.L.R. § 311(b)*. "The meaning of 'impracticable' will depend upon the facts and circumstances of the particular case". *Markoff v. South Nassau Cmty. Hosp., 91 A.D.2d 1064, 1065, 458 N.Y.S.2d 672, 673 (2d Dep't 1983)*. To show that service is otherwise impracticable, a plaintiff "'must make some showing that the other prescribed methods [*6] of service could not be made'". *S.E.C. v. Nnebe, No. 01-CV-5247, 2003 U.S. Dist. LEXIS 2443, 2003 WL 402377, at *3 (S.D.N.Y. Feb. 21, 2003)* (quoting *Markoff, 458 N.Y.S.2d at 673, 91 A.D.2d at 1065*); see also *D.R.I., Inc. v. Dennis, No. 03-CV-10026, 2004 U.S. Dist. LEXIS 22541, 2004 WL 1237511, at *1 (S.D.N.Y. June 3, 2004)* (holding that "[p]laintiff has shown that service is impracticable under the methods specified by New York and Federal Rules of Civil Procedure" where plaintiff attempted unsuccessfully to serve defendant personally at his last known address, performed a "skip trace" search using a process server, and performed searches on the internet).

Here, the Plaintiff seeks to serve Green Bull through Liberty, its liability insurance carrier, on the ground that service on Green Bull by its former officers is impracticable. The Plaintiff has identified Green Bull's former officers as Thomas Greco, John L. Becker, and Chris Prentice. There is no dispute that Mr. Becker, who was Green Bull's registered agent, is deceased and therefore service on him is impracticable. With respect to Mr. Greco and Mr. Prentice, the Plaintiff does not dispute that, under normal circumstances, these individuals would be authorized to accept service on behalf [*7] of Green Bull. Nevertheless, the Plaintiff contends that service is impracticable because Green Bull is a dissolved corporation, and therefore as a matter of law it does not have any managing or general agents that can accept service on its behalf. The Court disagrees.

In New York, dissolution does not affect a

corporation's amenability to service of process. *N.Y. Bus. Corp. Law § 1006(a)(4)* (McKinney's 2003) (stating that a dissolved corporation "may sue or be sued in all courts ... in its corporate name, and process may be served by or upon it."). Valid service can be effectuated on an authorized dissolved corporation by serving the New York Secretary of State. See *N.Y. Bus. Corp. L. § 1311.* Alternatively where, as here, the dissolved corporation is an unauthorized foreign corporation, service can be effectuated on a dissolved corporation by serving those individuals who would have been authorized to accept service on behalf of the corporation prior to dissolution. This includes former officers of the corporation. See *Balogh, Osann, Kramer, Dvorak, Genova & Traub v. Chevy's Int'l*, No. 89-CV-8193, *1990 U.S. Dist. LEXIS 6546, 1990 WL 74531, at *1-2 (S.D.N.Y. May 31, 1990)* (holding that service on a dissolved corporation's [*8] former officer constituted valid service under *CPLR § 311*).

The law of Kentucky, the state where Green Bull was incorporated, similarly provides that "[d]issolution of a corporation shall not prevent commencement of a proceeding by or against the corporation in its corporate name", *Ky. Rev. Stat. Ann. § 271B.14-050(2)(e)* (West 2011), and permits service on a registered agent or officer after the dissolution of the corporation. See *Ky. R. Civ. P. 4.04(5); Corporate Servs. v. Shumaker*, No. 07-CV-024, *2010 U.S. Dist. LEXIS 114823, 2010 WL 4340559 (W.D. Ky. Oct. 27, 2010).*

Although courts in New York have granted a motion pursuant to *CPLR § 311(b)* to permit alternative service on the insurer of a dissolved corporation, they have only done so when service on the dissolved corporations former officers was not an option. For example, in *Cives Steel Co. v. Unit Builders, Inc., 262 A.D.2d 164, 692 N.Y.S.2d 65 (2d Dep't 1999)*, the defendant, a defunct corporation, appealed from a trial court's order pursuant to *CPLR §311(b)* granting the plaintiff leave to serve the defendant by serving its insurer. The Second Department affirmed the lower court's decision, holding that because the plaintiff could not serve the Secretary of [*9] State, and because the "plaintiff was unable to locate a corporate officer who could be served . . . service upon the insurer was the only apparent method reasonably calculated to apprise [the defendant] of the pendency of the action against it". *Id., 262 A.D.2d at 164, 692 N.Y.S.2d at 65-66* (emphasis added); cf. *Rego v Thom Rock Realty Co., 201 A.D.2d 270, 608 N.Y.S.2d 824 (1st Dep't*

1994) (affirming trial court's decision granting a motion for alternative service on an individual defendant through his insurer where service on the defendant was deemed impracticable because, despite demonstrating "significant efforts", the plaintiff's investigator was unable to locate the defendant in the state or country).

By contrast, in the instant case, the Plaintiff has not shown that it is "unable to locate" either Chris Prentice or Thomas Greco. In fact, the Plaintiff does not deny that he has the requisite information to serve Mr. Greco, who is an employee of defendant Werner. As to Mr. Prentice, the Plaintiff simply states that representatives of defendant Werner informed him that Mr. Prentice no longer works for the company. The Plaintiff does not indicate that he engaged in any efforts to [*10] obtain information regarding Mr. Prentice's current residence, business address, or so that service upon him would be impracticable. Thus, the Court finds that the Plaintiff has not satisfied its burden of showing that service on Green Bull by serving Chris Prentice or Thomas Greco would be impracticable so that it would warrant granting leave to serve Green Bull by alternative means. See *David v. Total Identity Corp., 50 A.D.3d 1484,1485, 857 N.Y.S.2d 380, 381-82 (4th Dep't 2008)* (denying a motion for alternative service pursuant to *CPLR 311(b)* because the plaintiff failed to show that service on the corporation's officer was impracticable where the record contained the officer's address).

Accordingly, the Plaintiff's motion to serve Green Bull by alternative service is denied without prejudice to file another motion if service upon Thomas Greco or Chris Prentice is impracticable.

## II. GREEN BULL'S MOTION TO DISMISS

Green Bull seeks dismissal of the complaint for insufficient service of process and lack of personal jurisdiction. Despite the fact that the Plaintiff filed a first amended complaint and second amended complaint with the Court on January 7, 2011, Green Bull bases its motion [*11] to dismiss on the initial complaint. Pursuant to *Federal Rule of Civil Procedure 4(m)*, a Plaintiff is afforded 120 days after the complaint is filed to serve a defendant. Here, the plaintiff filed both the first amended complaint and second amended complaint on January 7, 2011. Accordingly, the Plaintiff had until May 7, 2011 to effectuate service on Green Bull. Because this time period was tolled pending the Court's decision on the motion for alternative service, the Plaintiff now has

2011 U.S. Dist. LEXIS 131598, *11

until December 27, 2011 to effectuate service on Green Bull. Thus, Green Bull's motion to dismiss, filed on March 25, 2011, is premature. As a result, the Court denies Green Bull's motion to dismiss for lack of personal jurisdiction and for insufficient service, without prejudice.

### III. CONCLUSION

For the foregoing reasons, it is hereby

**ORDERED** that the Plaintiff's motion for alternative service pursuant to *CPLR § 311(b)* is denied without prejudice, and it is further

**ORDERED**, that Green Bull's motion to dismiss the complaint for insufficient service pursuant to *Fed. R. Civ. P. 12(b)(5)* and lack of personal jurisdiction pursuant to *Fed. R. Civ. P. 12(b)(2)* is denied without prejudice.

**SO ORDERED**.
Dated: Central  [*12] Islip, New York
November 14, 2011

*/s/ Arthur D. Spatt*

ARTHUR D. SPATT

United States District Judge

**Progressive Southeastern Ins. Co. v. J & P Transp.**

**Case No. 1:11-cv-137**

**UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF INDIANA, FORT WAYNE DIVISION**

*2011 U.S. Dist. LEXIS 73946*

**July 8, 2011, Decided**
**July 8, 2011, Filed**

**PRIOR HISTORY:** *Progressive Southeastern Ins. Co. v. J & P Transp., 2011 U.S. Dist. LEXIS 51272 (N.D. Ind., May 12, 2011)*

**COUNSEL:** [*1] For Progressive Southeastern Insurance Company, Plaintiff: Janet G Horvath, Robert M Edwards, Jr, Jones Obenchain LLP, South Bend, IN.

**JUDGES:** Roger B. Cosbey, United States Magistrate Judge.

**OPINION BY:** Roger B. Cosbey

**OPINION**

**OPINION AND ORDER**

Before the Court in this declaratory judgment action is Plaintiff Progressive Southeastern Insurance Company's Motion for Approval of Alternate Service (Docket # 16) under *Federal Rule of Civil Procedure 4(f)(3)*, seeking leave of Court to serve the summons and complaint on the Canadian attorney of Defendants James and Elizabeth Andrew, because their current address is unknown to Progressive. For the following reasons, Progressive's motion will be DENIED WITHOUT PREJUDICE.

*A. Factual and Procedural Background*

On September 21, 2009, James Andrew sustained physical injuries when his ring finger became caught on a bracket of a trailer he had purchased from Hy-Line Enterprises Holdings, LLC. (Mot. ¶¶ 1, 2.) As a result of his injuries, he and Elizabeth sued Defendants Hy-Line, J & P Transport, and Sun Coast Tractor Sales, Inc., whom they allege were responsible for the trailer's distribution, in the Ontario Superior Court of Justice. (Mot. ¶ 3.)

At the time the trailer was delivered, [*2] Defendants James Denune, Pamela Denune, and J & P Transport were the named insureds on a commercial automobile policy that Progressive issued. (Mot. ¶ 4.) Because of the dispute between Progressive and Defendants concerning whether Progressive is obligated to defend or indemnify the Denunes and J & P Transport in the Canadian lawsuit, Progressive filed the instant declaratory relief action on April 26, 2011. (Mot. ¶ 5; Docket # 1.)

Prior to filing this action, Progressive retained a private investigator to locate the Andrews, and as of March 12, 2011, they were reported to reside at Anthony's Mobile Home Park, Ltd., 3100 Dorchester Road, Dorchester, Ontario N0L 1G5. (Mot. ¶¶ 6, 7.) On April 26, 2011, Progressive forwarded a summons and complaint to the Ontario Court of Justice for service on the Andrews purportedly in accordance with the Hague Convention and *Federal Rule 4(f)(1)*. (Mot. ¶ 8.) By letter dated June 21, 2011, however, the Central Authority for Service of Documents in Ontario advised Progressive that service could not be effected on the Andrews because they had moved and no forwarding address was known. (Mot. ¶ 10.)

On June 22, 2011, in an effort to provide the Andrews with [*3] actual notice of the suit and before it had received the Central Authority's letter, Progressive sent a copy of the summons and complaint to Ken Williams & Associates ("Williams"), the Canadian counsel who purportedly represents the Andrews in the underlying Canadian case. (Mot. ¶ 18.) On July 6, 2011,

2011 U.S. Dist. LEXIS 73946, *3

Progressive filed the instant motion, seeking leave of Court to serve the Andrews in care of Williams via international mail, delivery confirmation signed by the addressee. (Mot. 1, 5.)

### B. Applicable Law

*Federal Rule of Civil Procedure 4(f)* governs service of process upon individuals in foreign countries, stating that service may be accomplished:

> (1) by any internationally agreed means of service that is reasonably calculated to give notice, such as those authorized by the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents;

> (2) if there is no internationally agreed means, or if an international agreement allows but does not specify other means, by a method that is reasonably calculated to give notice;

>> (A) as prescribed by the foreign country's law for service in that country in an action in its courts of general jurisdiction;

>> (B) as the foreign authority directs [*4] in response to a letter rogatory or letter of request; or

>> (C) unless prohibited by the foreign country's law, by:

>>> (i) delivering a copy of the summons and of the complaint to the individual personally; or

>>> (ii)

>>> using any form of mail that the clerk addresses and sends to the individual and that requires a signed receipt; or

>> (3) by other means not prohibited by international agreement, as the court orders.

Here, Progressive advances its motion for approval of alternate service under *Rule 4(f)(3)*.

A court is "afforded wide discretion in ordering service of process under *Rule 4(f)(3)*." *S.E.C. v. Anticevic, No. 05 CV 6991(KMW), 2009 U.S. Dist. LEXIS 11480, 2009 WL 361739, at *3 (S.D.N.Y. Feb. 13, 2009)* (quoting *BP Prods. N. Am., Inc. v. Dagra, 236 F.R.D. 270, 271 (E.D. Va. 2006)). Rule 4(f)(3)* "provides the Court with flexibility and discretion empowering courts to fit the manner of service utilized to the facts and circumstances of the particular case." *Id.* (quoting *BP Products, 236 F.R.D. at 271); see also Smith v. Islamic Emirate of Afghanistan, Nos. 01 CIV 10132 (HB), 01 CIV 10144(HB), 2001 U.S. Dist. LEXIS 21712, 2001 WL 1658211, at *3 (S.D.N.Y. Dec. 26, 2001).* "When exercising that discretion courts should indeed make 'an earnest effort . . . [*5] to devise a method of communication that is consistent with due process and minimizes offense to foreign law.'" *BP Products, 236 F.R.D. at 271-72* (quoting *Export-Import Bank of the United States v. Asia Pulp & Paper Co., No. 03Civ.8554(LTS)(JCF), 2005 U.S. Dist. LEXIS 8902, 2005 WL 1123755, at *4 (S.D.N.Y. May 11, 2005)).* "In order to fulfill due process requirements under *Rule 4(f)(3)*, the Court must approve a method of service that is 'reasonably calculated, under all the circumstances' to give notice to defendant." *Id.* (citing *Mullane v. Cent. Hanover Bank & Trust Co., 339 U.S. 306, 314, 70 S. Ct. 652, 94 L. Ed. 865 (1950)).*

2011 U.S. Dist. LEXIS 73946, *5

### C. Analysis

Here, Progressive seeks leave of Court to serve the Andrews's Canadian counsel on the premise that "there is no known address for James Andrew and Elizabeth Andrew and [its] previous attempt at service has been futile." (Mot. ¶ 15.) Progressive's stated reasons for seeking approval of alternate service, however, fall short.

To explain, although Progressive initially used a private investigator to locate the Andrews, it has not exercised reasonable diligence in attempting to determine the Andrews's new address. *See Opella v. Rullan, No. 10-21134-CIV, 2011 U.S. Dist. LEXIS 69634, 2011 WL 2600707, at *5 (S.D. Fla. June 29, 2011)* ("[A]n address [*6] is not 'known' within Article 1 of the [Hague] Convention only when it is unknown to the plaintiff after the plaintiff exercised reasonable diligence in attempting to discover that address.") (citation omitted). That is, there is no evidence that Progressive asked the private investigator to perform any follow-up work to determine the Andrews's new address.

Moreover, although Progressive obviously knows the identity and address of Williams, the Andrews's Canadian counsel, there is no indication that it has asked him for their new address. *See, e.g., Kott v. Superior Ct., 45 Cal. App. 4th 1126, 1138, 53 Cal. Rptr. 2d 215 (Cal. Ct. App. 1996)* (concluding that plaintiff had not exercised reasonable diligence in attempting to learn defendant's address where plaintiff failed to simply request defendant's address from defendant's attorney and co-defendants). Indeed, Progressive does not suggest that the Andrews are attempting to evade service. *Cf. Forum Fin. Group, LLC v. President & Fellows of Harvard Coll., 199 F.R.D. 22, 24-25 (D. Maine Feb. 16, 2001)* (considering defendant's efforts to evade service in Russia, his country of residence, when authorizing service upon his New York attorney).

Furthermore, "[a] [*7] court cannot authorize service on a foreign defendant's lawyer unless there has been adequate communication between the two." *1st Tech., LLC v. Digital Gaming Solutions, S.A., No. 4:08 CV 586 DDN, 2009 U.S. Dist. LEXIS 27786, 2009 WL 879463, at *9 (E.D. Mo. Mar. 30, 2009)* (collecting cases); *see also W. Supreme Buddha Ass'n., Inc. v. Oasis World Peace & Health Found., No. 08-CV-1374, 2011 U.S. Dist. LEXIS 23483, 2011 WL 856378, at *2*

*(N.D.N.Y. Mar. 9, 2011)* (citing *Madu, Edozie & Madu, P.C. v. SocketWorks Ltd. Nigeria, 265 F.R.D. 106, 116-17 (S.D.N.Y. 2010)* (collecting cases)). That is, before authorizing service on a defendant's attorney, a court must be assured that this method of service is "reasonably calculated" to give notice of the action to the defendant. *BP Products, 232 F.R.D. at 264-65.*

On this record, Progressive has failed to provide the Court with any evidence that service upon Williams is "reasonable calculated" to give notice to the Andrews. Here, Williams could have since withdrawn from the Canadian case, as Progressive has not provided a copy of the docket or recent filings evidencing that Williams is still regularly communicating with the Andrews. *See, e.g., BP Products, 232 F.R.D. at 265* (finding it reasonable to conclude [*8] that attorney had some mechanism for contacting defendant where attorney had recently filed twelve pleadings and attended four court appearances on defendant's behalf). For that matter, it is possible that Williams also lost contact with the Andrews when they relocated.

In sum, because Progressive has not exercised reasonable diligence in attempting to secure the Andrews's new address, and because the record fails to demonstrate that service upon Williams is "reasonably calculated" to give notice to Andrews, Progressive's motion for approval of alternative service will be DENIED WITHOUT PREJUDICE.

### D. Conclusion

For the foregoing reasons, Plaintiff's Motion for Approval of Alternative Service (Docket # 16), requesting that the Court grant leave to serve Defendants James and Elizabeth Andrews in care of their Canadian counsel via international mail, is DENIED WITHOUT PREJUDICE.

SO ORDERED.

Entered this 8th day of July, 2011.

/s/ Roger B. Cosbey

Roger B. Cosbey,

United States Magistrate Judge