

Suite 800
1919 Pennsylvania Avenue, NW
Washington, DC 20006-3401

**John D. Seiver**
**202.973.4212 Direct Telephone**
**202.973.4412 Direct Fax**
202-973.4200 Main Telephone
202.973.4499 Main Fax
johnseiver@dwt.com

February 22, 2013

**VIA E-MAIL AND U.S. MAIL**
*huon.meanith@gmail.com*

Meanith Huon
The Huon Law Firm
P.O. Box 441
Chicago, IL 60690

      Re:   *Flava Works, Inc. v. John Does 1 to 26, et al.*
            **Case No. 1:12-cv-5844 (N.D. Ill.)**
            **Subpoena to Comcast (N.D. Ill.)**

Dear Mr. Huon:

      I am counsel to Comcast Cable Communications LLC ("Comcast"). This letter is in response to the subpoenas duces tecum ("Subpoena") served on Comcast on February 11, 2013,[1] in the above-referenced action. Your Subpoena requests that, by March 4, 2013, Comcast produce a broad range of information respecting subscribers using certain Comcast-registered IP addresses listed in the Subpoena. The Federal Rules allow for non-parties such as Comcast to object within 14 days of service of a subpoena. Fed. R. Civ. P. 45(c)(2)(B). For the reasons we set forth below, Comcast objects to your Subpoena and no documents will be produced unless and until a specific and valid court order is entered.

      First, not all the information sought by the Subpoena is required to advance your claim. For example, your request for the telephone number, email address, Media Access Control address, credit card and other payment information of the putative Doe defendants is clearly not required to litigate this action and seems calculated to further your client's aggressive settlement strategies rather than advancing their claim by allowing them to effect service.[2]

---

[1] The Proof of Service served with the Subpoena states that it was served by mail on February 5, 2013; however, the Subpoena was postmarked February 6, 2013 and actually received by (and thus served on) CT Corporation on February 11, 2013.

[2] *See Millennium TGA v. Comcast*, No. 12-mc-00150 (RLW), 2012 WL 2371426, *7 (June 25, 2012 D.D.C.) ("*Millennium TGA III*") (recounting "intimidating tactics and oppressive demands made by Plaintiff's counsel in other cases" and limiting subpoena compliance to subscribers' city and state of residence only); *Digital Sins, Inc. v. John Does 1-245*, 2012 WL 1744838, at *7 (S.D.N.Y. 2012) ("Subpoenas may not issue seeking telephone numbers

Anchorage | New York | Seattle
Bellevue | Portland | Shanghai
Los Angeles | San Francisco | Washington, D.C.

www.dwt.com

Meanith Huon
February 22, 2013
Page 2

Comcast must give notice to its subscribers before turning over any records and your timetable does not allow for reasonable notice. Moreover, the federal Communications Act prohibits Comcast from providing any of the subpoenaed information to you without prior notice to the affected subscriber(s) and a court order with reasonable time allotted for the subscribers to interpose objections. You have also not offered to reimburse Comcast for its reasonable expenses. Federal Rule 45 provides that "an order to compel production shall protect any person who is not a party or an officer of a party from significant expense resulting from the inspection and copying commanded." Indeed, "nonparty witnesses are powerless to control the scope of litigation and discovery, and should not be forced to subsidize an unreasonable share of costs of a litigation to which they are not a party."[3] In this regard, courts have consistently held that nonparties should be compensated for their time and labor in producing requested documents.[4]

As a cable operator, Comcast must protect its cable, telephone, and Internet subscribers' privacy in compliance with federal law. Comcast may not provide any subscriber's personally identifiable information to a third party without first ensuring compliance with the requirements of Section 631(c) of the Communications Act, 47 U.S.C. § 551(c). That Section generally prohibits cable operators from disclosing such information without the subscriber's express written consent and also imposes an affirmative obligation on a cable operator to "take such actions as are necessary to prevent unauthorized access to such information by a person other than the subscriber or cable operator." 47 U.S.C. § 551(c)(1).

Section 631(c)(2) provides three exceptions to the general ban on disclosing personally identifiable information without the subscribers' express consent. Disclosure is permitted: (1) "when necessary to render, or conduct a legitimate business activity related to, a cable service or other service provided by the cable operator to the subscriber," 47 U.S.C. § 551(c)(2)(A); (2) "pursuant to a court order authorizing such disclosure, if the subscriber is notified of such order by the person to whom the order is directed," 47 U.S.C. § 551(c)(2)(B); and (3) in the form

---

or email addresses of the individuals who are assigned a particular IP address."); *In re BitTorrent Adult Film*, 2012 WL 1570765, at *8 (E.D.N.Y. 2012) ("The plaintiffs seemingly have no interest in actually litigating the cases, but rather simply have used the Court and its subpoena powers to obtain sufficient information to shake down the John Does."); *K-Beech, Inc. v. Does 1-85*, 2011 U.S. Dist. LEXIS 124581, at *6 (E.D. Va. 2011) ("Some Defendants have indicated that the Plaintiff has contacted them directly with harassing telephone calls, demanding $2,900 in compensation to end the litigation.")

[3] *United States v. Columbia Broadcasting Sys. Inc.*, 666 F.2d 364, 371-72 (9th Cir. 1981), *cert. denied*, 457 U.S. 1118.

[4] *See Linder v. Adolfo Calero-Portocarrero*, 251 F.3d. 178, 182 (D.C. Cir. 2001) (finding that nonparty should be compensated for half the reasonable copying and labor costs); *In re Midlantic Corp. Shareholder Litigation*, 1994 WL 750664 at *6 (stating that nonparty must be compensated for reasonable copying and labor costs); *Exxon Valdez*, 142 F.R.D. at 384 (requiring requesting party to pay a portion of discovery costs); *Mycogen Plant Science, Inc. v. Monsanto Co.*, 1996 U.S. Dist. LEXIS 2264, * 16 (E.D. Pa. 1996) (finding that a nonparty should be compensated for its time and labor in producing documents); *Compaq Computer Corp., v. Packard Bell Electronics, Inc.*, 1995 U.S. Dist. LEXIS 20549, *24-25 (N.D. Cal. 1995) (holding that nonparty witness is entitled to be compensated at a reasonable hourly rate for producing documents); *In re Letters Rogatory*, 144 F.R.D. 272, 278-79 (E.D. Pa. 1992) (reimbursement for production costs).

Case: 1:12-cv-05844 Document #: 65-3 Filed: 04/18/13 Page 3 of 5 PageID #:2232

Meanith Huon
February 22, 2013
Page 3

of aggregate customer name and address lists, as long as the cable operator has provided the subscriber the opportunity to prohibit or limit such disclosure and the lists contain no information regarding customers' viewing activities or other transactions. 47 U.S.C. § 551(c)(2)(C).

The only exception applicable to your subpoena is contained in Section 631(c)(2)(B), which requires a court order and notice to the subscriber before disclosure of any PII may be made.[5] The court order we found in this action simply noted the grant of your motion for early discovery with none of the other required elements to be valid under the Cable Act. Without a valid court order that recognizes that it will ultimately have jurisdiction over the unnamed subscribers, whether they may be properly joined, and providing for reasonable reimbursement with a reasonable time to fulfill any order, we will not notify our subscribers or produce documents or any other information identifying subscribers associated with the IP addresses in the Subpoena. *Please be advised Comcast will, however, preserve all data relevant to the IP addresses in the Subpoena in question for 90 days.*

We are also puzzled why you brought this case and then issued subpoenas out of the District of Illinois, when none of the Comcast IP addresses listed in the Subpoena are for individuals within Illinois. Instead, the Subpoena makes clear that you already determined that the Comcast IP addresses listed in the Subpoena are for subscribers located in Maryland and Georgia. This appears to be an effort to forum shop and/or attempt to confuse Comcast and its subscribers. *See, e.g., Millennium TGA III* at *6 ("The Court will deny the request for identifying information for the Comcast subscribers. As to Doe, the only named defendant, he or she is linked to a Comcast subscriber who resides in Texas. It is unduly burdensome to force that subscriber to travel over 1000 miles to the District of Columbia to protect his or her rights, particularly when the case is pending in Texas and Comcast can be served with a subpoena in Texas."). Indeed, you would not be able to amend the Complaint in this case to add any of Comcast's subscribers because any copyright infringement action must be brought in the district where the subscriber resides. 28 U.S.C. § 1400(a); *Nu Image, Inc. v. Does 1-23,322*, 799 F. Supp. 2d 34, 37 (D.D.C. 2011) (Section 1400(a) "requires that a civil suit to enforce the Copyright Act be brought in a judicial district 'in which the defendant or his agent resides or may be found.'"). Comcast will raise this issue (among others) in response to any motion to compel that you may file with respect to the Subpoena.

Comcast also objects to your subpoena on the ground that the rules for joinder of any of the Doe Defendants who may be subject to the court's jurisdiction may not be appropriate in the underlying action in light of the many recent cases, including in the Northern District of Illinois, which have expressly prohibited discovery and quashed subpoenas similar to yours. *See, e.g., Millennium TGA, Inc. v. Does 1-100*, No. 1:10-cv-05603 (N.D. Ill. Mar. 31, 2011) (court order *sua sponte* severing all but one Doe defendant, finding that "merely committing the same type of

---

[5] Such notice must afford the subscriber enough time to challenge anonymously any disclosure before it is made. A decision otherwise would render the notice provision a nullity. *See* Lyrissa Barnett Lidsky & Thomas F. Cotter, *Authorship, Audiences, and Anonymous Speech*, 82 Notre Dame L. Rev. 1537, 1598 (April 2007) (advocating extending the protections of Section 631 in other contexts to "guarantee the defendant has a chance to defend his right to speak anonymously ***before it is too late***") (emphasis added).

Meanith Huon
February 22, 2013
Page 4

violation in the same way does not link defendants together for purposes of joinder") (quoting *LaFace Records, LLC v. Does 1-38*, No. 5:07-CV-297, 2008 WL 544992 (E.D.N.C. Feb. 27, 2008)); *Lightspeed Media Corp. v. Does 1-100*, No. 10 C 5604 (N.D. Ill. Mar. 31, 2011) (court order *sua sponte* concluding that the putative defendants were improperly joined) (Manning, J.).[6] These cases have made clear that the alleged use of BitTorrent technology, like earlier P2P technologies, does not satisfy the requirements for permissive joinder. *See, e.g., Hard Drive Prods. v. Does*, 2011 WL 3740473, at *7 (N.D. Cal. Aug. 23, 2011).

Additionally, like the court found in the *Hard Drive* action, because the exhibit attached to the Complaint reflects that the activity of the different IP addresses occurred on different days and times over a one month period,[7] your argument that the Doe Defendants acted in concert is unpersuasive. *Hard Drive Prods. v. Does*, 2011 WL 3740473, at *14. Accordingly, the Court would likely agree with the ruling in the *Hard Drive* case that joinder would be inconsistent with Rule 20(a)(2), cause prejudice and unfairness, and would not be in the interest of justice. *Hard Drive Prods. v. Does*, 2011 WL 3740473, at *14.

---

[6] *See, e.g., Hard Drive Prods. v. Does*, 2011 WL 3740473 (N.D. Cal. Aug. 23, 2011) (finding joinder improper and severing and dismissing all claims against all but one Doe defendant) (citing *Boy Racer Inc. v. Does 2-52*, Case No. 11-2834 (N.D. Cal.), Docket 12 (finding that the nature of BitTorrent protocol does not justify joinder of otherwise unrelated Doe defendants because BitTorrent protocol is of the same peer-to-peer architecture of other peer-to-peer protocols where joinder has been found improper); Diabolic *Video Prods.*, 2011 WL 3100404, at *1 (N.D. Cal. May 31, 2011) ("[T]he mere allegation that defendants have used the same peer-to-peer network to infringe a copyrighted work is insufficient to meet the standards of joinder set forth in Rule 20"); *Pacific Century International*, 2011 WL 2690142 (N.D. Cal. July 8, 2011) (Rule 20(a)(2) joinder was improper because "the only commonality between copyright infringers of the same work is that each commit[ted] the exact same violation of the law in exactly the same way") (internal quotes and cite omitted); *Millennium TGA*, 2011 WL 1812786, at *3 (N.D. Cal. May 12, 2011) (finding Rule 20(a)(2) joinder of the Doe defendants impermissible because "the Doe [d]efendants' individual and separate alleged reproductions of Plaintiff's Work – which occurred over the span of twenty days – do not satisfy [the Rule 20(a)(2)] requirement.")); *Hard Drive Prods. v. Does* U.S. Dist. LEXIS 132449, at *9 (N.D. Cal. Nov. 16, 2011) (dismissing Does 2-130 and imposing ongoing obligations upon plaintiff and its counsel to demonstrate that the discovery sought of Doe 1 is used for a proper purpose); *Liberty Media Holdings, LLC v. BitTorrent Swarm*, 2011 U.S. Dist. LEXIS 12633, at *3-9 (S.D. Fla. Nov. 1, 2011) (the court *sua sponte* found joinder of multiple Doe defendants improper under Fed. R. Civ. P. 20(a) and dismissed the claims against all but a single defendant); *On the Cheap, LLC v. Does 1-5011*, 2011 U.S. Dist. LEXIS 99831, at *16-17 & n.6 (N.D. Cal. Sept. 6, 2011) (disapproving the use of mass actions and noting abusive settlement tactics); *McGip, LLC v. Doe*, 2011 U.S. Dist. LEXIS 128033, at *9 (N.D. Cal. Nov. 4, 2011) (citing other similar cases).

[7] In the *Hard Drive* case, it was a two-week period. *Hard Drive Prods. v. Does*, 2011 WL 3740473, at *14.

Meanith Huon
February 22, 2013
Page 5

      If and when you obtain a court order that complies with the Communications Act and the law with respect to jurisdiction, venue and joinder, and serve a valid subpoena, we will revisit the issues concerning time for compliance and reimbursement of Comcast's reasonable expenses.

      If you would like to discuss this, please let me know.

Very truly yours,

John D. Seiver

cc:    Comcast Cable Communications, LLC